**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GREATER CHAUTAUQUA FEDERAL CREDIT UNION, FIRST CHOICE FEDERAL CREDIT UNION, GULF COAST BANK & TRUST COMPANY, GOVERNMENTAL EMPLOYEES CREDIT UNION, and OTEEN V.A. FEDERAL CREDIT UNION, individually and on behalf of a class of similarly situated financial institutions, | : : Case No: 1:15-cv-02228 : : : : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| KMART CORPORATION and SEARS HOLDINGS CORPORATION, | : : : |
| Defendants. | : : |

**DECLARATION OF ARTHUR M. MURRAY IN SUPPORT OF AMENDED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS**

I, Arthur M. Murray, declare:

1.      I am an attorney admitted to practice in the United States District Court for the Northern District of Illinois *pro hac vice* in the above-captioned lawsuit ("Action").  I represent Plaintiffs Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union (collectively "Plaintiffs"),   against Kmart Corporation ("Kmart") and Sears Holding Corporation ("Sears") (collectively, "Defendants") in the Action.  I have practiced law since 2001.  I am a partner with the Murray Law Firm in New Orleans, Louisiana.  I make this declaration in support of Plaintiffs' Amended Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Amended Settlement Agreement and Release entered into by Plaintiffs and Defendants (collectively the "Parties") to the Action.   The Amended Settlement Agreement and Release dated August 11, 2016 supersedes, renders void, terminates, and nullifies the Settlement Agreement entered into on July 26, 2016.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the modifications to the initial Settlement Agreement.

4.      The Settlement of the Action as set forth in Exhibit 1 is the result of difficult and protracted arms-length negotiation, spanning over seven months, during which time Class Plaintiffs obtained informal discovery and continued to investigate their claims, and spent considerable time on the telephone with and exchanged numerous written proposals with defense counsel.   In addition, the parties benefitted from the assistance of the Hon. Wayne R. Andersen

1

(Ret.) of JAMS, who met with the Parties' counsel in person three (3) times and engaged in extensive telephone and email communication with counsel between in-person meetings.

5.     Before entering into the Settlement, Co-Lead Counsel conducted a detailed investigation into the facts and law relating to the matters alleged.  In addition, Co-Lead Counsel consulted with their clients and other industry experts on the harm caused to the industry by this and similar data breaches.  Plaintiffs, through their counsel, conducted informal discovery concerning the number of impacted cards, Kmart's lapses in security, and Kmart's negotiations with card brands.  Furthermore, Plaintiffs researched and prepared a response to the pending motion to dismiss.  In addition, Plaintiffs turned over informal discovery to Defendants for their review and consideration during the negotiation process.

6.     Attorney's fees, costs, and expenses will not diminish the funds available to Class Members and will be negotiated separately.  *See* Amended Settlement Agreement, Exhibit 1 hereto, at Para.  8.1.

7.     Plaintiffs have retained counsel who are qualified and experienced to litigate this action.  The Murray Law Firm, Hausfeld, LLP and Lockridge Grindal Nauen P.L.L.P. were appointed Plaintiffs' Co-Lead Counsel by order of the Court dated November 23, 2015 [ECF No. 82], after filing with the Court voluminous applications setting forth each firm's extensive class action and data breach litigation experience.

I declare under penalty of perjury the foregoing is true and correct.

Executed on August 17, 2016.

Arthur M. Murray

2

# EXHIBIT 1

## AMENDED SETTLEMENT AGREEMENT AND RELEASE

This Amended Settlement Agreement and Release (the "Settlement" or "Settlement Agreement" or "Agreement") is made as of August 11, 2016, by and among the following parties, as hereinafter defined: (a) Settlement Class Representatives, on behalf of themselves and the Class Members, by and through Settlement Class Counsel; and (b) Kmart Corporation ("Kmart") and Sears Holdings Corporation ("Sears") (collectively "Sears/Kmart"), by and through its undersigned counsel ("Sears/Kmart's Counsel"). Settlement Class Representatives and Sears/Kmart are the "Parties" or a "Party."

This Settlement Agreement **supersedes, renders void, terminates, and nullifies** the "Settlement Agreement" entered into on July 26, 2016 between the Parties.

## RECITALS

WHEREAS, on October 10, 2014, Sears/Kmart announced that on the prior day, October 9, 2014, Sears/Kmart's Information Technology team detected a criminal intrusion into Kmart's payment data systems, resulting in the potential compromise of payment card information;

WHEREAS, following the announcement by Sears/Kmart, financial institution plaintiffs, including Settlement Class Representatives, filed class action complaints in multiple courts across the country;

WHEREAS, the Settlement Class Representatives have alleged common law claims and violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols;

WHEREAS, on June 8, 2015, the Judicial Panel on Multidistrict Litigation ("MDL Panel") denied a Motion for Consolidation and Transfer of Related Actions filed by certain plaintiffs and suggested the self-consolidation of the actions;

WHEREAS, the Settlement Class Representatives thereafter consolidated the actions before the United States District Court for the Northern District of Illinois and filed a Consolidated Amended Class Action Complaint;

WHEREAS, Sears/Kmart moved to dismiss the Settlement Class Representatives' Consolidated Amended Class Action Complaint on October 9, 2015 for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and for failure to allege personal jurisdiction under Rule 12(b)(2);

WHEREAS, by letter dated October 6, 2015, MasterCard asserted the right under its operating regulations and pursuant to the MasterCard ADC program to assess and collect from Sears/Kmart, through its acquiring banks, certain losses that MasterCard alleged its issuers had incurred as a result of the Data Breach;

WHEREAS, Sears/Kmart disputed MasterCard's assessment and filed an appeal of the assessment on December 14, 2015 pursuant to the MasterCard Security Rules and Procedures manual;

WHEREAS, by letter dated March 8, 2016, Visa asserted the right under its operating regulations and pursuant to the Visa GCAR program to assess and collect from Sears/Kmart, through its acquiring banks, certain losses Visa alleged its issuers had incurred as a result of the Data Breach;

WHEREAS, Sears/Kmart denies (a) the allegations and all liability with respect to any and all facts and claims alleged in the Consolidated Amended Class Action Complaint; (b) that the Settlement Class Representatives and the class they currently represent have suffered the damages they allege, (c) that the Consolidated Amended Class Action Complaint satisfies the

2

requirements to be tried as a class action under Federal Rule of Civil Procedure 23, and (d) that MasterCard and Visa properly imposed assessments on Sears/Kmart in the amounts asserted by MasterCard and Visa;

WHEREAS, Settlement Class Representatives assert (a) that facts alleged in the Consolidated Amended Class Action Complaint raise a reasonable expectation that discovery will reveal evidence to support Settlement Class Representatives' claims; (b) that there is sufficient evidence that the Settlement Class Representatives and the Class have suffered the damages they allege, and (c) that the Consolidated Amended Class Action Complaint demonstrates that the claims would properly be resolved through class action proceedings, including trial, pursuant to Federal Rule of Civil Procedure 23;

WHEREAS, despite their belief that their claims are meritorious, that they and the Class Members they represent have been injured and suffered damages, and that the Consolidated Amended Class Action Complaint satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23, the Settlement Class Representatives and Settlement Class Counsel have concluded, after an investigation of the facts and after carefully considering the circumstances of the Consolidated Amended Class Action Complaint, that it would be in the best interests of the Class to enter into this Agreement, which interests include the substantial value to be derived by this Settlement and the interest in avoiding the uncertainties of litigation and assuring that the benefits reflected herein are obtained for the Class;

WHEREAS, despite its belief that it has valid and complete defenses to the claims asserted against it and that the Settlement Class Representatives' claims are without merit, Sears/Kmart has nevertheless agreed to enter into this Agreement to reduce and avoid further

risk, expense, inconvenience, and the distraction of burdensome and protracted litigation and thereby to resolve any controversy;

WHEREAS, the Settlement set forth in this Agreement is a product of sustained, arm's length negotiations conducted in multiple mediation sessions over a period of several months before the Honorable Wayne R. Andersen, former Judge for the United States District Court for the Northern District of Illinois;

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein and without: (a) any admission or concession on the part of the Settlement Class Representatives or Settlement Class Counsel of the lack of merit of the Consolidated Amended Class Action Complaint; or (b) any admission or concession of liability or wrongdoing or lack of merit of any defense whatsoever by Sears/Kmart with respect to the Consolidated Amended Class Action Complaint,

IT IS HEREBY STIPULATED AND AGREED by the Parties, that the Action, the Consolidated Class Action Complaint and the claims set forth therein, the Plaintiff Released Claims, and the Sears/Kmart Released Claims, be settled, compromised, and dismissed with prejudice, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## 1. DEFINITIONS

As used in this Agreement, the terms set forth in this section in boldface type will have the following meanings:

**1.1 Action**. The action brought on behalf of financial institutions against Sears/Kmart relating to the Data Breach that was consolidated in the United States District Court for the Northern District of Illinois the matter entitled *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company,*

*Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228.

      **1.2**    **Alert.**  A notice which Settlement Class Members received under the ADC or GCAR programs which informs them of card numbers which may have been compromised as a result of the Data Breach.

      **1.3**    **ADC**.  MasterCard's Account Data Compromise program, as set forth in the MasterCard's *Security Rules and Procedures*.

      **1.4**    **Agreement or Settlement Agreement**.  This document, including all exhibits.

      **1.5**    **Application**.  This term has the meaning set forth in Section 8.3.

      **1.6**    **Assessment by MasterCard**.  MasterCard's final ADC Recovery assessment of $5,923,909.32, which includes an assessment of $5,798,909.32 relating to the Data Breach and a $125,000 case management fee, dated on or about October 6, 2015.

      **1.7**    **Assessment by Visa.**  Visa's final GCAR program assessment of $7,574,497.18 relating to the Data Breach, dated on or about March 8, 2016.

      **1.8**    **Class Members or Class**.  All entities in the United States and its Territories that issued payment cards identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card Data Breach that was publicly disclosed by Kmart on October 10, 2014.  Excluded from the class are all entities that have entered into or will enter into a separate release of claims arising from the Data Breach, including American Express Company and DFS Services LLC (Discover).

      **1.9**    **Complaint.**  The Consolidated Amended Class Action Complaint filed by the financial institution plaintiffs in the matter entitled *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental*

5

*Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228.

**1.10    Compromised Payment Card**.  A payment card that was identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card data breach that was publicly disclosed by Sears/Kmart on October 10, 2014 (the "Data Breach").

**1.11    Compromised Payment Card Account**.  The payment card account associated with a Compromised Payment Card.

**1.12    Correction Request**.  This term shall have the meaning set forth in Section 4.4.3.

**1.13    Court**.  The Honorable John Z. Lee, United States District Court Judge, Northern District of Illinois, or such other judge to whom the Action or Complaint may hereafter be assigned.

**1.14    Data Breach**.  The payment card data breach impacting Kmart stores that was publicly disclosed by Sears/Kmart on October 10, 2014.

**1.15    Distribution Plan**.   The plan, substantially in the form of Exhibit A for distributing the Settlement Class Escrow Account to Settlement Class Members.

**1.16    Effective Date**.  The first date after which the following events and conditions have occurred:  (i) the Court has entered the Final Judgment and the Final Judgment has not been set aside, materially modified, or overturned by the Court or on appeal, and (ii) the time for any motion or petition for reconsideration, appeal, or writ with regard to the Final Judgment has expired or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.

**1.17    Escrow Agent.**  The Escrow Agent shall be Huntington Bank.

**1.18   Fee Request**.  This term shall have the meaning set forth in Section 8.1.

**1.19   Final Approval Hearing**.   The hearing held by the Court for the purpose of determining whether to (a) grant final approval of the Settlement, (b) grant the Application, and (c) enter the Final Judgment.

**1.20   Final Approval**.  The date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of the fees and costs awarded to Settlement Class Counsel.   In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

**1.21   Final Approval Order.**   The Final Judgment and order of dismissal with prejudice that the Court enters upon Final Approval in the form attached as Exhibit B.   In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

**1.22   Final Judgment.**  A final judgment and order of dismissal with prejudice entered by the Court in the form attached as Exhibit C.

**1.23   Final Opt-Outs Report**.  This term shall have the meaning set forth in Section 4.4.5.

**1.24   Fraud Window.**   The period within which fraudulent charges from the Data Breach must fall to qualify for recovery under the GCAR and ADC.

**1.25   GCAR**.  Visa's Global Compromised Account Recovery program as set forth in Visa's operating regulations and as administered by Visa.

**1.26   MasterCard.**  This term shall mean "MasterCard International Incorporated."

**1.27   Maximum Payout Amount.**   The total amount that eligible Settlement Class Members claim in Tier 2 of the Distribution Plan.

**1.28    Notices**.  The information, substantially in the form of Exhibit D, to be provided to Class Members pursuant to a notice plan to be approved by the Court.

**1.29    Non VisaNet Cards.**  Visa-branded cards that are processed on but are not contractually a part of the VisaNet system.

**1.30    Opt-Outs Report**.  This term has the meaning set forth in Section 4.4.2.

**1.31    Plaintiffs or Financial Institution Plaintiffs**.  The named plaintiffs in the Complaint.

**1.32    Plaintiff Released Claims**.  This term has the meaning set forth in Section 7.1.

**1.33    Plaintiff Released Persons**.  This term has the meaning set forth in Section 7.2.

**1.34    Plaintiff Releasing Persons**.  This term has the meaning set forth in Section 7.1.

**1.35    Preliminary Approval Order**.  The Order of Preliminary Approval of Settlement to be entered by the Court substantially in the form attached as Exhibit E hereto.

**1.36    Sears/Kmart Released Claims**.  This term has the meaning set forth in Section 7.2.

**1.37    Sears/Kmart Released Parties**.  This term has the meaning set forth in Section 7.2.

**1.38    Released Parties**.  This term has the meaning set forth in Section 7.1.

**1.39    Service Payments**.  One time payments to the Settlement Class Representatives, through Settlement Class Counsel, as set forth in Section 8.3.

**1.40    Settlement**.  The settlement embodied in this Settlement Agreement.

**1.41    Settlement Administrator**.  Subject to Court approval, Epiq Systems, Inc.

**1.42    Settlement Class**.  This term has the meaning set forth in Section 3.1.

**1.43   Settlement Class Counsel**.   This term includes the following firms and individuals:

**MURRAY LAW FIRM**
Arthur M. Murray
650 Poydras Street, Suite 2150
New Orleans, LA 70130
504-525-8100
amurray@murray-lawfirm.com

**HAUSFELD, LLP**
James J. Pizzirusso
1700 K. Street, NW
Suite 650
Washington, DC 20006
202-540-7200
jpizzirusso@hausfeld.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Karen H. Riebel
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
612-339-6900
khriebel@locklaw.com

**1.44   Settlement Class Escrow Account**.   The account described in Section 5.3.1 of this Agreement.

**1.45   Settlement Class Members**.  The entities that comprise the Settlement Class.

**1.46   Settlement Class Representatives**.   The named plaintiffs in the Complaint: Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union.

**1.47   Settlement Fund**.  An amount equal to $5,200,000.  The Settlement Fund will be used to pay all costs of class notice and settlement administration, service awards to the Named Plaintiffs, and the claims of eligible Settlement Class members pursuant to the Distribution Plan attached as Exhibit A.

**1.48   Visa.**  This term shall mean "Visa Inc."

9

2.      **SETTLEMENT PROCEDURES**

**2.1**     All activities in the Action or relating to the Complaint, other than those in furtherance of the Settlement, shall remain suspended until the Final Approval Hearing and issuance of the Final Judgment, or until further order of this Court.

**2.2**     As soon as possible after the execution of this Agreement, the Settlement Class Representatives shall move the Court for a Preliminary Approval Order substantially in the form of Exhibit E.

**2.3**     At the time of the submission of this Agreement to the Court as described in Section 2.2, the Settlement Class Representatives shall request that, after notice is given to Settlement Class Members, the Court hold the Final Approval Hearing and approve the Settlement.

**2.4**     At least 21 days before the deadline for Settlement Class Members to file objections to the Settlement, Settlement Class Counsel shall file with the Court, and serve upon Sears/Kmart (i) their motion for an award of attorneys' fees, costs, and expenses ("Fee Request"); and (ii) any application by Settlement Class Representatives for awards of Service Payments.

**2.5**     At the Final Approval Hearing, the Parties will request that the Court enter the Final Approval Order.

3.      **THE SETTLEMENT CLASS**

**3.1     Settlement Class.**  For settlement purposes only, the Parties agree that the Court should certify a Settlement Class in the Actions pursuant to Fed. R. Civ. P. 23(b)(3), defined as follows:

> All entities in the United States and its Territories that issued
> payment cards identified as having been at risk in an alert issued

10

by Visa or MasterCard as a result of the payment card data breach
that was publicly disclosed by Kmart on October 10, 2014.

Excluded from the Settlement Class are all entities that have entered or will enter into a separate release with Kmart, including American Express Company and DFS Services LLC (Discover), and all entities that validly request exclusion from the Settlement Class pursuant to Section 4.4 of the Settlement Agreement.

If the Court enters the Preliminary Approval Order, the parties agree they will not assert that such action is an adjudication of any fact or issue for any purpose other than the effectuation of this Agreement or that it may be considered as law of the case or *res judicata* or have collateral estoppel effect in this or any other proceeding.

## 4.      NOTICE, OPT-OUTS, AND OBJECTIONS

**4.1      Manner of Giving Notice to the Class**.  Pursuant to the Preliminary Approval Order, the Settlement Administrator will provide notice to Class Members in accordance with a notice plan to be approved by the Court in such Order.

**4.2      Other Required Notice**.  Sears/Kmart will serve, or cause to be served, the notice required under 28 U.S.C. § 1715.

**4.3      Payment of Expenses Relating to Notice and Administration**.  All costs associated with providing notice to Class Members and with administration of the Settlement will be paid from the Settlement Class Escrow Account.

**4.4      Opt Outs by Class Members**.

**4.4.1      Procedures for Opt-Outs**.  The Parties will request that the Court order procedures for Class Members to request to "opt out" (i.e., to be excluded from the Settlement Class) in accordance with the provisions in the Preliminary Approval Order.  No request to opt

11

out shall be valid unless the Class Member requests to be excluded from the settlement. Exclusion requests must be made in writing, including the Class Member's name, address, telephone number, statement that the Class Member wants to be excluded, the name of this proceeding (*Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228), and signature. A request to opt out shall be considered valid if the Class Member sends a letter by U.S. Mail that includes all of the information set forth in the prior sentence, and sends such completed form or letter to the Settlement Administrator at the address provided in the Notices attached as Exhibit D, postmarked no more than ninety (90) days after the date the Preliminary Approval Order is entered. Each Class Member that submits a request to opt out in accordance with the previous sentence and the provisions of the Preliminary Approval Order shall be excluded from the Settlement Class. Class Members seeking to opt out will also be asked to provide the number of accounts that they issued. Each Class Member that does not submit a valid request to opt out shall remain in the Settlement Class and shall be bound by the Settlement and release provided in Section 7 of this Agreement.

      **4.4.2** **Opt-Outs Report.** Within seven (7) days of the date set forth in the Notices by which opt-out requests must be postmarked, Settlement Class Counsel shall cause the Settlement Administrator to send to Settlement Class Counsel and to Sears/Kmart's Counsel: (i) copies of all requests to opt out; (ii) a report identifying (a) each Class Member that submitted a request to opt out; (b) the number of accounts issued by each such Class Member; and (c) the Settlement Administrator's determination as to the validity or invalidity of each such Class

Member's request to opt out pursuant to the provisions of Section 4.4.4 of this Settlement Agreement and the Preliminary Approval Order (the "Opt-Outs Report").

      **4.4.3**   Within fourteen (14) days of the Settlement Administrator's delivery of the Opt-Outs Report pursuant to Section 4.4.2, the Settlement Class Representatives, through Settlement Class Counsel, and Sears/Kmart, through Sears/Kmart's Counsel, shall have the opportunity to submit a request that the Settlement Administrator correct any information included in the Opt-Outs Report that is believed to be incorrect, including but not limited to information regarding the number of accounts actually issued by a Class Member (a "Correction Request").  Any such Correction Request must be emailed to the Settlement Administrator and delivered to all other Parties in accordance with Section 13 of this Agreement.  The Parties shall meet and confer regarding any Correction Requests prior to submitting them to the Settlement Administrator.  If there is disagreement among the Parties regarding a Correction Request, the Party disputing the Correction Request shall have three (3) business days following the submission of the Correction Request to submit a request that the Settlement Administrator reject the Correction Request.

      **4.4.4**   If any party submits a Correction Request pursuant to the procedures set forth in Section 4.4.3, then Settlement Class Counsel shall cause the Settlement Administrator, not later than seven (7) days after the later of (i) the date of the Correction Request and (ii) any objection or dispute regarding such Correction Request, to deliver to Settlement Class Counsel and to Sears/Kmart's Counsel another version of the Opt-Outs Report, incorporating any requested corrections that the Settlement Administrator determines should be made.  Any Opt-Out Report delivered pursuant to this Section 4.4.4 shall supersede and replace any prior version of the Opt-Outs Report.

**4.4.5**    Following the time period for the submission of any Correction Requests and, if applicable, the Settlement Administrator's delivery of another version of the Opt-Outs Report pursuant to Section 4.4.4, and no later than fourteen (14) days before the Final Approval Hearing date, Settlement Class Counsel shall cause the Settlement Administrator to file the then-operative Opt-Outs Report with the Court.  To the extent there is any dispute between the Parties regarding any determination made in the Opt-Outs Report filed with the Court, the Parties shall present such disputes to the Court for resolution no later than seven (7) days before the Final Approval Hearing date.  In the event that no dispute is presented pursuant to this Section 4.4.5, the "Final Opt-Outs Report" shall be the Opt-Outs Report filed with the Court pursuant to this Section 4.4.5.  In the event that a Party presents a dispute to the Court pursuant to this Section 4.4.5, the "Final Opt-Outs Report" shall be the Opt-Outs Report filed with the Court pursuant to this Section 4.4.5, as modified (if at all) by the Court's ruling on such dispute.

**4.4.6    Effect of Opt Outs by Class Members**.  Either Party shall have the right to terminate the Settlement Agreement if Settlement Class Members who issued a certain percentage of the total number of accounts submit valid requests to opt out as separately agreed to by the Parties and submitted to the Court for *in camera* review.

**4.5    Objections by Settlement Class Members**

**4.5.1    Procedure for Objections**.  The Parties will request that the Court order procedures for Settlement Class Members to object to the approval of the Settlement, the Application, or both, in accordance with the provisions in the Preliminary Approval Order.

**5.    WAIVER OF APPEAL OF CARD BRAND ASSESSMENTS AND SETTLEMENT FUND DISTRIBUTION**

**5.1    MasterCard Assessment**.  As part of this Agreement, Sears/Kmart has agreed to drop its challenge to and pay the final assessment (including any fines and administration costs)

relating to the Data Breach that was issued by MasterCard pursuant to its Account Data Compromise ("ADC") program ("the Final MasterCard Assessment") and has withdrawn the appeal it filed pursuant to MasterCard's Security Rules and Procedures manual.  The funds received by MasterCard for the Final MasterCard Assessment in the amount of $5,798,909.32 will be distributed pursuant to the ADC program guidelines.  As part of this Agreement, Sears/Kmart has agreed to provide the full MasterCard Assessment amount to Class Members.

**5.2    Visa Assessment.**  After negotiating in good faith with Visa to reduce the assessment issued by Visa pursuant to its Global Compromised Account Recovery ("GCAR") program relating to the Data Breach ("the Original Visa Assessment"), as part of this Agreement, Sears/Kmart has agreed to waive its right to appeal and pay the final assessment. The funds received by Visa for the Final Visa Assessment in the amount of $7,574,497.18 will be distributed through the GCAR program guidelines.  As part of this Agreement, Sears/Kmart has agreed to provide the full Visa Assessment amount to Class Members.

**5.3    Distribution of Monetary Payments to Settlement Class Members**.  Settlement Class Members will also be eligible to receive additional payments from the Settlement Class Escrow Account to the extent provided for in the Distribution Plan, attached as Ex. A.

**5.3.1    Settlement Class Escrow Account**.  Within five (5) business days of the later of (i) the Court's Preliminary Approval Order and (ii) Settlement Class Counsel's provision to Sears/Kmart of the account information for the Settlement Class Escrow Account, Sears/Kmart shall pay $200,000 of the Settlement Fund into the interest-bearing Settlement Class Escrow Account to be used in the first instance to pay the costs of notice and administration of the Settlement.  To the extent that the costs of notice and administration of the Settlement exceed $200,000, such costs shall be paid out of the remainder of the Settlement Class Escrow Account;

Sears/Kmart shall not bear any obligations relating to such costs. Sears/Kmart shall pay $5,000,000 into the interest-bearing Settlement Class Escrow Account within five (5) business days after the Effective Date. The money in the Settlement Class Escrow Account shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. The Escrow Agent shall be responsible for all administrative, accounting and tax compliance activities in connection with the Settlement Class Escrow Account and the monies deposited into the Settlement Class Escrow Account, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-1. Sears/Kmart shall provide to the Escrow Agent any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Class Escrow Account pursuant to Treas. Reg. § 1.468B-1. All taxes on income or interest generated by the Settlement Class Escrow Account, if any, shall be paid out of the Settlement Class Escrow Account.

      **5.3.2 Distribution of the Settlement Class Escrow Account**. The Settlement Class Escrow Account shall be used to (i) pay all costs and expenses associated with notice and administration of the Settlement, including but not limited to any taxes due on the account, as set forth in Section 5.3.1 of the Agreement; (ii) make payments to the Settlement Class Members in accordance with the Distribution Plan, and as approved by the Court; and (3) make any Service Payments to Settlement Class Representatives as set forth in Section 8.3 of the Agreement.

      **5.3.3 Distribution of Remaining Funds**. The Parties intend that the entire Settlement Class Escrow Account be distributed pursuant to the claims administration process, and the Distribution Plan is designed to avoid remaining funds. To the extent that any funds remain, no portion of the Settlement Class Escrow Account shall be returned to Sears/Kmart.

Any such remaining funds will be distributed by the Settlement Administrator pro rata to eligible Settlement Class Members or as otherwise directed by the Court.

**5.3.4 All Claims Satisfied.** Each Settlement Class Member shall look solely to the payments due to any such Settlement Class Member as a result of the Assessment by Visa, the Assessment by MasterCard, and/or the Distribution Plan for satisfaction of all Plaintiff Released Claims.

**5.3.5 No Responsibility for Distribution.** After the Effective Date, Sears/Kmart and its insurers shall have no responsibility, financial obligation, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, or with respect to the administration of the settlement or the Settlement Class Escrow Account.

## 6. INJUNCTIVE RELIEF.

**6.1** Kmart agrees to use commercially reasonable efforts to implement the following security protocols within six (6) months after the Effective Date. Kmart will notify Settlement Class Counsel, in writing, five (5) months after the Effective Date should it appear that any of the following measures will not be implemented within the six (6) month time period contemplated by this Paragraph.

**6.1.1 Information Security Responsibilities.** Sears/Kmart will appoint and maintain an executive with responsibility for the company's program(s) to protect the security of cardholder data.

**6.1.2 Cardholder Data Risk Assessments.** Sears/Kmart will obtain an annual independent assessment of its compliance with the Payment Card Industry Data Security Standard, Requirements and Security Assessment Procedures, Version 3.1 or later.

**6.1.3 Vendor Program.** Sears/Kmart will develop and use reasonable steps to select and engage service providers that are capable of maintaining reasonable safeguards to

protect cardholder data. Sears/Kmart will evaluate the use of two-factor authentication for all third party Vendors with access to Sears/Kmart's cardholder data, and implement such two-factor authentication if technically feasible and practical for Sears/Kmart's and its Vendor's existing computer systems and networks. For the avoidance of doubt, "Vendors" excludes full or part-time employees, consultants hired in their individual capacity by Sears/Kmart, contractors hired in their individual capacity by Sears/Kmart, or other persons hired in their individual capacity by Sears/Kmart.

      **6.1.4** **Employee Education.** Sears/Kmart will develop and implement a program to educate and train appropriate members of its workforce on the importance of information security and the protection of cardholder data.

      **6.1.5** **Enhanced Security Measures.** Sears/Kmart will:

      **6.1.5.1** Implement and utilize Point-to-Point Encryption (P2PE) for cardholder data at all of Sears/Kmart's card-present point-of-sale endpoints, except for endpoints at Sears/Kmart retail locations that are scheduled for closure on or before December 31, 2016;

      **6.1.5.2** Implement and utilize EMV chip card technology at all of Sears/Kmart's card-present point-of-sale endpoints, except for endpoints at Sears/Kmart retail locations that are scheduled for closure on or before December 31, 2016; and

      **6.1.5.3** Build a tokenization vault to serve as a centralized and secured repository for retaining all Sears/Kmart cardholder data (once implemented, all applications that process cardholder data for Sears/Kmart will store tokens instead

of cardholder data, thereby increasing the security by limiting the storage of this sensitive information in a centralized, highly controlled repository).

    **6.2**    The obligations set forth in this Section 6 concerning Injunctive Relief shall expire on the third anniversary of the Effective Date.

## 7.    RELEASE OF CLAIMS

    **7.1**    **Release of Settlement Class Claims**.  As of the Effective Date, the Settlement Class Representatives and all other Settlement Class Members, on their own behalves and on behalf of their respective past and present parents, subsidiaries, affiliates, associates, divisions, successors, predecessors, assignors, assignees, and assigns, and each of their respective past and present officers, directors, shareholders, members, insurers, agents, and employees (associates) ("Plaintiff Releasing Persons"), shall be deemed to have waived any right to assert against Sears/Kmart, MasterCard, Visa, and these entities' present, former, and future parents, subsidiaries, affiliates, divisions, successors, predecessors, associates, agents, assignors, assignees, and assigns, and each of their respective present, former or future, officers, directors, shareholders, insurers, employees (associates), agents, acquirers, processors, representatives, attorneys, and accountants (collectively, "Released Parties"), and to have irrevocably released and forever discharged the Released Parties from and for, any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they ever had, now have, or may claim now or in the future to have, that (i) were alleged or asserted against any of the Released Parties in the Action or Complaint; (ii) arise out of the same nucleus of operative facts as any of the claims alleged or asserted in the Action or Complaint; or (iii) arise out of the Data Breach or

19

any disclosures or notices that Sears/Kmart made or failed to make about the Data Breach or any assessments by MasterCard and/or Visa relating to the Data Breach ("Plaintiff Released Claims").

     **7.2**    **Release of Plaintiff Released Parties**.  As of the Effective Date, Sears/Kmart, and those entities' present, former, and future parents, subsidiaries, affiliates, divisions, successors, predecessors, associates, agents, assignors, assignees, and assigns, and each of their respective present, former or future, officers, directors, shareholders, insurers, employees (associates), agents, acquirers, processors, representatives, attorneys, and accountants (collectively, "Sears/Kmart Released Parties") shall be deemed to have waived any right to assert against Settlement Class Representatives, the other Settlement Class Members, and Settlement Class Counsel ("Plaintiff Released Persons"), and to have irrevocably released and forever discharged the Plaintiff Released Persons from and for, any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which it ever had, now has, or may claim now or in the future to have, relating to the institution or prosecution of the Action ("Sears/Kmart Released Claims").

     **7.3**    **Unknown Claims**.  For purposes of the releases set forth in Sections 7.1 and 7.2 and the Final Judgment, "unknown claims" means claims that Sears/Kmart and the Plaintiff Releasing Persons do not know or suspect to exist in their favor as of the entry of the Final Judgment, which if known by them might have affected their settlement of the Actions or the Complaint.  It is the intention of the Parties and the Settlement Class Members that, upon the

20

Effective Date, Sears/Kmart and each of the Plaintiff Releasing Persons shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted: (a) by section 1542 of the California Civil Code, or (b) by any law of any state or territory of the United States, federal law, or principle of common law which is similar, comparable, or equivalent to section 1542 of the California Civil Code, the provisions, rights and benefits of any statute or law which might otherwise render a general release unenforceable with respect to unknown claims. Section 1542 of the California Civil Code reads:

> Section 1542. General Release, extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Upon the Effective Date, Sears/Kmart and each of the Plaintiff Releasing Persons shall be deemed to have acknowledged that such party is aware that such party may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Plaintiff Released Claims and Sears/Kmart Released Claims, but it is such party's intention to, and each of them shall be deemed upon the Effective Date to have, waived and fully, finally, and forever settled and released any and all Plaintiff Released Claims and Sears/Kmart Released Claims, whether known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

**7.4   Bar to Future Suits**.  Upon entry of the Final Judgment, Sears/Kmart, the Settlement Class Representatives and other Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Plaintiff Released Persons, Sears/Kmart Released Persons or based on any actions

21

taken by any of the Plaintiff Released Persons or Sears/Kmart Released Persons that are authorized or required by this Agreement or by the Final Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

8. **SERVICE PAYMENTS, ATTORNEYS' FEES AND LITIGATION EXPENSES AND REIMBURSEMENTS**

    **8.1**    **Attorneys' Fees and Expenses**. Sears/Kmart understands that Settlement Class Counsel will apply for a reasonable award of attorneys' fees and expenses (the "Fee Request"), which shall be separate from the Settlement Fund. The Parties will discuss and attempt to negotiate an amount for the Fee Request to which Sears/Kmart will not object. If the Parties are unable to agree on this amount, Plaintiffs will file a motion in the Action for approval of the Fee Request, which Sears/Kmart may oppose. Alternatively, the Parties may agree to have Judge Wayne Andersen mediate or arbitrate a proposed fee which the Parties will agree not to challenge, and which must be submitted to the Court as a Fee Request for approval. Sears/Kmart will pay the attorneys' fees and expenses awarded, subject to final approval by the Court.

    **8.2**    **Payment Procedure**. Within ten (10) business days of the Effective Date, Sears/Kmart shall cause any attorneys' fees and costs awarded by the Court pursuant to the Fee Request, to be paid to a Trust Account to be agreed upon by the Parties. Settlement Class Counsel shall be solely responsible for distributing any awarded attorneys' fees and costs.

    **8.3**    **Service Payments.** Any Service Payments made to Settlement Class Representatives will be paid from the Settlement Fund as contemplated in Sections 1.46 and 5.3.2 of the Agreement. Settlement Class Counsel may apply for a Service Payment of up to $10,000.00 to be paid to each of the five Settlement Class Representatives in this case. The final amount of any Service Payments will be determined by the Court. Settlement Class

Counsel will be solely responsible for making any application to the Court on behalf of the Settlement Class Representatives for Service Payments (the "Application") and for distributing any awarded Service Payments to the Settlement Class Representatives.

      **8.4**    **No Additional Amounts Due**.  Sears/Kmart shall not be liable for any additional fees, costs, or expenses of Settlement Class Counsel, the Settlement Class Representatives, or any other Settlement Class Member in connection with the Action or Complaint, or for any other service awards.  Settlement Class Counsel and Settlement Class Representatives agree that they will not seek any additional fees, costs, expenses, or service awards from Sears/Kmart in connection with the Actions or the Complaint.

**9.**      **SETTLEMENT ADMINISTRATOR'S REPORTING OBLIGATIONS**

      **9.1**    The Settlement Administrator shall administer various aspects of the Settlement, including:

      **9.1.1**    Obtaining the name, mailing address, and/or e-mail address information of Settlement Class Members for the purpose of sending Mail and E-mail Notice to Settlement Class Members;

      **9.1.2**    With the cooperation and assistance of counsel for Sears/Kmart, obtaining information necessary to establish a reasonably practical procedure to verify Settlement Class Members eligibility as set forth in the Distribution Plan;

      **9.1.3**    Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

      **9.1.4**    Establishing and maintaining the Settlement Website;

      **9.1.5**    Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of the Settlement Class Members who call with or otherwise communicate such inquiries;

**9.1.6**    Responding to any mailed Settlement Class Member inquiries;

**9.1.7**    Processing all written notifications of exclusion from the Settlement Class;

**9.1.8**    Providing bi-weekly reports and the reports required by Section 4.4 of the Agreement related to Opt-Outs;

**9.1.9**    No later than fourteen (14) days before the Final Approval Hearing date, the Settlement Administrator shall file with the Court a sworn declaration verifying that notice was provided to Class Members as required in the Preliminary Approval Order; and

**9.1.10**    Performing any function related to settlement administration at the agreed-upon instruction of both Settlement Class Counsel and Sears/Kmart.

**10.    CONTINGENCIES**

**10.1    Contingencies**.    This Agreement shall be deemed terminated if:  (a) the Court fails to enter the Preliminary Approval Order; (b) the Court fails to enter the Final Judgment; (c) the Final Judgment is not fully upheld on appeal, if any appeal of the Final Judgment is taken; (d) the Parties elect to terminate pursuant to Section 4.4.6 above; or (e) by written instrument signed by all Parties or their successors in interest or their duly authorized representatives prior to the Effective Date.

**10.2    Effect of Termination.**

**10.2.1**    In the event that this Agreement is terminated pursuant to Section 4.4.6, or fails to become effective for any reason whatsoever, then all obligations under this Agreement shall cease to be of any force and effect, and the Parties shall be deemed to have reverted to their respective positions as of October 21, 2015, and they shall proceed in all respects as if this Agreement, its exhibits, and any related agreements or orders, including any modification of the class definition pursuant to the Preliminary Approval Order, had never been executed or entered, except that the provisions set forth in this Section 10.2.1, and in Section 2.1, Section 10.2.2,

Section 12, Section 14.2, and Section 15.6 shall survive any such termination.  Further, the fact that Sears/Kmart did not oppose the certification of the Settlement Class, or that the Court preliminary or finally approved the certification of a Settlement Class, shall not be used or cited thereafter by any person or entity, including in any contested proceeding relating to the certification of any class.

          **10.2.2**  In the event this Agreement is terminated, or fails to become effective for any reason whatsoever, then the Parties agree to jointly seek an order from the Court restoring the Parties to their positions as of October 21, 2015, with respect to the Action and Complaint.

## 11.    CONTINUING JURISDICTION

The Court shall retain jurisdiction to implement and enforce this Agreement's terms and the Final Judgment.

## 12.    PUBLICITY; CONFIDENTIALITY

The Parties agree that all of their negotiations relating to this Settlement Agreement are, and shall remain, confidential and subject to the confidentiality provisions governing the Parties' mediation.  The Parties further agree that they will not make the settlement reflected herein public until the Settlement Agreement is formally submitted to the Court.  In issuing public statements, including responding to any inquiries from the public media concerning the Action or the Complaint or the settlement of the Action or the Complaint, the Settlement Class Representatives, Settlement Class Counsel, Sears/Kmart, and Sears/Kmart's Counsel will limit their statements to the provision of such factual information as is contained in the settlement notice, the Settlement Agreement, the pleadings, and any of the various court transcripts or orders in the Action or the Complaint.  The Settlement Class Representatives, Settlement Class Counsel, Sears/Kmart, and Sears/Kmart's Counsel may further state to the effect that "the matter has been settled to the satisfaction of all parties."  Nothing in this Section 12 shall limit (a) the

ability of Settlement Class Counsel or the Settlement Class Representatives, after the Settlement Agreement is formally submitted to the Court, to communicate privately with a Settlement Class Member concerning the settlement, provided that no information regarding the negotiations relating to the Settlement are disclosed, (b) the ability of Sears/Kmart or its successors to make such public disclosures as the federal securities laws require or to provide information about the settlement to state and federal regulators, other government officials, or its insurers/reinsurers after the Settlement Agreement is formally submitted to the Court, (c) the ability of Sears/Kmart to communicate with MasterCard or Visa about the Settlement and any card brand assessments, in order to ensure that the card brand assessments are handled in a manner contemplated by the Settlement, or (d) the ability of Sears/Kmart to notify its insurers about the Settlement.

## 13.   NOTICES

Any communication, verification, or notice sent by any Party in connection with this Agreement shall be sent by email (in which case it will be effective on transmission to each representative of a party for whom an email address is listed below, unless the party making delivery is notified that the email was not received by such representative of the other party) or overnight mail (in which case, it will be effective on the business day after being deposited with a reputable delivery service) as follows:

**To Settlement Class Representatives:**

**MURRAY LAW FIRM**
Arthur M. Murray
650 Poydras Street,
Suite 2150
New Orleans, LA
70130
504-525-8100
amurray@murray-
lawfirm.com

**HAUSFELD, LLP**
James J. Pizzirusso
1700 K. Street, NW
Suite 650
Washington, DC 20006
202-540-7200
jpizzirusso@hausfeld.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Karen H. Riebel
100 Washington
Avenue South
Suite 2200
Minneapolis, MN
55401
612-339-6900
khriebel@locklaw.com

**To Sears/Kmart:**

**KING & SPALDING LLP**
Phyllis B. Sumner
S. Stewart Haskins
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-4600
psumner@kslaw.com
shaskins@kslaw.com

**Sears Holdings Management Corporation**
c/o Legal Intake
3333 Beverly Road
Hoffman Estates, Illinois  60179
847-286-0405
legalint@searshc.com


14.     **MISCELLANEOUS**

14.1   **Entire Agreement**.  This Agreement contains the entire agreement between the

Parties and supersedes all prior understandings, agreements, or writings regarding the subject

matter of this Agreement.

14.2   **No Liability**.   Nothing contained herein, or in any document or instrument

contemplated by this Agreement, is to be construed as an admission of wrongdoing or liability

by any party, such wrongdoing and liability being expressly denied, and no final adjudication having been made. The Parties have entered into this Agreement solely as a compromise of all claims for the purpose of concluding the disputes between them, and the Agreement may not be used by any third party against any Party. Pursuant to Fed. R. Evid. 408, the entering into and carrying out of this Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession by any of the Parties or a waiver of any applicable statute of limitations, and shall not be offered or received into evidence in any action or proceeding against any Party in any court, administrative agency or other tribunal for any purpose whatsoever.

14.3 **Amendment**. This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives.

## 15. REPRESENTATIONS AND WARRANTIES

15.1 **No Additional Persons with Financial Interest**. Sears/Kmart shall not be liable for any additional attorneys' fees and expenses of any Settlement Class Members' counsel, including any potential objectors or counsel representing a Settlement Class Member individually, other than what is expressly provided for in this Agreement. Settlement Class Counsel agree to hold Sears/Kmart harmless from any claim that the term "Settlement Class Counsel" as defined in Section 1.42 of this Agreement fails to include any person or firm who claims that they are entitled to a share of any attorneys' fees awarded to Settlement Class Counsel in connection with the Action or the Financial Institutions Complaint.

15.2 **Parties Authorized to Enter into Agreement**. Each person executing this Agreement represents and warrants that he or she is fully authorized to enter into this Agreement and to carry out the obligations provided for herein. Each person executing this

Agreement on behalf of Settlement Class Representatives or Sears/Kmart covenants, warrants and represents that he or she is and has been fully authorized to do so by the Settlement Class Representatives or Sears/Kmart. Each Settlement Class Representative and Sears/Kmart hereby further represents and warrants that it intends to be bound fully by the terms of this Agreement.

**15.3 Governing Law**. This Agreement is intended to and shall be governed by the laws of the State of Illinois without regard to its choice of law principles.

**15.4 Exclusive Jurisdiction and Venue for Enforcement.** Any dispute relating to this Settlement Agreement and/or Judgement shall be resolved exclusively in the U.S. District Court for the Northern District of Illinois. The Parties agree to submit to the exclusive jurisdiction and venue for the purposes described above.

**15.5 No Construction Against Drafter**. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

**15.6 Agreement Binding on Successors in Interest**. This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

**15.7 Execution in Counterparts**. This Agreement shall become effective upon its execution by all of the Parties' attorneys. The signatories may execute this Agreement in counterparts. Each counterpart shall be deemed to be an original, and execution of counterparts shall have the same force and effect as if all signatories had signed the same instrument. Signatures sent in PDF format by email will constitute sufficient execution of this Agreement.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

*Counsel for Sears/Kmart*

**KING & SPALDING LLP**
Phyllis B. Sumner
S. Stewart Haskins
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-4600
psumner@kslaw.com
shaskins@kslaw.com

*Sears/Kmart*

Andrew M. Johnstone
Deputy General Counsel – Litigation
Sears Holdings Management Corporation
3333 Beverly Road, B6-349B
Hoffman Estates, Illinois 60179
847-286-8157
andrew.johnstone@searshc.com

*Counsel for Sears/Kmart*

**KING & SPALDING LLP**
Phyllis B. Sumner
S. Stewart Haskins
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-4600
psumner@kslaw.com
shaskins@kslaw.com

*Sears/Kmart*

Andrew M. Johnstone
Deputy General Counsel – Litigation
Sears Holdings Management Corporation
3333 Beverly Road, B6-349B
Hoffman Estates, Illinois 60179
847-286-8157
andrew.johnstone@searshc.com

*Settlement Class Counsel*

**MURRAY LAW FIRM**
Arthur M. Murray
650 Poydras Street, Suite 2150
New Orleans, LA 70130
504-525-8100
amurray@murray-lawfirm.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Karen H. Riebel
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
612-339-6900
khriebel@locklaw.com

**HAUSFELD, LLP**
James J. Pizzirusso
1700 K. Street, NW
Suite 650
Washington, DC 20006
202-540-7200
jpizzirusso@hausfeld.com

31

# EXHIBIT A

## EXHIBIT A:  SETTLEMENT FUND DISTRIBUTION PLAN

The Settlement Fund will be divided into two separate Tiers for distribution: Tier 1 ("Non VisaNet Tier") and Tier 2 ("All Class Tier").

**Tier 1**

In Tier 1, only Settlement Class Members who issued Non VisaNet Cards will be eligible to make a claim for each Non VisaNet Compromised Payment Card that they issued and for which they received an Alert related to the Data Breach.  Settlement Class Members eligible to submit a claim in Tier 1 must submit documentation consisting of copies of the Data Breach Alerts that they received on their Non VisaNet Cards.

Each Settlement Class Member who makes a valid claim in Tier 1 will be eligible to receive a minimum payout of $1.00 per Non VisaNet Compromised Payment Card up to a maximum payout of $2.38 per card, depending on the total number of eligible claims made in this Tier.  The maximum overall payment in Tier 1 will be capped at $3.4 million.  Any Settlement Funds remaining from Tier 1 (if fewer claims are made than will exhaust Tier 1) will move into Tier 2 and be eligible for distribution to any Settlement Class Member (as described below).

**Tier 2**

Tier 2 will consist of the remaining Settlement Fund (after accounting for all costs of class notice and settlement administration and service awards to the Named Plaintiffs) minus the payouts in Tier 1.  Every Settlement Class Member will be eligible to submit claims for any remaining unreimbursed fraud and card reissuance damages related to the Data Breach by submitting documentation detailing such damages.

For fraud damages, Settlement Class Members must submit documentation consisting of proof of all fraud expenses incurred within the Fraud Window on Compromised Payment Cards.  For card reimbursement damages, Settlement Class Members must submit documentation of proof of the actual costs of replacing physical payment cards on Compromised Payment Cards.  Any amounts that the Settlement Class Member recovered through the ADC or GCAR Assessment processes (discussed above) or from Tier 1 payouts will be subtracted from the damages claimed in order to determine the Maximum Payout Amount, which will then be distributed to eligible Settlement Class Members based on the claims submitted.  If the total valid claims in the Tier 2 Maximum Payout Amount exceed the remaining Settlement Fund in Tier 2, any payouts will be distributed to eligible Settlement Class Members on a pro rata basis.

The Claims Administrator will review and make final eligibility determinations for all claims in Tier 1 and Tier 2.

# EXHIBIT B & C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| GREATER CHAUTAUQUA FEDERAL CREDIT UNION, FIRST CHOICE FEDERAL CREDIT UNION, GULF COAST BANK & TRUST COMPANY, GOVERNMENTAL EMPLOYEES CREDIT UNION, and OTEEN V.A. FEDERAL CREDIT UNION, individually and on behalf of a class of similarly situated financial institutions, | : : : : : : : : : : | Case No: 1:15-cv-02228 |
|  | : | **JURY TRIAL DEMANDED** |
| Plaintiffs, | : : |  |
| v. | : : |  |
| KMART CORPORATION and SEARS HOLDINGS CORPORATION, | : : : |  |
| Defendants. | : : |  |

## [PROPOSED] ORDER AND FINAL JUDGMENT

Plaintiffs Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union ("Plaintiffs"), individually and on behalf of the Settlement Class), and Defendants Kmart Corporation ("Kmart") and Sears Holdings Corporation ("Sears") (collectively "Sears/Kmart") entered into a Class Action Settlement Agreement . On _____, the Court entered its Order granting preliminary approval of the Class Action Settlement. Among other things, the Preliminary Approval Order authorized Settlement Class Counsel to disseminate notice of the settlement, the fairness hearing, and related matters to the Settlement Class. Notice was provided to the Settlement Class pursuant to the Preliminary Approval Order and the Court held a fairness hearing on _____.

Having considered Plaintiffs' Motion for Final Approval of Class Action Settlement, oral

2

argument presented at the fairness hearing, and the complete records and files in this matter,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      This Court has jurisdiction over the subject matter of this litigation.

2.      Terms capitalized in this Order and Final Judgment have the same meanings as those used in the Settlement Agreement.

*3.*      "Action" means the action brought on behalf of financial institutions against Sears/Kmart relating to the Data Breach that was consolidated in the United States District Court for the Northern District of Illinois matter entitled *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228.

4.      The Court finds, for settlement purposes only, that the Settlement Class satisfies the applicable standards of Federal Rule of Civil Procedure 23(b)(3):

(a) The Settlement Class is so numerous that joinder of all Settlement Class Members is sufficiently impracticable;

(b) There are sufficient issues of law and fact common to the Settlement Class;

(c) the claims of the Settlement Class Representatives are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members;

(d) the Settlement Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Settlement Class Representatives have no interests antagonistic to or in conflict with the Settlement

Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class;

(e) Questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and

(f) A class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

5.      The following named Plaintiffs and Settlement Class Members are designated and appointed as the Settlement Class Representatives: Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union.  The Court finds that the Settlement Class Representatives are similarly situated to absent Class Members and therefore typical of the Class and that they will be adequate Settlement Class Representatives.

6.      The Court finds that the following counsel are experienced and adequate counsel and are hereby designated as Settlement Class Counsel pursuant to Fed. Civ. P. 23(g):  Murray Law Firm, Hausfeld, LLP, and Lockridge Grindal Nauen P.L.L.P.

7.      The Preliminary Approval Order outlined the form and manner by which the Settlement Class Counsel would provide the Settlement Class with notice of the settlement, the fairness hearing, and related matters. The notice program included individual notice to members of the Settlement Class. Proof that the notice complied with the Preliminary Approval Order has been filed with the Court. This notice program fully complied with Fed. Civ. P. 23 and the requirements of due process. It provided due and adequate notice to the Settlement Class.

8.      The Court approves, as to form and content, the initial Class Action Fairness Act ("CAFA") Notice that was served within 10 days after the filing of the Motion for Preliminary

Approval of the Class Action Settlement and the supplemental CAFA Notice that was served thereafter (an example of each Notice is attached as Exhibit 1). The Court finds that the Attorney General of the United States and state attorneys general have received notice of the Settlement Agreement in accordance with the terms of CAFA, 28 U.S.C. § 1715(b).

9.     The settlement was attained following an extensive investigation of the facts. It resulted from vigorous arm's-length negotiations which were undertaken in good faith by counsel with significant experience litigating class actions.

10.     By order of this Court dated _____, pursuant to Fed. R. Civ. P.23, the Court certified the following class for settlement purposes only (the "Settlement Class"):

> All entities in the United States and its Territories that issued payment cards identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card data breach that was publicly disclosed by Kmart on October 10, 2014.

> Excluded from the Settlement Class are all entities that have entered or will enter into a separate release with Kmart, including American Express Company and DFS Services LLC (Discover).

11.     Final approval of the Class Action Settlement is hereby granted pursuant to Fed. R. Civ. P. 23(e), because it is "fair, reasonable, and adequate" to the Settlement Class. In reaching this conclusion, the Court considered the complexity, expense, and likely duration of the litigation, the Settlement Class's reaction to the settlement, and the result achieved.

12.     The entities identified on Exhibit 2 hereto have timely and validly requested exclusion from the Settlement Class and, therefore, are excluded. Such entities are not included in or bound by this Order and Final Judgment. Such entities are not entitled to any recovery from the settlement proceeds obtained through this settlement.

13.     The Court hereby approves the Release of Claims, as set forth in the Settlement Agreement, and orders that (1) the Released Parties, as defined in the Settlement Agreement, are

hereby released and forever discharged from the Plaintiff Released Claims, as defined in the Settlement Agreement; and (2) the Plaintiff Released Persons, as defined by the Settlement Agreement, are hereby released and forever discharged from the Sears/Kmart Released Claims, as defined in the Settlement Agreement. Sears/Kmart, the Settlement Class Representatives and other Settlement Class Members shall be enjoined from prosecuting any claim they have released pursuant to the Settlement Agreement in any proceeding.

14.     The Escrow Account established by Settlement Class Counsel pursuant to the Settlement Agreement is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 4688 and the Treasury Regulations promulgated thereunder.

15.     Neither the Settlement Agreement, nor any act performed or document executed pursuant to the Settlement Agreement, may be deemed or used as an admission of wrongdoing in any civil, criminal, administrative, or other proceeding in any jurisdiction.

16.     Without affecting the finality of this Order and Final Judgment, the Court retains exclusive jurisdiction over: (a) the enforcement of this Order and Final Judgment; (b) the enforcement of the Settlement Agreement; (c) any application for attorneys' fees made by Settlement Class Counsel; any application for Service Payments for the Settlement Class Representatives; and (f) the distribution of the settlement proceeds to the Settlement Class Members.

17.     The Complaint in this Action shall be dismissed with prejudice __ days after this Order becomes final in accordance with the Settlement Agreement.

18.     Pursuant to Fed. R. Civ. P. 54, and finding no just reason for delay, the Court hereby directs the entry of final judgment as to Defendants Sears/Kmart.

19.     This Order shall become effective immediately.

**IT IS SO ORDERED.**

DATED:_____, 2016                    _____

                                                  The Honorable John Z. Lee
                                                  Judge, United States District Court
                                                  Northern District of Illinois

# EXHIBIT D

# Banks, credit unions and other financial institutions that issued payment cards that were compromised in the October 2014 Kmart data breach, could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement of lawsuits against Kmart Corporation ("Kmart") and Sears Holdings Corporation ("Sears") (collectively "Sears/Kmart") has been proposed in which Sears/Kmart has agreed to pay (as described below) to resolve claims brought by financial institutions relating to the payment card data breach announced by Sears/Kmart in October 2014 (the "Data Breach"), less any adjustments described herein.

- The lawsuit, called *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228, alleges violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols.

- The settlement includes $5,200,000 that Sears/Kmart will pay to the Settlement Fund that will be used to pay all costs of class notice and settlement administration, service awards to the Named Plaintiffs, and the claims of eligible Settlement Class members. In addition, Sears/Kmart agreed to waive its appeal rights concerning and to pay the final Visa and MasterCard assessments.

- Your entity's legal rights are affected whether you act or don't act. Read this notice carefully.

| SUMMARY OF LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **Submit a Claim Form** | The only way to get a payment from the Settlement Fund. |
| **Request Exclusion** | Get no payment from the Settlement Fund. This is the only option that may allow a Class Member to sue Sears/Kmart over the claims being resolved by this settlement. |
| **Object** | Write to the Court with concerns about the settlement. |
| **Go To A Hearing** | Ask to speak in Court about the fairness of the settlement. |
| **Do Nothing** | Get no payment from the Settlement Fund and give up rights to ever be part of any other lawsuit against Sears/Kmart about the claims being resolved in this settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ............................................................................. **PAGE 3**

    1.  Why did I get this notice package?
    2.  What is this lawsuit about?
    3.  Why is this a class action?
    4.  Why is there a settlement?

**WHO IS PART OF THE SETTLEMENT?** ...................................................... **PAGE 4**

    5.  What financial entities are part of the settlement?
    6.  Are there exceptions to being included?
    7.  I'm still not sure if my financial entity is included.

**THE SETTLEMENT BENEFITS** ................................................................ **PAGES 4-5**

    8.  What does the settlement provide?
    9.  How much will each financial institution's payment from the Settlement Fund be?
    10.  What else does the Settlement provide?

**HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM** ..................................... **PAGES 5-6**

    11.  How can a financial institution get a payment?
    12.  When would a financial institution get its payment?
    13.  What is my financial institution giving up to get a payment or remain in the Class?

**EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT** ................ **PAGE 6-7**

    14.  How can my financial institution opt out of the settlement?
    15.  If my financial institution doesn't exclude itself, can it sue Sears/Kmart for the same thing later?
    16.  If my financial institution excludes itself, can it get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ...................................................... **PAGES 7**

    17.  Does my financial institution have a lawyer in the case?
    18.  How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .......................................................... **PAGES 7-8**

    19.  How does my financial institution tell the Court that it doesn't like the settlement?
    20.  What's the difference between objecting and excluding/opting out?

**THE COURT'S FINAL APPROVAL HEARING** ................................................. **PAGE 8**

    21.  When and where will the Court decide whether to approve the settlement?
    22.  Does my financial institution or a representative have to attend the hearing?

**IF YOU DO NOTHING** ............................................................................. **PAGE 8**

    23.  What happens if my financial institution does nothing at all?

**GETTING MORE INFORMATION** ............................................................... **PAGE 9**

    24.  How do I get more information?

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

# BASIC INFORMATION

## 1. Why did I get this notice package?

The financial institution sent this notice may have issued payment cards included in one or more of the alerts sent out by Visa and MasterCard relative to the Data Breach.

The Court authorized this notice because you have a right to know about a proposed settlement of a class action lawsuit against Sears/Kmart and about all of the options before the Court decides whether to approve the settlement. If the Court approves the settlement and after objections and appeals are resolved, a settlement administrator appointed by the Court, as well as Visa and MasterCard, will distribute the funds pursuant to the terms of the settlement.

This package explains the lawsuit, the settlement, your entity's legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of Illinois, and the case is known as *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228. The financial institutions who sued are called "Plaintiffs," and the companies they sued, Sears and Kmart, are the "Defendants."

## 2. What is this lawsuit about?

On October 10, 2014, Sears/Kmart announced that on the prior day, October 9, 2014, Sears/Kmart's Information Technology team detected a criminal intrusion into Kmart's payment data systems, resulting in the potential compromise of payment card information. Plaintiffs have alleged common law claims and violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols. The lawsuits seek damages for the costs that Plaintiffs claim were incurred by financial institutions as a result of the Data Breach, such as card reissuance costs, amounts paid to cover fraud losses and other costs incurred on eligible accounts in responding to the Data Breach.

Sears/Kmart denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing.

## 3. Why is this a class action?

In a class action, one or more entities called "Class Representatives" sue on behalf of themselves and other entities with similar claims. All of these entities together are the "Class" or "Class Members." If the Court certifies the class, as it has done here for settlement purposes, one court resolves the issues for all class members, except for those who exclude themselves from the Settlement Class.

## 4. Why is there a settlement?

The Court has not decided in favor of Plaintiffs or Sears/Kmart. Instead, both sides agreed to a settlement. Settlements avoid the costs and uncertainty of a trial and related appeals, while providing benefits to members of the Settlement Class.

Settlement Class Representatives and the attorneys for the Settlement Class ("Settlement Class Counsel," see Question 16) think the settlement is best for all Class Members.

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 3 -

# WHO IS PART OF THE SETTLEMENT?

### 5. What financial entities are part of the settlement?

Financial entities are members of the Class and affected by the settlement if:

- They are a financial institution organized under the laws of the United States or a Territory thereof;
- They issued one or more payment cards that were identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card Data Breach that was publicly disclosed by Sears/Kmart on October 10, 2014; and
- They have not previously released claims against Sears/Kmart with respect to all of their compromised accounts.

### 6. Are there exceptions to being included?

Excluded from the Settlement Class is any Class Member that opts out (*see* Questions 13-15).

### 7. I'm still not sure if my financial entity is included.

If you are still not sure whether your financial entity is included, you can ask for free help. You can call 1-XXX-XXX-XXXX or visit www.XXXXXXXXXXXXXX.com for more information. Or you can fill out and return the claim form described in Question 10, to see if your financial entity qualifies.

# THE SETTLEMENT BENEFITS

### 8. What does the settlement provide?

Sears/Kmart has agreed to pay $5,200,000 pursuant to the settlement (the "Settlement Fund"). Sears/Kmart will transfer the funds directly to a Settlement Fund, out of which the settlement administrator will make payments to eligible Settlement Class Members. The cost of notifying the class and administering the settlement, as well as service awards which may be paid to the class representatives, will also come out of the Settlement Fund. Sears/Kmart has agreed to pay attorneys' fees, costs, and expenses (*see* Question 17).

In addition, Sears/Kmart has agreed to pay $5,923,909.32 to fund MasterCard's Account Data Compromise program relating to the Data Breach, which includes a $125,000 case management fee, and $7,574,497.18 to fund Visa's Global Compromised Account Recovery program relating to the Data Breach.

### 9. How much will each financial institution's payment from the Settlement Fund be?

If an entity is eligible to participate in the settlement (*see* Question 5), and does not "opt out" of this settlement (*see* Questions 13-15), it may elect to file a claim from the Settlement Fund. The Settlement Fund will be divided into two separate Tiers for distribution: Tier 1 ("Non VisaNet Tier") and Tier 2 ("All Class Tier"). They are as follows:

**Tier 1: Non VisaNet Tier**

In Tier 1, only Settlement Class Members who issued Non VisaNet Cards will be eligible to make a claim for each Non VisaNet Compromised Payment Card that they issued and for which they received an Alert related to the Data Breach. Settlement Class Members eligible to submit a claim in Tier 1 must submit documentation consisting of copies of the Data Breach Alerts that they received on their Non VisaNet Cards.

Each Settlement Class Member who makes a valid claim in Tier 1 will be eligible to receive a minimum payout of $1.00 per Non VisaNet Compromised Payment Card up to a maximum payout of $2.38 per card, depending

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 4 -

on the total number of eligible claims made in this Tier. The maximum total payments for Tier 1 claims will be capped at $3.4 million. Any Settlement Funds remaining from Tier 1 (if fewer claims are made than will exhaust Tier 1) will move into Tier 2 and be eligible for distribution to any Settlement Class Member (as described below).

**Tier 2: All Class Tier**

Tier 2 will consist of the remaining Settlement Fund (after accounting for all costs of class notice and settlement administration and service awards to the Named Plaintiffs) minus the payouts in Tier 1. Every Settlement Class Member will be eligible to submit claims for any remaining unreimbursed fraud and card reissuance damages related to the Data Breach by submitting documentation detailing such damages.

For fraud damages, Settlement Class Members must submit documentation consisting of proof of all fraud expenses incurred within the Fraud Window on Compromised Payment Cards. For card reimbursement damages, Settlement Class Members must submit documentation of proof of the actual costs of replacing physical payment cards on Compromised Payment Cards. Any amounts that the Settlement Class Member recovered through the ADC or GCAR Assessment processes or from Tier 1 payouts will be subtracted from the damages claimed in order to determine the Maximum Payout Amount, which will then be distributed to eligible Settlement Class Members based on the claims submitted. If the total valid claims in the Tier 2 Maximum Payout Amount exceed the remaining Settlement Fund in Tier 2, any payouts will be distributed to eligible Settlement Class Members on a pro rata basis.

| 10. What else does the Settlement provide? |
| --- |

Sears/Kmart has agreed to drop its challenge to and pay the final assessment (including any fines and administration costs) relating to the Data Breach that was issued by MasterCard pursuant to its Account Data Compromise ("ADC") program ("the Final MasterCard Assessment") and has withdrawn the appeal it filed pursuant to MasterCard's Security Rules and Procedures manual. The funds received by MasterCard for the Final MasterCard Assessment in the amount of $5,923,909.32 will be distributed pursuant to the ADC program guidelines.

After negotiating in good faith with Visa to reduce the assessment issued by Visa pursuant to its Global Compromised Account Recovery ("GCAR") program relating to the Data Breach ("the Original Visa Assessment"), as part of the Settlement Agreement, Sears/Kmart will waive its appeal and pay the final assessment. The funds received by Visa for the Final Visa Assessment in the amount of $7,574,497.18 will be distributed through the GCAR program guidelines.

In addition, as set forth in the Settlement Agreement, Sears/Kmart agreed to certain injunctive relief.

# HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM

| 11. How can a financial institution get a payment? |
| --- |

To qualify for a payment, each Settlement Class Member must complete and timely submit a valid claim form. There are two types of claim forms in this settlement: (i) Non VisaNet Claim Form (Tier 1) and (ii) All Class Tier Claim Form (Tier 2). To file a claim you need to visit www.XXXXXXXXXXXXX.com and choose which claim form you wish to file.

Once you have selected which claim form to file, read the instructions carefully, include all information and documents the form asks for, sign it, and file it through www.XXXXXXXXXXXXX.com by midnight on **MONTH DAY, 2016**.

| 12. When would a financial institution get its payment? |
| --- |

Payments to Settlement Class Members from the Settlement Fund will be made after the settlement is finally

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 5 -

approved and any appeals or other reviews have been completed. The Court will hold a hearing on **MONTH DAY, 2016** to decide whether to approve the settlement. If the Court approves the settlement, there may be appeals, which could take more than a year to resolve. You may visit www.XXXXXXXXXXXXX.com for updates on the progress of the settlement. Please be patient.

## 13. What is my financial institution giving up to get a payment or remain in the Class?

Unless a Settlement Class Member excludes itself from the settlement, it cannot sue Sears/Kmart or be part of any other lawsuit against Sears/Kmart about the issues this settlement resolves. Unless a Settlement Class Member excludes itself, all of the decisions by the Court will bind it. The specific claims against Sears/Kmart each Class Member is giving up ("releasing") by remaining in the Settlement Class are described in Section 7 of the Settlement Agreement. The Settlement Agreement is available at www.XXXXXXXXXXXXXX.com.

The Settlement Agreement describes the released claims in detail, so read it carefully. If you have any questions, you can talk to the law firms listed in Question 16 for free, or you can, of course, talk to your financial entity's legal counsel if you have questions about what this means.

If you want to keep your financial entity's rights to sue or continue to sue Sears/Kmart based on claims this settlement resolves, you must take steps to request exclusion from the Settlement Class (*see* Questions 13-15).

# EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT

## 14. How can my financial institution opt out of the settlement?

To exclude your financial institution from the settlement, or "opt out," you may complete and submit the Request For Exclusion form attached to this notice (the form is also available at www.XXXXXXXXXXXX.com), or, alternatively, send a letter by U.S. Mail that includes:

- The name of this proceeding (*Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228);
- Your financial institution's full name, address, and phone number;
- The words "Request for Exclusion" at the top of the document or a statement in the body of the letter requesting exclusion from the Class; and
- A signature of a person authorized to make such decisions for your financial institution.

Financial institutions that seek exclusion from the settlement through a letter are also asked to provide:

- The number of eligible accounts that the financial institution issued.

You must mail the completed Request for Exclusion form or above-described letter, postmarked no later than **MONTH DAY, 2016**, to:

XXXXXXXXXXXX
P.O. Box XXXX
CITY, ST ZIPCODE

Settlement Class Members who request exclusion from the Class will not get any payment as part of this settlement and cannot object to this settlement. They will not be legally bound by anything that happens in this lawsuit and may be able to sue (or continue to sue) Sears/Kmart in the future.

Either Party shall have the right to terminate the Settlement Agreement if Settlement Class Members who issued a certain percentage of the total number of accounts submit valid requests to opt out as separately agreed to by the Parties.

## 15. If my financial institution doesn't exclude itself, can it sue Sears/Kmart for the same thing later?

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 6 -

No. Unless a Settlement Class Member excludes itself, it will give up any right to sue Sears/Kmart for the claims that this settlement resolves. If your financial institution has a pending lawsuit against Sears/Kmart, speak to your legal counsel in that case immediately. You must request exclusion from this Class to bring or to continue a separate lawsuit. Remember, the exclusion deadline is **MONTH DAY, 2016**.

### 16. If my financial institution excludes itself, can it get money from this settlement?

No. If you request exclusion, do not send in a claim form asking for a payment.

# THE LAWYERS REPRESENTING YOU

### 17. Does my financial institution have a lawyer in the case?

Yes. The Court appointed Murray Law Firm, Hausfeld LLP, and Lockridge Grindal Nauen P.L.L.P. as Co-Lead "Settlement Class Counsel" to represent your financial institution and other Class Members. Class Members will not be charged for these lawyers. If your financial institution wants to be represented by its own lawyer, they may hire one at its own expense.

### 18. How will the lawyers be paid?

Settlement Class Counsel will apply to the Court for a reasonable award of attorneys' fees and expenses (the "Fee Request"), which will be separate from the Settlement Fund. Settlement Class Counsel will also seek a service award payment of up to $10,000.00, subject to Court approval, for each Settlement Class Representative. Service awards are compensation to Settlement Class Representatives for their efforts in pursuing this lawsuit, producing documents, and providing testimony if necessary on behalf of the Settlement Class, among other contributions.

Settlement Class Counsel will make their requests to the Court for attorneys' fees and costs, as well as service awards, on or before MONTH DAY, 2016. These requests will be available on the settlement website (www.XXXXXXX.com) or you can request a copy by contacting the Settlement Administrator (*see* Question 23).

# OBJECTING TO THE SETTLEMENT

### 19. How does my financial institution tell the Court that it doesn't like the settlement?

If your financial institution is a Settlement Class Member, you can object to the settlement if you don't think it is fair, reasonable, or adequate. You can give reasons why you think the Court should not approve it. The Court will consider your views.

To object, you must send a letter stating that you object to the settlement. Your objection must include:

- A caption that includes the name of the case as follows: *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228;
- The Settlement Class Member's name, address, telephone number, statement that the Settlement Class Member intends to object, and signature;
- Contain the name, address, bar number and telephone number of the objecting Settlement Class Member's counsel, if represented by an attorney;
- Contain the number of class action settlements objected to by the Settlement Class Member in the last three years; and
- State whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing.

If your financial institution hires a lawyer to represent it in preparing a written objection or appearing at the Final Approval Hearing, its counsel must provide additional information as specified in the Preliminary Approval Order

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXXX.com**

- 7 -

(available on the settlement website, www.XXXXXXXXXXX.com).

An objection must be filed with the Northern District of Illinois Clerk of the Court on or before **Month Day, 2016** and must be served on Settlement Class Counsel and counsel for Defendants so that it is received by **Month Day, 2016**. The addresses are listed below.

| Court | Settlement Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court US District Court Northern District of Illinois XXXXXXXXXXX XXXXXXXXXXX | Arthur M. Murray Murray Law Firm 650 Poydras Street, Suite 2150 New Orleans, LA 70130 | Phyllis B. Sumner S. Stewart Haskins King & Spalding LLP 1180 Peachtree Street NE Atlanta, GA 30309 |

## 20. What's the difference between objecting and excluding/opting out?

Objecting is simply telling the Court that you don't like something about the settlement. You can object to the benefits provided by the settlement or other terms of the settlement only if your financial institution stays in the Settlement Class. Requesting exclusion or "opting out" is telling the Court that you don't want your financial institution to be included in the settlement. If you request exclusion, you have no basis to object to the settlement and related releases because the settlement no longer affects your financial institution.

# THE COURT'S FINAL APPROVAL HEARING

## 21. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing at X:XX X.m. on **MONTH DAY, 2016**, in Courtroom XX before Judge John Z. Lee of the United States District Court for the Northern District of Illinois, located at XXXXXXXXXXX, CITY, ST ZIPCODE. This hearing date and time may be moved. Please refer to the settlement website (www.XXXXXXXXXXXXX.com) for notice of any changes.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who appear at the hearing (*see* Question 18). The Court may also decide how much Settlement Class Counsel will receive as attorneys' fees and costs and whether to award service payments to Settlement Class Representatives (*see* Question 17). After the Final Approval Hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 22. Does my financial institution or a representative have to attend the hearing?

No. Settlement Class Counsel will answer questions the Court may have. You are welcome, however, to come at your own expense. If you submit a written objection, you do not have to come to the Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. Your financial institution may also pay for its own lawyer(s) to attend, but it is not necessary.

# IF YOU DO NOTHING

## 23. What happens if my financial institution does nothing at all?

Settlement Class Members that do nothing will remain a part of the Settlement Class but will not get any payments from the settlement. And, unless they request exclusion, will not be able to sue Sears/Kmart about the claims being resolved through this settlement ever again.

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXXX.com**

# GETTING MORE INFORMATION

| 24. How do I get more information? |
|---|

This notice summarizes the settlement. More details are in the Settlement Agreement itself. You can get a copy of the Settlement Agreement at www.XXXXXXXXXXX.com or from the Settlement Administrator by calling toll-free 1-XXX-XXX-XXXX or writing to XXXXXXXXXXXXXX, P.O. Box XXXX, CITY, ST ZIPCODE. The status of the settlement, any appeals, any claims made, and the date of payments will be posted on the settlement website.

***Please do not contact the Court with questions about the settlement.***

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 9 -

<u>Legal Notice</u>

A copy of this Notice was also sent to you or another representative of your organization via First Class Mail

# Banks, credit unions and other financial institutions that issued payment cards that were compromised in the October 2014 Kmart data breach, could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

A settlement of lawsuits against Kmart Corporation ("Kmart") and Sears Holdings Corporation ("Sears") (collectively "Sears/Kmart") has been proposed in which Sears/Kmart has agreed to pay (as described below) to resolve claims brought by financial institutions relating to the payment card data breach announced by Sears/Kmart in October 2014 (the "Data Breach"), less any adjustments described herein.

The lawsuit, called *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228, alleges violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols.

The settlement includes $5,200,000 that Sears/Kmart will pay to the Settlement Fund that will be used to pay all costs of class notice and settlement administration, service awards to the Named Plaintiffs, and the claims of eligible Settlement Class members. In addition, Sears/Kmart agreed to waive its appeal rights concerning and to pay the final Visa and MasterCard assessments.

Your entity's legal rights are affected whether you act or don't act. Read this notice carefully.

## SUMMARY OF LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

**Submit a Claim Form.** The only way to get a payment from the Settlement Fund.

**Request Exclusion.** Get no payment from the Settlement Fund. This is the only option that may allow a Class Member to sue Sears/Kmart over the claims being resolved by this settlement.

**Object.** Write to the Court with concerns about the settlement.

**Go To A Hearing.** Ask to speak in Court about the fairness of the settlement.

**Do Nothing.** Get no payment from the Settlement Fund and give up rights to ever be part of any other lawsuit against Sears/Kmart about the claims being resolved in this settlement.

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

## BASIC INFORMATION

### 1. Why did I get this notice package?

The financial institution sent this notice may have issued payment cards included in one or more of the alerts sent out by Visa and MasterCard relative to the Data Breach.

The Court authorized this notice because you have a right to know about a proposed settlement of a class action lawsuit against Sears/Kmart and about all of the options before the Court decides whether to approve the settlement. If the Court approves the settlement and after objections and appeals are resolved, a settlement administrator appointed by the Court, as well as Visa and MasterCard, will distribute the funds pursuant to the terms of the settlement.

This package explains the lawsuit, the settlement, your entity's legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of Illinois, and the case is known as *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228. The financial institutions who sued are called "Plaintiffs," and the companies they sued, Sears and Kmart, are the "Defendants."

### 2. What is this lawsuit about?

On October 10, 2014, Sears/Kmart announced that on the prior day, October 9, 2014, Sears/Kmart's Information Technology team detected a criminal intrusion into Kmart's payment data systems, resulting in the potential compromise of payment card information. Plaintiffs have alleged common law claims and violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols. The lawsuits seek damages for the costs that Plaintiffs claim were incurred by financial institutions as a result of the Data Breach, such as card reissuance costs, amounts paid to cover fraud losses and other costs incurred on eligible accounts in responding to the Data Breach.

Sears/Kmart denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing.

### 3. Why is this a class action?

In a class action, one or more entities called "Class Representatives" sue on behalf of themselves and other entities with similar claims. All of these entities together are the "Class" or "Class Members." If the Court certifies the class, as it has done here for settlement purposes, one court resolves the issues for all class members, except for those who exclude themselves from the Settlement Class.

### 4. Why is there a settlement?

The Court has not decided in favor of Plaintiffs or Sears/Kmart. Instead, both sides agreed to a settlement. Settlements avoid the costs and uncertainty of a trial and related appeals, while providing benefits to members of the Settlement Class.

Settlement Class Representatives and the attorneys for the Settlement Class ("Settlement Class Counsel," see Question 17) think the settlement is best for all Class Members.

## WHO IS PART OF THE SETTLEMENT?

### 5. What financial entities are part of the settlement?

Financial entities are members of the Class and affected by the settlement if:

- They are a financial institution organized under the laws of the United States or a Territory thereof;
- They issued one or more payment cards that were identified as having been at risk in an Alert

issued by Visa or MasterCard as a result of the payment card Data Breach that was publicly disclosed by Sears/Kmart on October 10, 2014; and

- They have not previously released claims against Sears/Kmart with respect to all of their compromised accounts.

## 6.  Are there exceptions to being included?

Excluded from the Settlement Class is any Class Member that opts out (*see* Questions 14-16).

## 7.  I'm still not sure if my financial entity is included.

If you are still not sure whether your financial entity is included, you can ask for free help.  You can call 1-XXX-XXX-XXXX or visit www.XXXXXXXXXXXXXX.com for more information.  Or you can fill out and return the claim form described in Question 11, to see if your financial entity qualifies.

# THE SETTLEMENT BENEFITS

## 8.  What does the settlement provide?

Sears/Kmart has agreed to pay $5,200,000 pursuant to the settlement (the "Settlement Fund").  Sears/Kmart will transfer the funds directly to a Settlement Fund, out of which the settlement administrator will make payments to eligible Settlement Class Members.  The cost of notifying the class and administering the settlement, as well as service awards which may be paid to the class representatives, will also come out of the Settlement Fund.  Sears/Kmart has agreed to pay attorneys' fees, costs, and expenses (*see* Question 18).

In addition, Sears/Kmart has agreed to pay $5,923,909.32 to fund MasterCard's Account Data Compromise program relating to the Data Breach, which includes a $125,000 case management fee, and $7,574,497.18 to fund Visa's Global Compromised Account Recovery program relating to the Data Breach.

## 9.  How much will each financial institution's payment from the Settlement Fund be?

If an entity is eligible to participate in the settlement (*see* Question 5), and does not "opt out" of this settlement (*see* Questions 14-16), it may elect to file a claim from the Settlement Fund.  The Settlement Fund will be divided into two separate Tiers for distribution: Tier 1 ("Non VisaNet Tier") and Tier 2 ("All Class Tier").  They are as follows:

**Tier 1: Non VisaNet Tier**

In Tier 1, only Settlement Class Members who issued Non VisaNet Cards will be eligible to make a claim for each Non VisaNet Compromised Payment Card that they issued and for which they received an Alert related to the Data Breach.  Settlement Class Members eligible to submit a claim in Tier 1 must submit documentation consisting of copies of the Data Breach Alerts that they received on their Non VisaNet Cards.

Each Settlement Class Member who makes a valid claim in Tier 1 will be eligible to receive a minimum payout of $1.00 per Non VisaNet Compromised Payment Card up to a maximum payout of $2.38 per card, depending on the total number of eligible claims made in this Tier.  The maximum total payments for Tier 1 will be capped at $3.4 million.  Any Settlement Funds remaining from Tier 1 (if fewer claims are made than will exhaust Tier 1) will move into Tier 2 and be eligible for distribution to any Settlement Class Member (as described below).

**Tier 2: All Class Tier**

Tier 2 will consist of the remaining Settlement Fund (after accounting for all costs of class notice and settlement administration and service awards to the Named Plaintiffs) minus the payouts in Tier 1.  Every Settlement Class Member will be eligible to submit claims for any remaining unreimbursed fraud and card reissuance damages related to the Data Breach by submitting documentation detailing such damages.

For fraud damages, Settlement Class Members must submit documentation consisting of proof of all fraud

expenses incurred within the Fraud Window on Compromised Payment Cards. For card reimbursement damages, Settlement Class Members must submit documentation of proof of the actual costs of replacing physical payment cards on Compromised Payment Cards. Any amounts that the Settlement Class Member recovered through the ADC or GCAR Assessment processes or from Tier 1 payouts will be subtracted from the damages claimed in order to determine the Maximum Payout Amount, which will then be distributed to eligible Settlement Class Members based on the claims submitted. If the total valid claims in the Tier 2 Maximum Payout Amount exceed the remaining Settlement Fund in Tier 2, any payouts will be distributed to eligible Settlement Class Members on a pro rata basis.

## 10. What else does the settlement provide?

Sears/Kmart has agreed to drop its challenge to and pay the final assessment (including any fines and administration costs) relating to the Data Breach that was issued by MasterCard pursuant to its Account Data Compromise ("ADC") program ("the Final MasterCard Assessment") and has withdrawn the appeal it filed pursuant to MasterCard's Security Rules and Procedures manual. The funds received by MasterCard for the Final MasterCard Assessment in the amount of $5,923,909.32 will be distributed pursuant to the ADC program guidelines.

After negotiating in good faith with Visa to reduce the assessment issued by Visa pursuant to its Global Compromised Account Recovery ("GCAR") program relating to the Data Breach ("the Original Visa Assessment"), as part of the Settlement Agreement, Kmart will waive its appeal and pay the final assessment. The funds received by Visa for the Final Visa Assessment in the amount of $7,574,497.18 will be distributed through the GCAR program guidelines.

In addition, as set forth in the Settlement Agreement, Sears/Kmart agreed to certain injunctive relief.

# HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM

## 11. How can a financial institution get a payment?

To qualify for a payment, each Settlement Class Member must complete and timely submit a valid claim form. There are two types of claim forms in this settlement: (i) Non VisaNet Claim Form (Tier 1) and (ii) All Class Tier Claim Form (Tier 2). To file a claim you need to visit www.XXXXXXXXXXXXX.com and choose which claim form you wish to file.

Once you have selected which claim form to file, read the instructions carefully, include all information and documents the form asks for, sign it, and file it through www.XXXXXXXXXXXX.com by midnight on **MONTH DAY, 2016**.

## 12. When would a financial institution get its payment?

Payments to Settlement Class Members from the Settlement Fund will be made after the settlement is finally approved and any appeals or other reviews have been completed. The Court will hold a hearing on **MONTH DAY, 2016** to decide whether to approve the settlement. If the Court approves the settlement, there may be appeals, which could take more than a year to resolve. You may visit www.XXXXXXXXXXXXX.com for updates on the progress of the settlement. Please be patient.

## 13. What is my financial institution giving up to get a payment or remain in the Class?

Unless a Settlement Class Member excludes itself from the settlement, it cannot sue Sears/Kmart or be part of any other lawsuit against Sears/Kmart about the issues this settlement resolves. Unless a Settlement Class Member excludes itself, all of the decisions by the Court will bind it. The specific claims against Sears/Kmart each Class Member is giving up ("releasing") by remaining in the Settlement Class are described in Section 7 of the Settlement Agreement. The Settlement Agreement is available at www.XXXXXXXXXXXXX.com.

The Settlement Agreement describes the released claims in detail, so read it carefully. If you have any

questions, you can talk to the law firms listed in Question 17 for free, or you can, of course, talk to your financial entity's legal counsel if you have questions about what this means.

If you want to keep your financial entity's rights to sue or continue to sue Sears/Kmart based on claims this settlement resolves, you must take steps to request exclusion from the Settlement Class (*see* Questions 14-16).

# EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT

## 14.  How can my financial institution opt out of the settlement?

To exclude your financial institution from the settlement, or "opt out," you may complete and submit the Request For Exclusion form attached to this notice (the form is also available at www.XXXXXXXXXXX.com), or, alternatively, send a letter by U.S. Mail that includes:

- The name of this proceeding (*Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228);
- Your financial institution's full name, address, and phone number;
- The words "Request for Exclusion" at the top of the document or a statement in the body of the letter requesting exclusion from the Class; and
- A signature of a person authorized to make such decisions for your financial institution.

Financial institutions that seek exclusion from the settlement through a letter are also asked to provide:

- The number of eligible accounts that the financial institution issued.

You must mail the completed Request for Exclusion form or above-described letter, postmarked no later than **MONTH DAY, 2016**, to:

XXXXXXXXXXXX
P.O. Box XXXX
CITY, ST ZIPCODE

Settlement Class Members who request exclusion from the Class will not get any payment as part of this settlement and cannot object to this settlement. They will not be legally bound by anything that happens in this lawsuit and may be able to sue (or continue to sue) Sears/Kmart in the future.

Either Party shall have the right to terminate the Settlement Agreement if Settlement Class Members who issued a certain percentage of the total number of accounts submit valid requests to opt out as separately agreed to by the Parties.

## 15. If my financial institution doesn't exclude itself, can it sue Sears/Kmart for the same thing later?

No.  Unless a Settlement Class Member excludes itself, it will give up any right to sue Sears/Kmart for the claims that this settlement resolves.  If your financial institution has a pending lawsuit against Sears/Kmart, speak to your legal counsel in that case immediately.  You must request exclusion from this Class to bring or to continue a separate lawsuit.  Remember, the exclusion deadline is **MONTH DAY, 2016**.

## 16. If my financial institution excludes itself, can it get money from this settlement?

No.  If you request exclusion, do not send in a claim form asking for a payment.

# THE LAWYERS REPRESENTING YOU

## 17. Does my financial institution have a lawyer in the case?

Yes. The Court appointed Murray Law Firm, Hausfeld LLP, and Lockridge Grindal Nauen P.L.L.P. as Co-Lead "Settlement Class Counsel" to represent your financial institution and other Class Members. Class Members will not be charged for these lawyers. If your financial institution wants to be represented by its own lawyer, they may hire one at its own expense.

## 18. How will the lawyers be paid?

Settlement Class Counsel will apply to the Court for a reasonable award of attorneys' fees and expenses (the "Fee Request"), which will be separate from the Settlement Fund. Settlement Class Counsel will also seek a service award payment of up to $10,000.00, subject to Court approval, for each Settlement Class Representative. Service awards are compensation to Settlement Class Representatives for their efforts in pursuing this lawsuit, producing documents, and providing testimony if necessary on behalf of the Settlement Class, among other contributions.

Settlement Class Counsel will make their requests to the Court for attorneys' fees and costs, as well as service awards, on or before MONTH DAY, 2016. These requests will be available on the settlement website (www.XXXXXXX.com) or you can request a copy by contacting the Settlement Administrator (*see* Question 24).

# OBJECTING TO THE SETTLEMENT

## 19. How does my financial institution tell the Court that it doesn't like the settlement?

If your financial institution is a Settlement Class Member, you can object to the settlement if you don't think it is fair, reasonable, or adequate. You can give reasons why you think the Court should not approve it. The Court will consider your views.

To object, you must send a letter stating that you object to the settlement. Your objection must include:

- A caption that includes the name of the case as follows: *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228;
- The Settlement Class Member's name, address, telephone number, statement that the Settlement Class Member intends to object, and signature;
- Contain the name, address, bar number and telephone number of the objecting Settlement Class Member's counsel, if represented by an attorney;
- Contain the number of class action settlements objected to by the Settlement Class Member in the last three years; and
- State whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing.

If your financial institution hires a lawyer to represent it in preparing a written objection or appearing at the Final Approval Hearing, its counsel must provide additional information as specified in the Preliminary Approval Order (available on the settlement website, www.XXXXXXXXXXX.com).

An objection must be filed with the Northern District of Illinois Clerk of the Court on or before **Month Day, 2016** and must be served on Settlement Class Counsel and counsel for Defendants so that it is received by **Month Day, 2016**. The addresses are listed below.

**Court**
Clerk of the Court
US District Court
Northern District of Illinois
XXXXXXXXXXX
XXXXXXXXXXX

**Settlement Class Counsel**
Arthur M. Murray

Murray Law Firm
650 Poydras Street, Suite 2150
New Orleans, LA 70130

**Defense Counsel**
Phyllis B. Sumner
S. Stewart Haskins
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, GA 30309

20. What's the difference between objecting and excluding/opting out?

Objecting is simply telling the Court that you don't like something about the settlement. You can object to the benefits provided by the settlement or other terms of the settlement only if your financial institution stays in the Settlement Class. Requesting exclusion or "opting out" is telling the Court that you don't want your financial institution to be included in the settlement. If you request exclusion, you have no basis to object to the settlement and related releases because the settlement no longer affects your financial institution.

## THE COURT'S FINAL APPROVAL HEARING

21. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing at X:XX X.m. on **MONTH DAY, 2016**, in Courtroom XX before Judge John Z. Lee of the United States District Court for the Northern District of Illinois, located at XXXXXXXXXX, CITY, ST ZIPCODE. This hearing date and time may be moved. Please refer to the settlement website (www.XXXXXXXXXXXX.com) for notice of any changes.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who appear at the hearing (*see* Question 19). The Court may also decide how much Settlement Class Counsel will receive as attorneys' fees and costs and whether to award service payments to Settlement Class Representatives (*see* Question 18). After the Final Approval Hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

22. Does my financial institution or a representative have to attend the hearing?

No. Settlement Class Counsel will answer questions the Court may have. You are welcome, however, to come at your own expense. If you submit a written objection, you do not have to come to the Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. Your financial institution may also pay for its own lawyer(s) to attend, but it is not necessary.

## IF YOU DO NOTHING

23. What happens if my financial institution does nothing at all?

Settlement Class Members that do nothing will remain a part of the Settlement Class but will not get any payments from the settlement. And, unless they request exclusion, will not be able to sue Sears/Kmart about the claims being resolved through this settlement ever again.

## GETTING MORE INFORMATION

24. How do I get more information?

This notice summarizes the settlement. More details are in the Settlement Agreement itself. You can get a copy of the Settlement Agreement at www.XXXXXXXXXX.com or from the Settlement Administrator by calling toll-free 1-XXX-XXX-XXXX or writing to XXXXXXXXXXXXXX, P.O. Box XXXX, CITY,

ST ZIPCODE. The status of the settlement, any appeals, any claims made, and the date of payments will be posted on the settlement website.

***Please do not contact the Court with questions about the settlement.***

SOURCE: United States District Court for the Northern District of Illinois

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GREATER CHAUTAUQUA FEDERAL CREDIT UNION, FIRST CHOICE FEDERAL CREDIT UNION, GULF COAST BANK & TRUST COMPANY, GOVERNMENTAL EMPLOYEES CREDIT UNION, and OTEEN V.A. FEDERAL CREDIT UNION, individually and on behalf of a class of similarly situated financial institutions,<br><br>Plaintiffs,<br><br>v.<br><br>KMART CORPORATION and SEARS HOLDINGS CORPORATION,<br><br>Defendants. | : Case No: 1:15-cv-02228<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS, AND
AUTHORIZING DISSEMINATION OF NOTICE**

Upon consideration of Plaintiffs' Amended Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (the "Motion") (ECF No. 98), it is hereby **ORDERED** as follows:

1.      The Motion is **GRANTED**.

2.      **Preliminary Settlement Approval and Jurisdiction.** The Court finds that the settlement set forth in the Settlement Agreement dated July 26, 2016 (the "Agreement" or "Settlement Agreement"), between Defendants Kmart Corporation and Sears Holdings Corporation (collectively "Defendants") and Plaintiffs Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental

Employees Credit Union, and Oteen V.A. Federal Credit Union (collectively, "Plaintiffs") individually and as representatives of the Class, subject to final determination following proper notice and a fairness hearing, is sufficiently fair, reasonable, and adequate to authorize dissemination of class notice. This Court has jurisdiction over this Action and each of the parties to the Settlement Agreement. This Order incorporates herein, and makes a part thereof, the Settlement Agreement, including all Exhibits thereto. Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meanings herein.

3. **Class Certification for Settlement Purposes Only.** The Court certifies the following settlement class for settlement purposes only (the "Settlement Class") pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All entities in the United States and its Territories that issued payment cards identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card Data Breach that was publicly disclosed by Kmart on October 10, 2014.

> Excluded from the class are all entities that have entered or will enter into a separate release of claims arising from the Data Breach, including American Express Company and DFS Services LLC (Discover).

4. The Court finds that certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) is warranted because:

(a) The Settlement Class is so numerous that joinder of all Settlement Class Members is sufficiently impracticable;

(b) There are sufficient issues of law and fact common to the Settlement Class;

(c) the claims of the Settlement Class Representatives are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members;

(d)     the Settlement Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Settlement Class Representatives have no interests antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class;

(e)     Questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and

(f)     A class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

5.     **Settlement Class Representatives and Settlement Class Counsel:**     The following named Plaintiffs and Settlement Class Members are designated and appointed as the Settlement Class Representatives: Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union.   The Court finds that the Settlement Class Representatives are similarly situated to absent Class Members and therefore typical of the Class and that they will be adequate Settlement Class Representatives.

6.     The Court finds that the following counsel, previously appointed by the Court as interim co-lead or liaison counsel, are experienced and adequate counsel and are hereby designated as Settlement Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Murray Law Firm, Hausfeld, LLP, and Lockridge Grindal Nauen P.L.L.P.

7.     **Appointment of Settlement Administrator.**  The Court approves and appoints the retention of Epiq Systems, Inc. ("Epiq") to serve as Settlement Administrator for this Settlement.  Epiq will work under the direction of Settlement Class Counsel and in accordance

with Court orders to provide Class Notice, respond to inquiries from Settlement Class Members, receive Requests for Exclusion and, at a later time, receive and process Settlement Class Member Claims and distribute Settlement proceeds to Settlement Class Members.

8.    **Notice to Settlement Class.**    Notice to members of the Class, except any statutory notice required to be given by Defendants pursuant to the Class Action Fairness Act, shall be the responsibility of Settlement Class Counsel.

9.    Notice shall be provided to the members of the Class.    The Court approves the form of the E-Mail Notice and Long Form Notice (the "Notices") attached as Exhibit D to the Settlement Agreement.   The Court finds that the dissemination of the Notices in the manner set forth below constitutes the best notice practicable under the circumstances as well as valid, due, and sufficient notice to all persons and/or entities entitled thereto and complies fully with Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution.

10.    The Court approves the notice plan contained in the Declaration of Cameron R. Azari attached as Exhibit D to the Settlement Agreement.   Notice, including without limitation, notice of the rights of Settlement Class Members to object to the Settlement or request exclusion from it, shall be given by issuance of notice consistent with the terms of the Settlement Agreement.

11.    The Court approves Settlement Class Representatives and Settlement Class Counsel conducting limited discovery from MasterCard and Visa to obtain necessary information to provide notice to the Settlement Class and for settlement administration in accordance with the notice plan contained in the Declaration of Cameron R. Azari.

12.     The Court finds that the proposed notice plan (i) is reasonable and constitutes due, adequate and sufficient notice to the Settlement Class, (ii) fairly and adequately describes the terms and effects of the Settlement Agreement, (iii) fairly and adequately descries the date by which the Settlement Class Counsel must file the Motion for Final Approval and Motion for Attorneys' Fees, (iv) fairly and adequately describes the method and date by which any member of the Settlement Class may object to the Settlement or exclude themselves from the Settlement Class, (v) sets a date by which Settlement Class Counsel may respond to any objections to the Settlement, (vi) provides notice to the Settlement Class of the time and place of the Fairness Hearing, and (vii) constitutes reasonable notice under the circumstances and otherwise meets all requirements of applicable law.

13.     The Settlement Administrator shall cause the Email Notice and the Long Form Notice to be disseminated, in substantially the form attached as Exhibits D to the Settlement Agreement, pursuant to the notice plan.

14.     The Settlement Administrator is directed to file with the Court and serve upon Settlement Class Counsel no later than __ days before the filing by Settlement Class Counsel of the Motion for Final Approval a declaration confirming that dissemination of the Notice to the Class has taken place in accordance with this Order.

15.     Settlement Class Counsel are authorized to pay from the Settlement Fund the costs, as they are incurred, of providing Notice in accordance with this Order and maintaining the Settlement Fund, including taxes and tax expenses.

16.     **Opt-Outs from the Settlement Class.**  Settlement Class Members who wish to be excluded from the Class shall mail a written Request for Exclusion to the Settlement Administrator, so that it is postmarked no later than  sixty (60) days before the Final Approval

Hearing, shall clearly state the following: the Settlement Class Member's name, address, telephone number, statement that the Settlement Class Member wants to be excluded, the name of this proceeding (*Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228), and signature, and shall provide all such information as may be required by the Settlement Agreement or requested by the Settlement Administrator.

17.     Each Settlement Class Member that submits a request to opt out in accordance with the previous sentence and the provisions of the Preliminary Approval Order shall be excluded from the Settlement Class.  Settlement Class Members seeking to opt out will also be asked to provide the number of accounts that they issued.  Within seven (7) days of the date set forth in the Notices by which opt-out requests must be postmarked, Settlement Class Counsel shall cause the Settlement Administrator to send to Settlement Class Counsel and to Sears/Kmart's Counsel:  (i) copies of all requests to opt out; (ii) a report identifying (a) each Settlement Class Member that submitted a request to opt out; (b) the number of accounts issued by each such Settlement Class Member; and (c) the Settlement Administrator's determination as to the validity or invalidity of each such Settlement Class Member's request to opt out pursuant to the provisions of Section 4.4.4 of the Settlement Agreement and the Preliminary Approval Order (the "Opt-Outs Report").

18.     Any Settlement Class Member who does not properly and timely mail a Request for Exclusion as set forth above shall be automatically included in the Class and shall be bound by all the terms and provisions of the Settlement Agreement, the Settlement, this Order Granting Preliminary Approval of Settlement, and the Final Approval Order and Judgment, whether or not

such Settlement Class Member received actual notice or shall have objected to the Settlement and whether or not such Settlement Class Member makes a Claim upon or participates in the Settlement.

19.     To effectuate the Settlement Agreement and Settlement, the Settlement Administrator shall be responsible for the receipt and processing of all Requests for Exclusion and Claim Forms.

20.     Settlement Class Members who have not requested exclusion from the Class may object to the Settlement.  Any Settlement Class Member who chooses to object to the Settlement must file written notices of intent to object with the Court and serve copies of any such objection on counsel for the Parties.  Any Settlement Class Member who files a valid objection may appear at the Final Approval Hearing, in person or by counsel, and be heard to the extent permitted under applicable law and allowed by the Court, in opposition to the fairness, reasonableness and adequacy of the Settlement, and on Plaintiffs' Counsel's Fee Request.  The right to object to the Settlement must be exercised individually by an individual Settlement Class Member and, except where represented by counsel, not be the act of another entity acting or purporting to act in a representative capacity.

21.     **Objections.**  To be effective, a notice of intent to object to the Settlement that is filed with the Court must:

(a)     Contain a caption that includes the name of the case as follows:  *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228;

(b)     Settlement Class Member's name, address, telephone number, statement that the Settlement Class Member wants to be excluded and intends to object, and signature;

(c)     Be filed with the Northern District of Illinois Clerk of the Court not later sixty (60) days before the Final Approval Hearing;

(d)     Be served on Settlement Class Counsel and counsel for Defendants so as to be received not later than sixty (60) days before the Final Approval Hearing;

(e)     Contain the name, address, bar number and telephone number of the objecting Settlement Class Member's counsel, if represented by an attorney;

(f)     Contain the number of class action settlements objected to by the Settlement Class Member in the last three years; and

(g)     State whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing.

22.     In addition to the foregoing, if the Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Approval Hearing, a notice of intent to object must contain the following information:

(a)     A detailed statement of the specific legal and factual basis for each and every objection; and

(b)     A detailed description of any and all evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, including copies of any and all exhibits that the objecting Settlement Class Member may introduce at the Final Approval Hearing.

23.     Any Settlement Class Member who does not file a timely and adequate notice of intent to object in accordance with these provisions waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the

Settlement. To the extent any Settlement Class Member objects to the Settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Approval Order and Judgment of the Court.

24.     To the extent any Settlement Class Member files an objection to the Settlement, Plaintiffs' Counsel or counsel for Defendants may seek leave of Court to conduct expedited discovery regarding the subject matter that was raised in the objection.

25.     **Claims Process and Distribution Plan.** Settlement Class Counsel has created a process for assessing and determining the validity of claims and a payment methodology to Settlement Class Members who submit a timely, valid claim form. The Court preliminary approves the Distribution Plan substantially in the form attached to the Settlement Agreement as Exhibit A, and directs the Settlement Administrator to effectuate the Distribution Plan according to the terms of the Settlement Agreement.

26.     In order to be entitled to participate in the Settlement (as defined in the Settlement Agreement, Settlement Fund Distribution Plan, and the Notice), a member of the Class who has not requested exclusion therefrom must submit a valid Claim on or before _____. Any member of the Class who does not submit a timely, valid Claim shall not be entitled to share in the Settlement, but nonetheless shall be barred and enjoined from asserting any of the released claims.

27.     **Final Approval Hearing.** The Final Approval Hearing will be held before this Court, in Courtroom 1225, at the United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604, on _____ __, 20___ at __: __ a.m., or another date set by the Court, to consider, *inter alia*, the following: (a) the fairness, reasonableness and adequacy of the Settlement; (b) the

dismissal with prejudice of the Action as to Defendants; (c) whether Settlement Class Counsel's application for attorneys' fees, expenses, and compensation for the Class Representatives ("the Fee Request") should be granted; (d) whether to finally approve the Settlement Agreement; and (e) whether the Court should enter an order expressly determining that there is no just reason for delay and expressly directing that any judgment by the Court approving the Agreement and the Class should be deemed as a final judgment under Fed. R. Civ. P. 54(b) with respect to all Claims by Settlement Class Members against Defendants and all Released Parties.

28. No later than fourteen (14) calendar days before the Final Approval Hearing, the Settlement Administrator shall file with the Court a sworn declaration verifying that notice was provided to Settlement Class Members in accordance with the terms of this Order and provide to Plaintiffs' Counsel and counsel for Defendants the following information: (i) the number of Notices sent to Settlement Class Members; (ii) the approximate number of visits to the Settlement website from the date of entry of a Preliminary Approval Order; (iii) the names of Settlement Class Members who have requested exclusion from the Settlement; and (iv) such other similar tracking information reasonably requested by Plaintiffs' Counsel and Defendants' counsel.

29. Settlement Class Counsel shall file a motion and memorandum seeking final approval along with any declarations, statements and/or other materials in support of final approval of the Settlement Agreement and the Fee Request, no later than forty-five (45) days prior to the Final Approval Hearing.

30. The Parties shall file any responses to any objections from Settlement Class Members no later than thirty (30) days before the Final Approval Hearing.

31.     The Settlement on the terms and conditions of the Settlement Agreement filed concurrently with the Motion for Preliminary Approval is hereby preliminarily approved, but is not to be deemed an admission of liability or fault by Defendants or by any other party or person, or a finding of the validity of any claims asserted in the litigation or of any wrongdoing or of any violation of law by Defendants.  The Settlement is not a concession and shall not be used as an admission of any fault or omission by Defendants or any other party or person.

32.     Upon Final Approval, each and every term and provision of the Settlement Agreement (except as may be modified by the Final Approval Order) shall be deemed incorporated into the Final Approval Order and Judgment as if expressly set forth and shall have the full force and effect of an order of the Court.

33.     In the event that the Settlement is terminated in accordance with the provisions of the Settlement Agreement, the Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Settlement Agreement, and without prejudice to the status quo ante rights of Plaintiffs and Defendants.

34.     Neither this Order nor the Settlement Agreement, nor any documents or statements related thereto, shall constitute any evidence or admission of liability by Defendants and/or any Released Party, nor shall any such document or statement be offered in evidence in this or any other proceeding except to consummate or enforce the Settlement Agreement or the terms of this Order.

35.     Summary of Dates and Deadlines:

| | |
|---|---|
| Last day to disseminate class notice: | [Insert.] |
| Last day for objections to Settlement or opposition to Motion for Final Approval of Fee Request (sixty (60) days before the Final Approval Hearing) | [Insert.] |
| Last day for Settlement Class Members to opt-out of the Settlement (sixty (60) days before the Final Approval Hearing) | [Insert.] |
| Last day for the Parties to file responses to any Settlement Class Member objections: (no later than thirty (30) days before the Final Approval Hearing) | [Insert.] |
| Last day to file (1) Motion for Final Approval and (2) Fee Request: (no later than forty-five (45) days prior to the Final Approval Hearing) | [Insert.] |
| Fairness Approval (Final Fairness) Hearing: | |

**IT IS SO ORDERED.**

DATED:_____, 2016         _____

                                        The Honorable John Z. Lee
                                        Judge, United States District Court
                                        Northern District of Illinois

# EXHIBIT 2

## AMENDED SETTLEMENT AGREEMENT AND RELEASE

This Amended Settlement Agreement and Release (the "Settlement" or "Settlement Agreement" or "Agreement") is made as of August 11— July 26, 2016, by and among the following parties, as hereinafter defined: (a) Settlement Class Representatives, on behalf of themselves and the Class Members, by and through Settlement Class Counsel; and (b) Kmart Corporation ("Kmart") and Sears Holdings Corporation ("Sears") (collectively "Sears/Kmart"), by and through its undersigned counsel ("Sears/Kmart's Counsel"). Settlement Class Representatives and Sears/Kmart are the "Parties" or a "Party."

This Settlement Agreement **supersedes, renders void, terminates, and nullifies** the "Settlement Agreement" entered into on July 26, 2016 between the Parties.

### RECITALS

WHEREAS, on October 10, 2014, Sears/Kmart announced that on the prior day, October 9, 2014, Sears/Kmart's Information Technology team detected a criminal intrusion into Kmart's payment data systems, resulting in the potential compromise of payment card information;

WHEREAS, following the announcement by Sears/Kmart, financial institution plaintiffs, including Settlement Class Representatives, filed class action complaints in multiple courts across the country;

WHEREAS, the Settlement Class Representatives have alleged common law claims and violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols;

WHEREAS, on June 8, 2015, the Judicial Panel on Multidistrict Litigation ("MDL Panel") denied a Motion for Consolidation and Transfer of Related Actions filed by certain plaintiffs and suggested the self-consolidation of the actions;

1

WHEREAS, the Settlement Class Representatives thereafter consolidated the actions before the United States District Court for the Northern District of Illinois and filed a Consolidated Amended Class Action Complaint;

WHEREAS, Sears/Kmart moved to dismiss the Settlement Class Representatives' Consolidated Amended Class Action Complaint on October 9, 2015 for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and for failure to allege personal jurisdiction under Rule 12(b)(2);

WHEREAS, by letter dated October 6, 2015, MasterCard asserted the right under its operating regulations and pursuant to the MasterCard ADC program to assess and collect from Sears/Kmart, through its acquiring banks, certain losses that MasterCard alleged its issuers had incurred as a result of the Data Breach;

WHEREAS, Sears/Kmart disputed MasterCard's assessment and filed an appeal of the assessment on December 14, 2015 pursuant to the MasterCard Security Rules and Procedures manual;

WHEREAS, by letter dated March 8, 2016, Visa asserted the right under its operating regulations and pursuant to the Visa GCAR program to assess and collect from Sears/Kmart, through its acquiring banks, certain losses Visa alleged its issuers had incurred as a result of the Data Breach;

WHEREAS, Sears/Kmart denies (a) the allegations and all liability with respect to any and all facts and claims alleged in the Consolidated Amended Class Action Complaint; (b) that the Settlement Class Representatives and the class they currently represent have suffered the damages they allege, (c) that the Consolidated Amended Class Action Complaint satisfies the

2

requirements to be tried as a class action under Federal Rule of Civil Procedure 23, and (d) that MasterCard and Visa properly imposed assessments on Sears/Kmart in the amounts asserted by MasterCard and Visa;

WHEREAS, Settlement Class Representatives assert (a) that facts alleged in the Consolidated Amended Class Action Complaint raise a reasonable expectation that discovery will reveal evidence to support Settlement Class Representatives' claims; (b) that there is sufficient evidence that the Settlement Class Representatives and the Class have suffered the damages they allege, and (c) that the Consolidated Amended Class Action Complaint demonstrates that the claims would properly be resolved through class action proceedings, including trial, pursuant to Federal Rule of Civil Procedure 23;

WHEREAS, despite their belief that their claims are meritorious, that they and the Class Members they represent have been injured and suffered damages, and that the Consolidated Amended Class Action Complaint satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23, the Settlement Class Representatives and Settlement Class Counsel have concluded, after an investigation of the facts and after carefully considering the circumstances of the Consolidated Amended Class Action Complaint, that it would be in the best interests of the Class to enter into this Agreement, which interests include the substantial value to be derived by this Settlement and the interest in avoiding the uncertainties of litigation and assuring that the benefits reflected herein are obtained for the Class;

WHEREAS, despite its belief that it has valid and complete defenses to the claims asserted against it and that the Settlement Class Representatives' claims are without merit, Sears/Kmart has nevertheless agreed to enter into this Agreement to reduce and avoid further

risk, expense, inconvenience, and the distraction of burdensome and protracted litigation and thereby to resolve any controversy;

WHEREAS, the Settlement set forth in this Agreement is a product of sustained, arm's length negotiations conducted in multiple mediation sessions over a period of several months before the Honorable Wayne R. Andersen, former Judge for the United States District Court for the Northern District of Illinois;

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein and without: (a) any admission or concession on the part of the Settlement Class Representatives or Settlement Class Counsel of the lack of merit of the Consolidated Amended Class Action Complaint; or (b) any admission or concession of liability or wrongdoing or lack of merit of any defense whatsoever by Sears/Kmart with respect to the Consolidated Amended Class Action Complaint,

IT IS HEREBY STIPULATED AND AGREED by the Parties, that the Action, the Consolidated Class Action Complaint and the claims set forth therein, the Plaintiff Released Claims, and the Sears/Kmart Released Claims, be settled, compromised, and dismissed with prejudice, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## 1.    DEFINITIONS

As used in this Agreement, the terms set forth in this section in boldface type will have the following meanings:

**1.1    Action**.    The action brought on behalf of financial institutions against Sears/Kmart relating to the Data Breach that was consolidated in the United States District Court for the Northern District of Illinois the matter entitled *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company,*

*Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228.

**1.2  Alert.**  A notice which Settlement Class Members received under the ADC or GCAR programs which informs them of card numbers which may have been compromised as a result of the Data Breach.

**1.3  ADC**.  MasterCard's Account Data Compromise program, as set forth in the MasterCard's *Security Rules and Procedures*.

**1.4  Agreement or Settlement Agreement**.  This document, including all exhibits.

**1.5  Application**.  This term has the meaning set forth in Section 8.3.

**1.6  Assessment by MasterCard**.  MasterCard's final ADC Recovery assessment of $5,923,909.32, which includes an assessment of $5,798,909.32 relating to the Data Breach and a $125,000 case management fee, dated on or about October 6, 2015.

**1.7  Assessment by Visa.**  Visa's final GCAR program assessment of $7,574,497.18 relating to the Data Breach, dated on or about March 8, 2016.

**1.8  Class Members or Class**.  All entities in the United States and its Territories that issued payment cards identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card Data Breach that was publicly disclosed by Kmart on October 10, 2014.  Excluded from the class are all entities that have entered into or will enter into a separate release of claims arising from the Data Breach, including American Express Company and DFS Services LLC (Discover).

**1.9  Complaint.**  The Consolidated Amended Class Action Complaint filed by the financial institution plaintiffs in the matter entitled *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental*

*Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228.

**1.10   Compromised Payment Card**.   A payment card that was identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card data breach that was publicly disclosed by Sears/Kmart on October 10, 2014 (the "Data Breach").

**1.11   Compromised Payment Card Account**.   The payment card account associated with a Compromised Payment Card.

**1.12   Correction Request**.   This term shall have the meaning set forth in Section 4.4.3.

**1.13   Court**.   The Honorable John Z. Lee, United States District Court Judge, Northern District of Illinois, or such other judge to whom the Action or Complaint may hereafter be assigned.

**1.14   Data Breach**.   The payment card data breach impacting Kmart stores that was publicly disclosed by Sears/Kmart on October 10, 2014.

**1.15   Distribution Plan**.   The plan, substantially in the form of Exhibit A for distributing the Settlement Class Escrow Account to Settlement Class Members.

**1.16   Effective Date**.   The first date after which the following events and conditions have occurred:  (i) the Court has entered the Final Judgment and the Final Judgment has not been set aside, materially modified, or overturned by the Court or on appeal, and (ii) the time for any motion or petition for reconsideration, appeal, or writ with regard to the Final Judgment has expired or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.

**1.17   Escrow Agent.**   The Escrow Agent shall be Huntington Bank.

**1.18   Fee Request**.  This term shall have the meaning set forth in Section 8.1.

**1.19   Final Approval Hearing**.   The hearing held by the Court for the purpose of determining whether to (a) grant final approval of the Settlement, (b) grant the Application, and (c) enter the Final Judgment.

**1.20   Final Approval**.  The date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of the fees and costs awarded to Settlement Class Counsel.  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

**1.21   Final Approval Order**.   The Final Judgment and order of dismissal with prejudice that the Court enters upon Final Approval in the form attached as Exhibit B.  In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

**1.22   Final Judgment**.  A final judgment and order of dismissal with prejudice entered by the Court in the form attached as Exhibit C.

**1.23   Final Opt-Outs Report**.  This term shall have the meaning set forth in Section 4.4.5.

**1.24   Fraud Window**.  The period within which fraudulent charges from the Data Breach must fall to qualify for recovery under the GCAR and ADC.

**1.25   GCAR**.  Visa's Global Compromised Account Recovery program as set forth in Visa's operating regulations and as administered by Visa.

**1.26   MasterCard**.  This term shall mean "MasterCard International Incorporated."

**1.27   Maximum Payout Amount**.  The total amount that eligible Settlement Class Members claim in Tier 2 of the Distribution Plan.

**1.28**   **Notices**.  The information, substantially in the form of Exhibit D, to be provided to Class Members pursuant to a notice plan to be approved by the Court.

**1.29**   **Non VisaNet Cards.**  Visa-branded cards that are processed on but are not contractually a part of the VisaNet system.

**1.30**   **Opt-Outs Report**.  This term has the meaning set forth in Section 4.4.2.

**1.31**   **Plaintiffs or Financial Institution Plaintiffs**.  The named plaintiffs in the Complaint.

**1.32**   **Plaintiff Released Claims**.  This term has the meaning set forth in Section 7.1.

**1.33**   **Plaintiff Released Persons**.  This term has the meaning set forth in Section 7.2.

**1.34**   **Plaintiff Releasing Persons**.  This term has the meaning set forth in Section 7.1.

**1.35**   **Preliminary Approval Order**.  The Order of Preliminary Approval of Settlement to be entered by the Court substantially in the form attached as Exhibit E hereto.

**1.36**   **Sears/Kmart Released Claims**.  This term has the meaning set forth in Section 7.2.

**1.37**   **Sears/Kmart Released Parties**.  This term has the meaning set forth in Section 7.2.

**1.38**   **Released Parties**.  This term has the meaning set forth in Section 7.1.

**1.39**   **Service Payments**.  One time payments to the Settlement Class Representatives, through Settlement Class Counsel, as set forth in Section 8.3.

**1.40**   **Settlement**.  The settlement embodied in this Settlement Agreement.

**1.41**   **Settlement Administrator**.  Subject to Court approval, Epiq Systems, Inc.

**1.42**   **Settlement Class**.  This term has the meaning set forth in Section 3.1.

**1.43   Settlement Class Counsel**.  This term includes the following firms and individuals:

**MURRAY LAW FIRM**
Arthur M. Murray
650 Poydras Street, Suite 2150
New Orleans, LA 70130
504-525-8100
amurray@murray-lawfirm.com

**HAUSFELD, LLP**
James J. Pizzirusso
1700 K. Street, NW
Suite 650
Washington, DC 20006
202-540-7200
jpizzirusso@hausfeld.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Karen H. Riebel
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
612-339-6900
khriebel@locklaw.com

**1.44   Settlement Class Escrow Account**.  The account described in Section 5.3.1 of this Agreement.

**1.45   Settlement Class Members**.  The entities that comprise the Settlement Class.

**1.46   Settlement Class Representatives**.  The named plaintiffs in the Complaint: Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union.

**1.47   Settlement Fund**.  An amount equal to $5,200,000.  The Settlement Fund will be used to pay all costs of class notice and settlement administration, service awards to the Named Plaintiffs, and the claims of eligible Settlement Class members pursuant to the Distribution Plan attached as Exhibit A.

**1.48   Visa.**  This term shall mean "Visa Inc."

9

## 2.     SETTLEMENT PROCEDURES

**2.1**     All activities in the Action or relating to the Complaint, other than those in furtherance of the Settlement, shall remain suspended until the Final Approval Hearing and issuance of the Final Judgment, or until further order of this Court.

**2.2**     As soon as possible after the execution of this Agreement, the Settlement Class Representatives shall move the Court for a Preliminary Approval Order substantially in the form of Exhibit E.

**2.3**     At the time of the submission of this Agreement to the Court as described in Section 2.2, the Settlement Class Representatives shall request that, after notice is given to Settlement Class Members, the Court hold the Final Approval Hearing and approve the Settlement.

**2.4**     At least 21 days before the deadline for Settlement Class Members to file objections to the Settlement, Settlement Class Counsel shall file with the Court, and serve upon Sears/Kmart (i) their motion for an award of attorneys' fees, costs, and expenses ("Fee Request"); and (ii) any application by Settlement Class Representatives for awards of Service Payments.

**2.5**     At the Final Approval Hearing, the Parties will request that the Court enter the Final Approval Order.

## 3.     THE SETTLEMENT CLASS

**3.1     Settlement Class.**  For settlement purposes only, the Parties agree that the Court should certify a Settlement Class in the Actions pursuant to Fed. R. Civ. P. 23(b)(3), defined as follows:

> All entities in the United States and its Territories that issued payment cards identified as having been at risk in an alert issued

10

by Visa or MasterCard as a result of the payment card data breach
that was publicly disclosed by Kmart on October 10, 2014.

Excluded from the Settlement Class are all entities that have entered or will enter into a separate

release with Kmart, including American Express Company and DFS Services LLC (Discover),

and all entities that validly request exclusion from the Settlement Class pursuant to Section 4.4 of

the Settlement Agreement.

If the Court enters the Preliminary Approval Order, the parties agree they will not assert

that such action is an adjudication of any fact or issue for any purpose other than the effectuation

of this Agreement or that it may be considered as law of the case or *res judicata* or have

collateral estoppel effect in this or any other proceeding.

## 4.    NOTICE, OPT-OUTS, AND OBJECTIONS

**4.1    Manner of Giving Notice to the Class**.  Pursuant to the Preliminary Approval

Order, the Settlement Administrator will provide notice to Class Members in accordance with a

notice plan to be approved by the Court in such Order.

**4.2    Other Required Notice**.  Sears/Kmart will serve, or cause to be served, the notice

required under 28 U.S.C. § 1715.

**4.3    Payment of Expenses Relating to Notice and Administration**.  All costs

associated with providing notice to Class Members and with administration of the Settlement

will be paid from the Settlement Class Escrow Account.

**4.4    Opt Outs by Class Members**.

**4.4.1    Procedures for Opt-Outs**.  The Parties will request that the Court order

procedures for Class Members to request to "opt out" (i.e., to be excluded from the Settlement

Class) in accordance with the provisions in the Preliminary Approval Order.  No request to opt

out shall be valid unless the Class Member requests to be excluded from the settlement. Exclusion requests must be made in writing, including the Class Member's name, address, telephone number, statement that the Class Member wants to be excluded, the name of this proceeding (*Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228), and signature. A request to opt out shall be considered valid if the Class Member sends a letter by U.S. Mail that includes all of the information set forth in the prior sentence, and sends such completed form or letter to the Settlement Administrator at the address provided in the Notices attached as Exhibit D, postmarked no more than ninety (90) days after the date the Preliminary Approval Order is entered. Each Class Member that submits a request to opt out in accordance with the previous sentence and the provisions of the Preliminary Approval Order shall be excluded from the Settlement Class. Class Members seeking to opt out will also be asked to provide the number of accounts that they issued. Each Class Member that does not submit a valid request to opt out shall remain in the Settlement Class and shall be bound by the Settlement and release provided in Section 7 of this Agreement.

       **4.4.2 Opt-Outs Report.** Within seven (7) days of the date set forth in the Notices by which opt-out requests must be postmarked, Settlement Class Counsel shall cause the Settlement Administrator to send to Settlement Class Counsel and to Sears/Kmart's Counsel: (i) copies of all requests to opt out; (ii) a report identifying (a) each Class Member that submitted a request to opt out; (b) the number of accounts issued by each such Class Member; and (c) the Settlement Administrator's determination as to the validity or invalidity of each such Class

Member's request to opt out pursuant to the provisions of Section 4.4.4 of this Settlement Agreement and the Preliminary Approval Order (the "Opt-Outs Report").

   **4.4.3** Within fourteen (14) days of the Settlement Administrator's delivery of the Opt-Outs Report pursuant to Section 4.4.2, the Settlement Class Representatives, through Settlement Class Counsel, and Sears/Kmart, through Sears/Kmart's Counsel, shall have the opportunity to submit a request that the Settlement Administrator correct any information included in the Opt-Outs Report that is believed to be incorrect, including but not limited to information regarding the number of accounts actually issued by a Class Member (a "Correction Request"). Any such Correction Request must be emailed to the Settlement Administrator and delivered to all other Parties in accordance with Section 13 of this Agreement. The Parties shall meet and confer regarding any Correction Requests prior to submitting them to the Settlement Administrator. If there is disagreement among the Parties regarding a Correction Request, the Party disputing the Correction Request shall have three (3) business days following the submission of the Correction Request to submit a request that the Settlement Administrator reject the Correction Request.

   **4.4.4** If any party submits a Correction Request pursuant to the procedures set forth in Section 4.4.3, then Settlement Class Counsel shall cause the Settlement Administrator, not later than seven (7) days after the later of (i) the date of the Correction Request and (ii) any objection or dispute regarding such Correction Request, to deliver to Settlement Class Counsel and to Sears/Kmart's Counsel another version of the Opt-Outs Report, incorporating any requested corrections that the Settlement Administrator determines should be made. Any Opt-Out Report delivered pursuant to this Section 4.4.4 shall supersede and replace any prior version of the Opt-Outs Report.

4.4.5    Following the time period for the submission of any Correction Requests and, if applicable, the Settlement Administrator's delivery of another version of the Opt-Outs Report pursuant to Section 4.4.4, and no later than fourteen (14) days before the Final Approval Hearing date, Settlement Class Counsel shall cause the Settlement Administrator to file the then-operative Opt-Outs Report with the Court.  To the extent there is any dispute between the Parties regarding any determination made in the Opt-Outs Report filed with the Court, the Parties shall present such disputes to the Court for resolution no later than seven (7) days before the Final Approval Hearing date.  In the event that no dispute is presented pursuant to this Section 4.4.5, the "Final Opt-Outs Report" shall be the Opt-Outs Report filed with the Court pursuant to this Section 4.4.5.  In the event that a Party presents a dispute to the Court pursuant to this Section 4.4.5, the "Final Opt-Outs Report" shall be the Opt-Outs Report filed with the Court pursuant to this Section 4.4.5, as modified (if at all) by the Court's ruling on such dispute.

4.4.6    **Effect of Opt Outs by Class Members**.  Either Party shall have the right to terminate the Settlement Agreement if Settlement Class Members who issued a certain percentage of the total number of accounts submit valid requests to opt out as separately agreed to by the Parties and submitted to the Court for *in camera* review.

4.5    **Objections by Settlement Class Members**

4.5.1    **Procedure for Objections**.  The Parties will request that the Court order procedures for Settlement Class Members to object to the approval of the Settlement, the Application, or both, in accordance with the provisions in the Preliminary Approval Order.

5.    **WAIVER OF APPEAL OF CARD BRAND ASSESSMENTS AND SETTLEMENT FUND DISTRIBUTION**

5.1    **MasterCard Assessment**.  As part of this Agreement, Sears/Kmart has agreed to drop its challenge to and pay the final assessment (including any fines and administration costs)

14

relating to the Data Breach that was issued by MasterCard pursuant to its Account Data Compromise ("ADC") program ("the Final MasterCard Assessment") and has withdrawn the appeal it filed pursuant to MasterCard's Security Rules and Procedures manual. The funds received by MasterCard for the Final MasterCard Assessment in the amount of $5,798,909.32 will be distributed pursuant to the ADC program guidelines. As part of this Agreement, Sears/Kmart has agreed to provide the full MasterCard Assessment amount to Class Members.

      **5.2   Visa Assessment.** After negotiating in good faith with Visa to reduce the assessment issued by Visa pursuant to its Global Compromised Account Recovery ("GCAR") program relating to the Data Breach ("the Original Visa Assessment"), as part of this Agreement, Sears/Kmart has agreed to waive its right to appeal and pay the final assessment. The funds received by Visa for the Final Visa Assessment in the amount of $7,574,497.18 will be distributed through the GCAR program guidelines. As part of this Agreement, Sears/Kmart has agreed to provide the full Visa Assessment amount to Class Members.

      **5.3   Distribution of Monetary Payments to Settlement Class Members**. Settlement Class Members will also be eligible to receive additional payments from the Settlement Class Escrow Account to the extent provided for in the Distribution Plan, attached as Ex. A.

      **5.3.1   Settlement Class Escrow Account**. Within five (5) business days of the later of (i) the Court's Preliminary Approval Order and (ii) Settlement Class Counsel's provision to Sears/Kmart of the account information for the Settlement Class Escrow Account, Sears/Kmart shall pay $200,000 of the Settlement Fund into the interest-bearing Settlement Class Escrow Account to be used in the first instance to pay the costs of notice and administration of the Settlement. To the extent that the costs of notice and administration of the Settlement exceed $200,000, such costs shall be paid out of the remainder of the Settlement Class Escrow Account;

Sears/Kmart shall not bear any obligations relating to such costs. Sears/Kmart shall pay $5,000,000 into the interest-bearing Settlement Class Escrow Account within five (5) business days after the Effective Date. The money in the Settlement Class Escrow Account shall be a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1. The Escrow Agent shall be responsible for all administrative, accounting and tax compliance activities in connection with the Settlement Class Escrow Account and the monies deposited into the Settlement Class Escrow Account, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-1. Sears/Kmart shall provide to the Escrow Agent any documentation necessary to facilitate obtaining Qualified Settlement Fund status for the Settlement Class Escrow Account pursuant to Treas. Reg. § 1.468B-1. All taxes on income or interest generated by the Settlement Class Escrow Account, if any, shall be paid out of the Settlement Class Escrow Account.

   **5.3.2 Distribution of the Settlement Class Escrow Account**. The Settlement Class Escrow Account shall be used to (i) pay all costs and expenses associated with notice and administration of the Settlement, including but not limited to any taxes due on the account, as set forth in Section 5.3.1 of the Agreement; (ii) make payments to the Settlement Class Members in accordance with the Distribution Plan, and as approved by the Court; and (3) make any Service Payments to Settlement Class Representatives as set forth in Section 8.3 of the Agreement.

   **5.3.3 Distribution of Remaining Funds**. The Parties intend that the entire Settlement Class Escrow Account be distributed pursuant to the claims administration process, and the Distribution Plan is designed to avoid remaining funds. To the extent that any funds remain, no portion of the Settlement Class Escrow Account shall be returned to Sears/Kmart.

Any such remaining funds will be distributed by the Settlement Administrator pro rata to eligible Settlement Class Members or as otherwise directed by the Court.

**5.3.4 All Claims Satisfied**. Each Settlement Class Member shall look solely to the payments due to any such Settlement Class Member as a result of the Assessment by Visa, the Assessment by MasterCard, and/or the Distribution Plan for satisfaction of all Plaintiff Released Claims.

**5.3.5 No Responsibility for Distribution**. After the Effective Date, Sears/Kmart and its insurers shall have no responsibility, financial obligation, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, or with respect to the administration of the settlement or the Settlement Class Escrow Account.

## 6. INJUNCTIVE RELIEF.

**6.1** Kmart agrees to use commercially reasonable efforts to implement the following security protocols within six (6) months after the Effective Date. Kmart will notify Settlement Class Counsel, in writing, five (5) months after the Effective Date should it appear that any of the following measures will not be implemented within the six (6) month time period contemplated by this Paragraph.

**6.1.1 Information Security Responsibilities.** Sears/Kmart will appoint and maintain an executive with responsibility for the company's program(s) to protect the security of cardholder data.

**6.1.2 Cardholder Data Risk Assessments.** Sears/Kmart will obtain an annual independent assessment of its compliance with the Payment Card Industry Data Security Standard, Requirements and Security Assessment Procedures, Version 3.1 or later.

**6.1.3 Vendor Program.** Sears/Kmart will develop and use reasonable steps to select and engage service providers that are capable of maintaining reasonable safeguards to

protect cardholder data. Sears/Kmart will evaluate the use of two-factor authentication for all third party Vendors with access to Sears/Kmart's cardholder data, and implement such two-factor authentication if technically feasible and practical for Sears/Kmart's and its Vendor's existing computer systems and networks. For the avoidance of doubt, "Vendors" excludes full or part-time employees, consultants hired in their individual capacity by Sears/Kmart, contractors hired in their individual capacity by Sears/Kmart, or other persons hired in their individual capacity by Sears/Kmart.

6.1.4 **Employee Education.** Sears/Kmart will develop and implement a program to educate and train appropriate members of its workforce on the importance of information security and the protection of cardholder data.

6.1.5 **Enhanced Security Measures.** Sears/Kmart will:

6.1.5.1 Implement and utilize Point-to-Point Encryption (P2PE) for cardholder data at all of Sears/Kmart's card-present point-of-sale endpoints, except for endpoints at Sears/Kmart retail locations that are scheduled for closure on or before December 31, 2016;

6.1.5.2 Implement and utilize EMV chip card technology at all of Sears/Kmart's card-present point-of-sale endpoints, except for endpoints at Sears/Kmart retail locations that are scheduled for closure on or before December 31, 2016; and

6.1.5.3 Build a tokenization vault to serve as a centralized and secured repository for retaining all Sears/Kmart cardholder data (once implemented, all applications that process cardholder data for Sears/Kmart will store tokens instead

of cardholder data, thereby increasing the security by limiting the storage of this sensitive information in a centralized, highly controlled repository).

**6.2** The obligations set forth in this Section 6 concerning Injunctive Relief shall expire on the third anniversary of the Effective Date.

## 7.    RELEASE OF CLAIMS

**7.1    Release of Settlement Class Claims**.   As of the Effective Date, the Settlement Class Representatives and all other Settlement Class Members, on their own behalves and on behalf of their respective past and present parents, subsidiaries, affiliates, associates, divisions, successors, predecessors, assignors, assignees, and assigns, and each of their respective past and present officers, directors, shareholders, members, insurers, agents, and employees (associates) ("Plaintiff Releasing Persons"), shall be deemed to have waived any right to assert against Sears/Kmart, MasterCard, Visa, and these entities' present, former, and future parents, subsidiaries, affiliates, divisions, successors, predecessors, associates, agents, assignors, assignees, and assigns, and each of their respective present, former or future, officers, directors, shareholders, insurers, employees (associates), agents, acquirers, processors, representatives, attorneys, and accountants (collectively, "Released Parties"), and to have irrevocably released and forever discharged the Released Parties from and for, any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which they ever had, now have, or may claim now or in the future to have, that (i) were alleged or asserted against any of the Released Parties in the Action or Complaint or that could have been alleged or asserted against any of the Released Parties in the Action or Complaint; (ii) arise out of the same nucleus of operative facts

19

as any of the claims alleged or asserted in the Action or Complaint; or (iii) arise out of the Data Breach or any disclosures or notices that Sears/Kmart made or failed to make about the Data Breach or any assessments by MasterCard and/or Visa relating to the Data Breach ("Plaintiff Released Claims").

7.2　**Release of Plaintiff Released Parties**.　As of the Effective Date, Sears/Kmart, and those entities' present, former, and future parents, subsidiaries, affiliates, divisions, successors, predecessors, associates, agents, assignors, assignees, and assigns, and each of their respective present, former or future, officers, directors, shareholders, insurers, employees (associates), agents, acquirers, processors, representatives, attorneys, and accountants (collectively, "Sears/Kmart Released Parties") shall be deemed to have waived any right to assert against Settlement Class Representatives, the other Settlement Class Members, and Settlement Class Counsel ("Plaintiff Released Persons"), and to have irrevocably released and forever discharged the Plaintiff Released Persons from and for, any and all liabilities, claims, cross-claims, causes of action, rights, actions, suits, debts, liens, contracts, agreements, damages, costs, attorneys' fees, losses, expenses, obligations, or demands, of any kind whatsoever, existing or potential, or suspected or unsuspected, whether raised by claim, counterclaim, setoff, or otherwise, including any known or unknown claims, which it ever had, now has, or may claim now or in the future to have, relating to the institution or prosecution of the Action ("Sears/Kmart Released Claims").

7.3　**Unknown Claims**.　For purposes of the releases set forth in Sections 7.1 and 7.2 and the Final Judgment, "unknown claims" means claims that Sears/Kmart and the Plaintiff Releasing Persons do not know or suspect to exist in their favor as of the entry of the Final Judgment, which if known by them might have affected their settlement of the Actions or the

Complaint. It is the intention of the Parties and the Settlement Class Members that, upon the Effective Date, Sears/Kmart and each of the Plaintiff Releasing Persons shall be deemed to have, and by operation of the Final Judgment shall have, expressly waived and relinquished, to the fullest extent permitted: (a) by section 1542 of the California Civil Code, or (b) by any law of any state or territory of the United States, federal law, or principle of common law which is similar, comparable, or equivalent to section 1542 of the California Civil Code, the provisions, rights and benefits of any statute or law which might otherwise render a general release unenforceable with respect to unknown claims. Section 1542 of the California Civil Code reads:

> Section 1542. General Release, extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Upon the Effective Date, Sears/Kmart and each of the Plaintiff Releasing Persons shall be deemed to have acknowledged that such party is aware that such party may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Plaintiff Released Claims and Sears/Kmart Released Claims, but it is such party's intention to, and each of them shall be deemed upon the Effective Date to have, waived and fully, finally, and forever settled and released any and all Plaintiff Released Claims and Sears/Kmart Released Claims, whether known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

**7.4 Bar to Future Suits**. Upon entry of the Final Judgment, Sears/Kmart, the Settlement Class Representatives and other Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against

21

any of the Plaintiff Released Persons, Sears/Kmart Released Persons or based on any actions taken by any of the Plaintiff Released Persons or Sears/Kmart Released Persons that are authorized or required by this Agreement or by the Final Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any proceeding subject to this section.

## 8. SERVICE PAYMENTS, ATTORNEYS' FEES AND LITIGATION EXPENSES AND REIMBURSEMENTS

**8.1 Attorneys' Fees and Expenses**. Sears/Kmart understands that Settlement Class Counsel will apply for a reasonable award of attorneys' fees and expenses (the "Fee Request"), which shall be separate from the Settlement Fund. The Parties will discuss and attempt to negotiate an amount for the Fee Request to which Sears/Kmart will not object. If the Parties are unable to agree on this amount, Plaintiffs will file a motion in the Action for approval of the Fee Request, which Sears/Kmart may oppose. Alternatively, the Parties may agree to have Judge Wayne Andersen mediate or arbitrate a proposed fee which the Parties will agree not to challenge, and which must be submitted to the Court as a Fee Request for approval. Sears/Kmart will pay the attorneys' fees and expenses awarded, subject to final approval by the Court.

**8.2 Payment Procedure**. Within ten (10) business days of the Effective Date, Sears/Kmart shall cause any attorneys' fees and costs awarded by the Court pursuant to the Fee Request, to be paid to a Trust Account to be agreed upon by the Parties. Settlement Class Counsel shall be solely responsible for distributing any awarded attorneys' fees and costs.

**8.3 Service Payments.** Any Service Payments made to Settlement Class Representatives will be paid from the Settlement Fund as contemplated in Sections 1.46 and 5.3.2 of the Agreement. Settlement Class Counsel may apply for a Service Payment of up to $10,000.00 to be paid to each of the five Settlement Class Representatives in this case. The

<u>final amount of any Service Payments will be determined by the Court. Settlement Class Counsel</u> will be solely responsible for making any application to the Court on behalf of the Settlement Class Representatives for Service Payments (the "Application") and for distributing any awarded Service Payments to the Settlement Class Representatives.

      **8.4** **No Additional Amounts Due**. Sears/Kmart shall not be liable for any additional fees, costs, or expenses of Settlement Class Counsel, the Settlement Class Representatives, or any other Settlement Class Member in connection with the Action or Complaint, or for any other service awards. Settlement Class Counsel and Settlement Class Representatives agree that they will not seek any additional fees, costs, expenses, or service awards from Sears/Kmart in connection with the Actions or the Complaint.

## 9. SETTLEMENT ADMINISTRATOR'S REPORTING OBLIGATIONS

      **9.1** The Settlement Administrator shall administer various aspects of the Settlement, including:

      **9.1.1** Obtaining the name, mailing address, and/or e-mail address information of Settlement Class Members for the purpose of sending Mail and E-mail Notice to Settlement Class Members;

      **9.1.2** With the cooperation and assistance of counsel for Sears/Kmart, obtaining information necessary to establish a reasonably practical procedure to verify Settlement Class Members eligibility as set forth in the Distribution Plan;

      **9.1.3** Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

      **9.1.4** Establishing and maintaining the Settlement Website;

**9.1.5** Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of the Settlement Class Members who call with or otherwise communicate such inquiries;

**9.1.6** Responding to any mailed Settlement Class Member inquiries;

**9.1.7** Processing all written notifications of exclusion from the Settlement Class;

**9.1.8** Providing bi-weekly reports and the reports required by Section 4.4 of the Agreement related to Opt-Outs;

**9.1.9** No later than fourteen (14) days before the Final Approval Hearing date, the Settlement Administrator shall file with the Court a sworn declaration verifying that notice was provided to Class Members as required in the Preliminary Approval Order; and

**9.1.10** Performing any function related to settlement administration at the agreed-upon instruction of both Settlement Class Counsel and Sears/Kmart.

## 10. CONTINGENCIES

**10.1 Contingencies**. This Agreement shall be deemed terminated if: (a) the Court fails to enter the Preliminary Approval Order; (b) the Court fails to enter the Final Judgment; (c) the Final Judgment is not fully upheld on appeal, if any appeal of the Final Judgment is taken; (d) the Parties elect to terminate pursuant to Section 4.4.6 above; or (e) by written instrument signed by all Parties or their successors in interest or their duly authorized representatives prior to the Effective Date.

**10.2 Effect of Termination.**

**10.2.1** In the event that this Agreement is terminated pursuant to Section 4.4.6, or fails to become effective for any reason whatsoever, then all obligations under this Agreement shall cease to be of any force and effect, and the Parties shall be deemed to have reverted to their respective positions as of October 21, 2015, and they shall proceed in all respects as if this

Agreement, its exhibits, and any related agreements or orders, including any modification of the class definition pursuant to the Preliminary Approval Order, had never been executed or entered, except that the provisions set forth in this Section 10.2.1, and in Section 2.1, Section 10.2.2, Section 12, Section 14.2, and Section 15.6 shall survive any such termination. Further, the fact that Sears/Kmart did not oppose the certification of the Settlement Class, or that the Court preliminary or finally approved the certification of a Settlement Class, shall not be used or cited thereafter by any person or entity, including in any contested proceeding relating to the certification of any class.

        **10.2.2**  In the event this Agreement is terminated, or fails to become effective for any reason whatsoever, then the Parties agree to jointly seek an order from the Court restoring the Parties to their positions as of October 21, 2015, with respect to the Action and Complaint.

## 11.      CONTINUING JURISDICTION

        The Court shall retain jurisdiction to implement and enforce this Agreement's terms and the Final Judgment.

## 12.      PUBLICITY; CONFIDENTIALITY

        The Parties agree that all of their negotiations relating to this Settlement Agreement are, and shall remain, confidential and subject to the confidentiality provisions governing the Parties' mediation.  The Parties further agree that they will not make the settlement reflected herein public until the Settlement Agreement is formally submitted to the Court.  In issuing public statements, including responding to any inquiries from the public media concerning the Action or the Complaint or the settlement of the Action or the Complaint, the Settlement Class Representatives, Settlement Class Counsel, Sears/Kmart, and Sears/Kmart's Counsel will limit their statements to the provision of such factual information as is contained in the settlement notice, the Settlement Agreement, the pleadings, and any of the various court transcripts or

orders in the Action or the Complaint. The Settlement Class Representatives, Settlement Class Counsel, Sears/Kmart, and Sears/Kmart's Counsel may further state to the effect that "the matter has been settled to the satisfaction of all parties." Nothing in this Section 12 shall limit (a) the ability of Settlement Class Counsel or the Settlement Class Representatives, after the Settlement Agreement is formally submitted to the Court, to communicate privately with a Settlement Class Member concerning the settlement, provided that no information regarding the negotiations relating to the Settlement are disclosed, (b) the ability of Sears/Kmart or its successors to make such public disclosures as the federal securities laws require or to provide information about the settlement to state and federal regulators, other government officials, or its insurers/reinsurers after the Settlement Agreement is formally submitted to the Court, (c) the ability of Sears/Kmart to communicate with MasterCard or Visa about the Settlement and any card brand assessments, in order to ensure that the card brand assessments are handled in a manner contemplated by the Settlement, or (d) the ability of Sears/Kmart to notify its insurers about the Settlement.

## 13.    NOTICES

Any communication, verification, or notice sent by any Party in connection with this Agreement shall be sent by email (in which case it will be effective on transmission to each representative of a party for whom an email address is listed below, unless the party making delivery is notified that the email was not received by such representative of the other party) or overnight mail (in which case, it will be effective on the business day after being deposited with a reputable delivery service) as follows:

**To Settlement Class Representatives:**

| | |
|---|---|
| **MURRAY LAW FIRM** | **HAUSFELD, LLP** |
| Arthur M. Murray | James J. Pizzirusso |
| 650 Poydras Street, Suite 2150 | 1700 K. Street, NW<br>Suite 650<br>Washington, DC 20006 |

New Orleans, LA
70130
504-525-8100
amurray@murray-
lawfirm.com

202-540-7200
jpizzirusso@hausfeld.com

**LOCKRIDGE
GRINDAL NAUEN
P.L.L.P.**
Karen H. Riebel
100 Washington
Avenue South
Suite 2200
Minneapolis, MN
55401
612-339-6900
khriebel@locklaw.com

**To Sears/Kmart:**

**KING & SPALDING LLP**
Phyllis B. Sumner
S. Stewart Haskins
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-4600
psumner@kslaw.com
shaskins@kslaw.com

**Sears Holdings Management Corporation**
c/o Legal Intake
3333 Beverly Road
Hoffman Estates, Illinois  60179
847-286-0405
legalint@searshc.com

**14.    MISCELLANEOUS**

**14.1  Entire Agreement**.  This Agreement contains the entire agreement between the Parties and supersedes all prior understandings, agreements, or writings regarding the subject matter of this Agreement.

**14.2  No Liability**.  Nothing contained herein, or in any document or instrument contemplated by this Agreement, is to be construed as an admission of wrongdoing or liability by any party, such wrongdoing and liability being expressly denied, and no final adjudication having been made.  The Parties have entered into this Agreement solely as a compromise of all claims for the purpose of concluding the disputes between them, and the Agreement may not be used by any third party against any Party.  Pursuant to Fed. R. Evid. 408, the entering into and carrying out of this Agreement, and any negotiations or proceedings related to it, shall not be construed as, or deemed evidence of, an admission or concession by any of the Parties or a waiver of any applicable statute of limitations, and shall not be offered or received into evidence in any action or proceeding against any Party in any court, administrative agency or other tribunal for any purpose whatsoever.

**14.3  Amendment**.  This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives.

**15.  REPRESENTATIONS AND WARRANTIES**

**15.1  No Additional Persons with Financial Interest**.  Sears/Kmart shall not be liable for any additional attorneys' fees and expenses of any Settlement Class Members' counsel, including any potential objectors or counsel representing a Settlement Class Member individually, other than what is expressly provided for in this Agreement.  Settlement Class Counsel agree to hold Sears/Kmart harmless from any claim that the term "Settlement Class Counsel" as defined in Section 1.42 of this Agreement fails to include any person or firm who

claims that they are entitled to a share of any attorneys' fees awarded to Settlement Class Counsel in connection with the Action or the Financial Institutions Complaint.

**15.2 Parties Authorized to Enter into Agreement**. Each person executing this Agreement represents and warrants that he or she is fully authorized to enter into this Agreement and to carry out the obligations provided for herein. Each person executing this Agreement on behalf of Settlement Class Representatives or Sears/Kmart covenants, warrants and represents that he or she is and has been fully authorized to do so by the Settlement Class Representatives or Sears/Kmart. Each Settlement Class Representative and Sears/Kmart hereby further represents and warrants that it intends to be bound fully by the terms of this Agreement.

**15.3 Governing Law**. This Agreement is intended to and shall be governed by the laws of the State of Illinois without regard to its choice of law principles.

**15.4 Exclusive Jurisdiction and Venue for Enforcement.** Any dispute relating to this Settlement Agreement and/or Judgement shall be resolved exclusively in the U.S. District Court for the Northern District of Illinois. The Parties agree to submit to the exclusive jurisdiction and venue for the purposes described above.

**15.5 No Construction Against Drafter**. This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

**15.6 Agreement Binding on Successors in Interest**. This Agreement shall be binding on and inure to the benefit of the respective heirs, successors, and assigns of the Parties.

**15.7 Execution in Counterparts**. This Agreement shall become effective upon its execution by all of the Parties' attorneys. The signatories may execute this Agreement in counterparts. Each counterpart shall be deemed to be an original, and execution of counterparts

shall have the same force and effect as if all signatories had signed the same instrument. Signatures sent in PDF format by email will constitute sufficient execution of this Agreement.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

*Counsel for Sears/Kmart*

_____

**KING & SPALDING LLP**
Phyllis B. Sumner
S. Stewart Haskins
1180 Peachtree Street NE
Atlanta, GA 30309
404-572-4600
psumner@kslaw.com
shaskins@kslaw.com

*Sears/Kmart*

_____

Andrew M. Johnstone
Deputy General Counsel – Litigation
Sears Holdings Management Corporation
3333 Beverly Road, B6-349B
Hoffman Estates, Illinois  60179
847-286-8157
andrew.johnstone@searshc.com

*Settlement Class Counsel*

_____

**MURRAY LAW FIRM**
Arthur M. Murray
650 Poydras Street, Suite 2150
New Orleans, LA 70130
504-525-8100
amurray@murray-lawfirm.com

_____

**HAUSFELD, LLP**
James J. Pizzirusso
1700 K. Street, NW
Suite 650
Washington, DC 20006
202-540-7200
jpizzirusso@hausfeld.com

_____

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Karen H. Riebel
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
612-339-6900
khriebel@locklaw.com

## EXHIBIT A:  SETTLEMENT FUND DISTRIBUTION PLAN

The Settlement Fund will be divided into two separate Tiers for distribution: Tier 1 ("Non VisaNet Tier") and Tier 2 ("All Class Tier").

**Tier 1**

In Tier 1, only Settlement Class Members who issued Non VisaNet Cards will be eligible to make a claim for each Non VisaNet Compromised Payment Card that they issued and for which they received an Alert related to the Data Breach.  Settlement Class Members eligible to submit a claim in Tier 1 must submit documentation consisting of copies of the Data Breach Alerts that they received on their Non VisaNet Cards.

Each Settlement Class Member who makes a valid claim in Tier 1 will be eligible to receive a minimum payout of $1.00 per Non VisaNet Compromised Payment Card up to a maximum payout of $2.38 per card, depending on the total number of eligible claims made in this Tier.  The maximum overall payment in Tier 1 will be capped at $3.4 million.  Any Settlement Funds remaining from Tier 1 (if fewer claims are made than will exhaust Tier 1) will move into Tier 2 and be eligible for distribution to any Settlement Class Member (as described below).

**Tier 2**

Tier 2 will consist of the remaining Settlement Fund (after accounting for all costs of class notice and settlement administration and service awards to the Named Plaintiffs) minus the payouts in Tier 1.  Every Settlement Class Member will be eligible to submit claims for any remaining unreimbursed fraud and card reissuance damages related to the Data Breach by submitting documentation detailing such damages.

For fraud damages, Settlement Class Members must submit documentation consisting of proof of all fraud expenses incurred within the Fraud Window on Compromised Payment Cards. For card reimbursement damages, Settlement Class Members must submit documentation of proof of the actual costs of replacing physical payment cards on Compromised Payment Cards. Any amounts that the Settlement Class Member recovered through the ADC or GCAR Assessment processes (discussed above) or from Tier 1 payouts will be subtracted from the damages claimed in order to determine the Maximum Payout Amount, which will then be distributed to eligible Settlement Class Members based on the claims submitted.  If the total valid claims in the Tier 2 Maximum Payout Amount exceed the remaining Settlement Fund in Tier 2, any payouts will be distributed to eligible Settlement Class Members on a pro rata basis.

The Claims Administrator will review and make final eligibility determinations for all claims in Tier 1 and Tier 2.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GREATER CHAUTAUQUA FEDERAL CREDIT UNION, FIRST CHOICE FEDERAL CREDIT UNION, GULF COAST BANK & TRUST COMPANY, GOVERNMENTAL EMPLOYEES CREDIT UNION, and OTEEN V.A. FEDERAL CREDIT UNION, individually and on behalf of a class of similarly situated financial institutions, | : : : : : : : : : : : : : : : : : : : : : : : | Case No: 1:15-cv-02228 |
| Plaintiffs, | | |
| v. | | |
| KMART CORPORATION and SEARS HOLDINGS CORPORATION, | | |
| Defendants. | | |

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS, AND AUTHORIZING DISSEMINATION OF NOTICE**

Upon consideration of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (the "Motion") (ECF No. 95), it is hereby **ORDERED** as follows:

1.     The Motion is **GRANTED**.

2.     **Preliminary Settlement Approval and Jurisdiction.**  The Court finds that the settlement set forth in the Settlement Agreement dated July 26, 2016 (the "Agreement" or "Settlement Agreement"), between Defendants Kmart Corporation and Sears Holdings Corporation (collectively "Defendants") and Plaintiffs Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental

Employees Credit Union, and Oteen V.A. Federal Credit Union (collectively, "Plaintiffs") individually and as representatives of the Class, subject to final determination following proper notice and a fairness hearing, is sufficiently fair, reasonable, and adequate to authorize dissemination of class notice. This Court has jurisdiction over this Action and each of the parties to the Settlement Agreement. This Order incorporates herein, and makes a part thereof, the Settlement Agreement, including all Exhibits thereto. Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meanings herein.

3. **Class Certification for Settlement Purposes Only.** The Court certifies the following settlement class for settlement purposes only (the "Settlement Class") pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All entities in the United States and its Territories that issued payment cards identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card Data Breach that was publicly disclosed by Kmart on October 10, 2014.

> Excluded from the class are all entities that have entered or will enter into a separate release of claims arising from the Data Breach, including American Express Company and DFS Services LLC (Discover).

4. The Court finds that certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) is warranted because:

(a) The Settlement Class is so numerous that joinder of all Settlement Class Members is sufficiently impracticable;

(b) There are sufficient issues of law and fact common to the Settlement Class;

(c) the claims of the Settlement Class Representatives are typical of and arise from the same operative facts and seek similar relief as the claims of the Settlement Class Members;

(d)     the Settlement Class Representatives and Settlement Class Counsel will fairly and adequately protect the interests of the Settlement Class as the Settlement Class Representatives have no interests antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this matter on behalf of the Settlement Class;

(e)     Questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and

(f)     A class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy.

5.     **Settlement Class Representatives and Settlement Class Counsel:**     The following named Plaintiffs and Settlement Class Members are designated and appointed as the Settlement Class Representatives: Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union.   The Court finds that the Settlement Class Representatives are similarly situated to absent Class Members and therefore typical of the Class and that they will be adequate Settlement Class Representatives.

6.     The Court finds that the following counsel, previously appointed by the Court as interim co-lead or liaison counsel, are experienced and adequate counsel and are hereby designated as Settlement Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Murray Law Firm, Hausfeld, LLP, and Lockridge Grindal Nauen P.L.L.P.

7.     **Appointment of Settlement Administrator.**  The Court approves and appoints the retention of Epiq Systems, Inc. ("Epiq") to serve as Settlement Administrator for this Settlement.  Epiq will work under the direction of Settlement Class Counsel and in accordance

with Court orders to provide Class Notice, respond to inquiries from Settlement Class Members, receive Requests for Exclusion and, at a later time, receive and process Settlement Class Member Claims and distribute Settlement proceeds to Settlement Class Members.

8.      **Notice to Settlement Class.**    Notice to members of the Class, except any statutory notice required to be given by Defendants pursuant to the Class Action Fairness Act, shall be the responsibility of Settlement Class Counsel.

9.      Notice shall be provided to the members of the Class.  The Court approves the form of the E-Mail Notice and Long Form Notice (the "Notices") attached as Exhibit D to the Settlement Agreement.  The Court finds that the dissemination of the Notices in the manner set forth below constitutes the best notice practicable under the circumstances as well as valid, due, and sufficient notice to all persons and/or entities entitled thereto and complies fully with Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution.

10.     The Court approves the notice plan contained in the Declaration of Cameron R. Azari attached as Exhibit D to the Settlement Agreement.  Notice, including without limitation, notice of the rights of Settlement Class Members to object to the Settlement or request exclusion from it, shall be given by issuance of notice consistent with the terms of the Settlement Agreement.

10.11. The Court approves Settlement Class Representatives and Settlement Class Counsel conducting limited discovery from MasterCard and Visa to obtain necessary information to provide notice to the Settlement Class and for settlement administration in accordance with the notice plan contained in the Declaration of Cameron R. Azari.

11.12.  The Court finds that the proposed notice plan (i) is reasonable and constitutes due, adequate and sufficient notice to the Settlement Class, (ii) fairly and adequately describes the terms and effects of the Settlement Agreement, (iii) fairly and adequately descries the date by which the Settlement Class Counsel must file the Motion for Final Approval and Motion for Attorneys' Fees, (iv) fairly and adequately describes the method and date by which any member of the Settlement Class may object to the Settlement or exclude themselves from the Settlement Class, (v) sets a date by which Settlement Class Counsel may respond to any objections to the Settlement, (vi) provides notice to the Settlement Class of the time and place of the Fairness Hearing, and (vii) constitutes reasonable notice under the circumstances and otherwise meets all requirements of applicable law.

12.13.  The Settlement Administrator shall cause the Email Notice and the Long Form Notice to be disseminated, in substantially the form attached as Exhibits D to the Settlement Agreement, pursuant to the notice plan.

13.14.  The Settlement Administrator is directed to file with the Court and serve upon Settlement Class Counsel no later than __ days before the filing by Settlement Class Counsel of the Motion for Final Approval a declaration confirming that dissemination of the Notice to the Class has taken place in accordance with this Order.

14.15.  Settlement Class Counsel are authorized to pay from the Settlement Fund the costs, as they are incurred, of providing Notice in accordance with this Order and maintaining the Settlement Fund, including taxes and tax expenses.

15.16.  **Opt-Outs from the Settlement Class.**  Settlement Class Members who wish to be excluded from the Class shall mail a written Request for Exclusion to the Settlement Administrator, so that it is postmarked no later than ~~thirty (30)~~ sixty (60) days before the Final

Approval Hearing, shall clearly state the following: the Settlement Class Member's name, address, telephone number, statement that the Settlement Class Member wants to be excluded, the name of this proceeding (*Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228), and signature, and shall provide all such information as may be required by the Settlement Agreement or requested by the Settlement Administrator.

16.17. Each Settlement Class Member that submits a request to opt out in accordance with the previous sentence and the provisions of the Preliminary Approval Order shall be excluded from the Settlement Class. Settlement Class Members seeking to opt out will also be asked to provide the number of accounts that they issued. Within seven (7) days of the date set forth in the Notices by which opt-out requests must be postmarked, Settlement Class Counsel shall cause the Settlement Administrator to send to Settlement Class Counsel and to Sears/Kmart's Counsel: (i) copies of all requests to opt out; (ii) a report identifying (a) each Settlement Class Member that submitted a request to opt out; (b) the number of accounts issued by each such Settlement Class Member; and (c) the Settlement Administrator's determination as to the validity or invalidity of each such Settlement Class Member's request to opt out pursuant to the provisions of Section 4.4.4 of the Settlement Agreement and the Preliminary Approval Order (the "Opt-Outs Report").

17.18. Any Settlement Class Member who does not properly and timely mail a Request for Exclusion as set forth above shall be automatically included in the Class and shall be bound by all the terms and provisions of the Settlement Agreement, the Settlement, this Order Granting Preliminary Approval of Settlement, and the Final Approval Order and Judgment, whether or not

such Settlement Class Member received actual notice or shall have objected to the Settlement and whether or not such Settlement Class Member makes a Claim upon or participates in the Settlement.

~~18.~~19.  To effectuate the Settlement Agreement and Settlement, the Settlement Administrator shall be responsible for the receipt and processing of all Requests for Exclusion and Claim Forms.

~~19.~~20.  Settlement Class Members who have not requested exclusion from the Class may object to the Settlement.  Any Settlement Class Member who chooses to object to the Settlement must file written notices of intent to object with the Court and serve copies of any such objection on counsel for the Parties.  Any Settlement Class Member who files a valid objection may appear at the Final Approval Hearing, in person or by counsel, and be heard to the extent permitted under applicable law and allowed by the Court, in opposition to the fairness, reasonableness and adequacy of the Settlement, and on Plaintiffs' Counsel's Fee Request.  The right to object to the Settlement must be exercised individually by an individual Settlement Class Member and, except where represented by counsel, not be the act of another entity acting or purporting to act in a representative capacity.

~~20.~~21.  **Objections.**  To be effective, a notice of intent to object to the Settlement that is filed with the Court must:

(a)      Contain a caption that includes the name of the case as follows:  *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228;

(b)     Settlement Class Member's name, address, telephone number, statement that the Settlement Class Member wants to be excluded and intends to object, and signature;

(c)     Be filed with the Northern District of Illinois Clerk of the Court not later ninety (90) days after the date the Preliminary Approval Order is entered sixty (60) days before the Final Approval Hearing;

(d)     Be served on Settlement Class Counsel and counsel for Defendants so as to be received not later than thirty (30) sixty (60) days before the Final Approval Hearing;

(e)     Contain the name, address, bar number and telephone number of the objecting Settlement Class Member's counsel, if represented by an attorney;

(f)     Contain the number of class action settlements objected to by the Settlement Class Member in the last three years; and

(g)     State whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing.

21. 22.   In addition to the foregoing, if the Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Approval Hearing, a notice of intent to object must contain the following information:

(a)     A detailed statement of the specific legal and factual basis for each and every objection; and

(b)     A detailed description of any and all evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, including copies of any and all exhibits that the objecting Settlement Class Member may introduce at the Final Approval Hearing.

22. 23.   Any Settlement Class Member who does not file a timely and adequate notice of intent to object in accordance with these provisions waives the right to object or to be heard at

the Final Approval Hearing and shall be forever barred from making any objection to the Settlement. To the extent any Settlement Class Member objects to the Settlement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by the Final Approval Order and Judgment of the Court.

23.24. To the extent any Settlement Class Member files an objection to the Settlement, The filing of an objection allows Plaintiffs' Counsel or counsel for Defendants to may seek leave of Court to conduct expedited discovery regarding the subject matter that was raised in the objection. any documentary or deposition based evidence or other tangible things that are relevant to the objection. Failure to comply with expedited discovery requests by an objecting Settlement Class Member may result in the Court striking the Settlement Class Member's objection and otherwise denying that Settlement Class Member the opportunity to make an objection or be further heard. The Court reserves the right to tax the costs of any such discovery to the objecting Settlement Class Member or the objecting Settlement Class Member's separate counsel should the Court determine that the objection is frivolous or is made for an improper purpose.

24.25. **Claims Process and Distribution Plan.** Settlement Class Counsel has created a process for assessing and determining the validity of claims and a payment methodology to Settlement Class Members who submit a timely, valid claim form. The Court preliminary approves the Distribution Plan substantially in the form attached to the Settlement Agreement as Exhibit A, and directs the Settlement Administrator to effectuate the Distribution Plan according to the terms of the Settlement Agreement.

25.26. In order to be entitled to participate in the Settlement (as defined in the Settlement Agreement, Settlement Fund Distribution Plan, and the Notice), a member of the Class who has

not requested exclusion therefrom must submit a valid Claim on or before

_____. Any member of the Class who does not submit a timely, valid Claim

shall not be entitled to share in the Settlement, but nonetheless shall be barred and enjoined from

asserting any of the released claims.

26.27. **Final Approval Hearing.** The Final Approval Hearing will be held before this

Court, in Courtroom 1225, at the United States District Court for the Northern District of Illinois,

Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL

60604, on _____ __, 20___ at __: __ a.m., or another date set by the Court, to consider, *inter*

*alia*, the following: (a) the fairness, reasonableness and adequacy of the Settlement; (b) the

dismissal with prejudice of the Action as to Defendants; (c) whether Settlement Class Counsel's

application for attorneys' fees, expenses, and compensation for the Class Representatives ("the

Fee Request") should be granted; (d) whether to finally approve the Settlement Agreement; and

(e) whether the Court should enter an order expressly determining that there is no just reason for

delay and expressly directing that any judgment by the Court approving the Agreement and the

Class should be deemed as a final judgment under Fed. R. Civ. P. 54(b) with respect to all

Claims by Settlement Class Members against Defendants and all Released Parties.

28. No later than fourteen (14) calendar days before the Final Approval Hearing, the

Settlement Administrator shall file with the Court a sworn declaration verifying that notice was

provided to Settlement Class Members in accordance with the terms of this Order and provide to

Plaintiffs' Counsel and counsel for Defendants the following information: (i) the number of

Notices sent to Settlement Class Members; (ii) the approximate number of visits to the

Settlement website from the date of entry of a Preliminary Approval Order; (iii) the names of

Settlement Class Members who have requested exclusion from the Settlement; and (iv) such

other similar tracking information reasonably requested by Plaintiffs' Counsel and Defendants'
counsel.

27.29.  Settlement Class Counsel shall file a motion and memorandum seeking final
approval along with anymemoranda, declarations, or other statements and/or other materials in
support of final approval of the Settlement Agreement and the Fee Request, no later than forty-
five (45) days prior to the Final Approval Hearing.

28.30.  Settlement Class CounselThe Parties shall file any reply papers in support of final
approval of the Settlement Agreement and the Fee Request and the Parties shall file any
responses to any objections from Settlement Class Members no later than thirty (30) days before
the Final Approval Hearingby seven (7) days prior to the Final Approval Hearing.

29.31.  The Settlement on the terms and conditions of the Settlement Agreement filed
concurrently with the Motion for Preliminary Approval is hereby preliminarily approved, but is
not to be deemed an admission of liability or fault by Defendants or by any other party or person,
or a finding of the validity of any claims asserted in the litigation or of any wrongdoing or of any
violation of law by Defendants.  The Settlement is not a concession and shall not be used as an
admission of any fault or omission by Defendants or any other party or person.

30.32.  Upon Final Approval, each and every term and provision of the Settlement
Agreement (except as may be modified by the Final Approval Order) shall be deemed
incorporated into the Final Approval Order and Judgment as if expressly set forth and shall have
the full force and effect of an order of the Court.

31.33.  In the event that the Settlement is terminated in accordance with the provisions of
the Settlement Agreement, the Settlement and all proceedings had in connection therewith shall

be null and void, except insofar as expressly provided in the Settlement Agreement, and without prejudice to the status quo ante rights of Plaintiffs and Defendants.

32.34. Neither this Order nor the Settlement Agreement, nor any documents or statements related thereto, shall constitute any evidence or admission of liability by Defendants and/or any Released Party, nor shall any such document or statement be offered in evidence in this or any other proceeding except to consummate or enforce the Settlement Agreement or the terms of this Order.

33.35. Summary of Dates and Deadlines:

| | |
|---|---|
| Last day to disseminate class notice: | [Insert.] |
| Last day to file (1) Motion for Final Approval and (2) Fee Request: | [Insert.] |
| Last day for objections to Settlement or opposition to Motion for Final Approval of Fee Request (sixty (60) days before the Final Approval Hearing) | [Insert.] |
| Last day for Settlement Class Members to opt-out of the Settlement :(sixty (60) days before the Final Approval Hearing) | [Insert.] |
| Last day for the Parties to file responsesplies to any Settlement Class Member objections to the Motion for Final Approval or Fee Request: (no later than thirty (30) days before the Final Approval Hearing) | [Insert.] |
| | |
| 36. Last day to file (1) Motion for Final Approval and (2) Fee Request: (no later than forty-five (45) days prior to the Final Approval Hearing) | [Insert.] |
| Fairness Approval (Final Fairness) Hearing: | |

**IT IS SO ORDERED.**

DATED:_____, 2016          _____

The Honorable John Z. Lee
Judge, United States District Court
Northern District of Illinois

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

# Banks, credit unions and other financial institutions that issued payment cards that were compromised in the October 2014 Kmart data breach, could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A settlement of lawsuits against Kmart Corporation ("Kmart") and Sears Holdings Corporation ("Sears") (collectively "Sears/Kmart") has been proposed in which Sears/Kmart has agreed to pay (as described below) to resolve claims brought by financial institutions relating to the payment card data breach announced by Sears/Kmart in October 2014 (the "Data Breach"), less any adjustments described herein.

- The lawsuit, called *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228, alleges violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols.

- The settlement includes $5,200,000 that Sears/Kmart will pay to the Settlement Fund that will be used to pay all costs of class notice and settlement administration, service awards to the Named Plaintiffs, and the claims of eligible Settlement Class members. In addition, Sears/Kmart agreed to waive its appeal rights concerning and to pay the final Visa and MasterCard assessments.

- Your entity's legal rights are affected whether you act or don't act. Read this notice carefully.

| SUMMARY OF LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Claim Form** | The only way to get a payment from the Settlement Fund. |
| **Request Exclusion** | Get no payment from the Settlement Fund. This is the only option that may allow a Class Member to sue Sears/Kmart over the claims being resolved by this settlement. |
| **Object** | Write to the Court with concerns about the settlement. |
| **Go To A Hearing** | Ask to speak in Court about the fairness of the settlement. |
| **Do Nothing** | Get no payment from the Settlement Fund and give up rights to ever be part of any other lawsuit against Sears/Kmart about the claims being resolved in this settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ........................................................................ **PAGE 3**

    1. Why did I get this notice package?
    2. What is this lawsuit about?
    3. Why is this a class action?
    4. Why is there a settlement?

**WHO IS PART OF THE SETTLEMENT?** ............................................ **PAGE 4**

    5. What financial entities are part of the settlement?
    6. Are there exceptions to being included?
    7. I'm still not sure if my financial entity is included.

**THE SETTLEMENT BENEFITS** ....................................................... **PAGES 4-5**

    8. What does the settlement provide?
    9. How much will each financial institution's payment from the Settlement Fund be?
    10. What else does the Settlement provide?

**HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM** ................... **PAGES 5-6**

    11. How can a financial institution get a payment?
    12. When would a financial institution get its payment?
    13. What is my financial institution giving up to get a payment or remain in the Class?

**EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT** ................ **PAGE 6-7**

    14. How can my financial institution opt out of the settlement?
    15. If my financial institution doesn't exclude itself, can it sue Sears/Kmart for the same thing later?
    16. If my financial institution excludes itself, can it get money from this settlement?

**THE LAWYERS REPRESENTING YOU** ................................................ **PAGES 7**

    17. Does my financial institution have a lawyer in the case?
    18. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .................................................. **PAGES 7-8**

    19. How does my financial institution tell the Court that it doesn't like the settlement?
    20. What's the difference between objecting and excluding/opting out?

**THE COURT'S FINAL APPROVAL HEARING** ...................................... **PAGE 8**

    21. When and where will the Court decide whether to approve the settlement?
    22. Does my financial institution or a representative have to attend the hearing?

**IF YOU DO NOTHING** ................................................................. **PAGE 8**

    23. What happens if my financial institution does nothing at all?

**GETTING MORE INFORMATION** ..................................................... **PAGE 9**

    24. How do I get more information?

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXXX.com**

# BASIC INFORMATION

## 1. Why did I get this notice package?

The financial institution sent this notice may have issued payment cards included in one or more of the alerts sent out by Visa and MasterCard relative to the Data Breach.

The Court authorized this notice because you have a right to know about a proposed settlement of a class action lawsuit against Sears/Kmart and about all of the options before the Court decides whether to approve the settlement.  If the Court approves the settlement and after objections and appeals are resolved, a settlement administrator appointed by the Court, as well as Visa and MasterCard, will distribute the funds pursuant to the terms of the settlement.

This package explains the lawsuit, the settlement, your entity's legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of Illinois, and the case is known as *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228.  The financial institutions who sued are called "Plaintiffs," and the companies they sued, Sears and Kmart, are the "Defendants."

## 2. What is this lawsuit about?

On October 10, 2014, Sears/Kmart announced that on the prior day, October 9, 2014, Sears/Kmart's Information Technology team detected a criminal intrusion into Kmart's payment data systems, resulting in the potential compromise of payment card information.  Plaintiffs have alleged common law claims and violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols.  The lawsuits seek damages for the costs that Plaintiffs claim were incurred by financial institutions as a result of the Data Breach, such as card reissuance costs, amounts paid to cover fraud losses and other costs incurred on eligible accounts in responding to the Data Breach.

Sears/Kmart denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing.

## 3. Why is this a class action?

In a class action, one or more entities called "Class Representatives" sue on behalf of themselves and other entities with similar claims.  All of these entities together are the "Class" or "Class Members."  If the Court certifies the class, as it has done here for settlement purposes, one court resolves the issues for all class members, except for those who exclude themselves from the Settlement Class.

## 4. Why is there a settlement?

The Court has not decided in favor of Plaintiffs or Sears/Kmart.  Instead, both sides agreed to a settlement.  Settlements avoid the costs and uncertainty of a trial and related appeals, while providing benefits to members of the Settlement Class.

Settlement Class Representatives and the attorneys for the Settlement Class ("Settlement Class Counsel," see Question 16) think the settlement is best for all Class Members.

**Questions?  Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 3 -

# WHO IS PART OF THE SETTLEMENT?

### 5. What financial entities are part of the settlement?

Financial entities are members of the Class and affected by the settlement if:

- They are a financial institution organized under the laws of the United States or a Territory thereof;
- They issued one or more payment cards that were identified as having been at risk in an Alert issued by Visa or MasterCard as a result of the payment card Data Breach that was publicly disclosed by Sears/Kmart on October 10, 2014; and
- They have not previously released claims against Sears/Kmart with respect to all of their compromised accounts.

### 6. Are there exceptions to being included?

Excluded from the Settlement Class is any Class Member that opts out (*see* Questions 13-15).

### 7. I'm still not sure if my financial entity is included.

If you are still not sure whether your financial entity is included, you can ask for free help. You can call 1-XXX-XXX-XXXX or visit www.XXXXXXXXXXXXXX.com for more information. Or you can fill out and return the claim form described in Question 10, to see if your financial entity qualifies.

# THE SETTLEMENT BENEFITS

### 8. What does the settlement provide?

Sears/Kmart has agreed to pay $5,200,000 pursuant to the settlement (the "Settlement Fund"). Sears/Kmart will transfer the funds directly to a Settlement Fund, out of which the settlement administrator will make payments to eligible Settlement Class Members. The cost of notifying the class and administering the settlement, as well as service awards which may be paid to the class representatives, will also come out of the Settlement Fund. Sears/Kmart has agreed to pay attorneys' fees, costs, and expenses (*see* Question 17).

In addition, Sears/Kmart has agreed to pay $5,923,909.32 to fund MasterCard's Account Data Compromise program relating to the Data Breach, which includes a $125,000 case management fee, and $7,574,497.18 to fund Visa's Global Compromised Account Recovery program relating to the Data Breach.

### 9. How much will each financial institution's payment from the Settlement Fund be?

If an entity is eligible to participate in the settlement (*see* Question 5), and does not "opt out" of this settlement (*see* Questions 13-15), it may elect to file a claim from the Settlement Fund. The Settlement Fund will be divided into two separate Tiers for distribution: Tier 1 ("Non VisaNet Tier") and Tier 2 ("All Class Tier"). They are as follows:

**Tier 1: Non VisaNet Tier**

In Tier 1, only Settlement Class Members who issued Non VisaNet Cards will be eligible to make a claim for each Non VisaNet Compromised Payment Card that they issued and for which they received an Alert related to the Data Breach. Settlement Class Members eligible to submit a claim in Tier 1 must submit documentation consisting of copies of the Data Breach Alerts that they received on their Non VisaNet Cards.

Each Settlement Class Member who makes a valid claim in Tier 1 will be eligible to receive a minimum payout of $1.00 per Non VisaNet Compromised Payment Card up to a maximum payout of $2.38 per card, depending

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 4 -

on the total number of eligible claims made in this Tier. The maximum total payments for Tier 1 claims will be capped at $3.4 million. Any Settlement Funds remaining from Tier 1 (if fewer claims are made than will exhaust Tier 1) will move into Tier 2 and be eligible for distribution to any Settlement Class Member (as described below).

**Tier 2: All Class Tier**

Tier 2 will consist of the remaining Settlement Fund (after accounting for all costs of class notice and settlement administration and service awards to the Named Plaintiffs) minus the payouts in Tier 1. Every Settlement Class Member will be eligible to submit claims for any remaining unreimbursed fraud and card reissuance damages related to the Data Breach by submitting documentation detailing such damages.

For fraud damages, Settlement Class Members must submit documentation consisting of proof of all fraud expenses incurred within the Fraud Window on Compromised Payment Cards. For card reimbursement damages, Settlement Class Members must submit documentation of proof of the actual costs of replacing physical payment cards on Compromised Payment Cards. Any amounts that the Settlement Class Member recovered through the ADC or GCAR Assessment processes or from Tier 1 payouts will be subtracted from the damages claimed in order to determine the Maximum Payout Amount, which will then be distributed to eligible Settlement Class Members based on the claims submitted. If the total valid claims in the Tier 2 Maximum Payout Amount exceed the remaining Settlement Fund in Tier 2, any payouts will be distributed to eligible Settlement Class Members on a pro rata basis.

| 10. What else does the Settlement provide? |
| --- |

Sears/Kmart has agreed to drop its challenge to and pay the final assessment (including any fines and administration costs) relating to the Data Breach that was issued by MasterCard pursuant to its Account Data Compromise ("ADC") program ("the Final MasterCard Assessment") and has withdrawn the appeal it filed pursuant to MasterCard's Security Rules and Procedures manual. The funds received by MasterCard for the Final MasterCard Assessment in the amount of $5,923,909.32 will be distributed pursuant to the ADC program guidelines.

After negotiating in good faith with Visa to reduce the assessment issued by Visa pursuant to its Global Compromised Account Recovery ("GCAR") program relating to the Data Breach ("the Original Visa Assessment"), as part of the Settlement Agreement, Sears/Kmart will waive its appeal and pay the final assessment. The funds received by Visa for the Final Visa Assessment in the amount of $7,574,497.18 will be distributed through the GCAR program guidelines.

In addition, as set forth in the Settlement Agreement, Sears/Kmart agreed to certain injunctive relief.

# HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM

| 11. How can a financial institution get a payment? |
| --- |

To qualify for a payment, each Settlement Class Member must complete and timely submit a valid claim form. There are two types of claim forms in this settlement: (i) Non VisaNet Claim Form (Tier 1) and (ii) All Class Tier Claim Form (Tier 2). To file a claim you need to visit www.XXXXXXXXXXXXX.com and choose which claim form you wish to file.

Once you have selected which claim form to file, read the instructions carefully, include all information and documents the form asks for, sign it, and file it through www.XXXXXXXXXXXXX.com by midnight on **MONTH DAY, 2016**.

| 12. When would a financial institution get its payment? |
| --- |

Payments to Settlement Class Members from the Settlement Fund will be made after the settlement is finally

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 5 -

approved and any appeals or other reviews have been completed. The Court will hold a hearing on **MONTH DAY, 2016** to decide whether to approve the settlement. If the Court approves the settlement, there may be appeals, which could take more than a year to resolve. You may visit www.XXXXXXXXXXXXX.com for updates on the progress of the settlement. Please be patient.

### 13. What is my financial institution giving up to get a payment or remain in the Class?

Unless a Settlement Class Member excludes itself from the settlement, it cannot sue Sears/Kmart or be part of any other lawsuit against Sears/Kmart about the issues this settlement resolves. Unless a Settlement Class Member excludes itself, all of the decisions by the Court will bind it. The specific claims against Sears/Kmart each Class Member is giving up ("releasing") by remaining in the Settlement Class are described in Section 7 of the Settlement Agreement. The Settlement Agreement is available at www.XXXXXXXXXXXXX.com.

The Settlement Agreement describes the released claims in detail, so read it carefully. If you have any questions, you can talk to the law firms listed in Question 16 for free, or you can, of course, talk to your financial entity's legal counsel if you have questions about what this means.

If you want to keep your financial entity's rights to sue or continue to sue Sears/Kmart based on claims this settlement resolves, you must take steps to request exclusion from the Settlement Class (*see* Questions 13-15).

# EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT

### 14. How can my financial institution opt out of the settlement?

To exclude your financial institution from the settlement, or "opt out," you may complete and submit the Request For Exclusion form attached to this notice (the form is also available at www.XXXXXXXXXXXX.com), or, alternatively, send a letter by U.S. Mail that includes:

- The name of this proceeding (*Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228);
- Your financial institution's full name, address, and phone number;
- The words "Request for Exclusion" at the top of the document or a statement in the body of the letter requesting exclusion from the Class; and
- A signature of a person authorized to make such decisions for your financial institution.

Financial institutions that seek exclusion from the settlement through a letter are also asked to provide:

- The number of eligible accounts that the financial institution issued.

You must mail the completed Request for Exclusion form or above-described letter, postmarked no later than **MONTH DAY, 2016**, to:

XXXXXXXXXXXX
P.O. Box XXXX
CITY, ST ZIPCODE

Settlement Class Members who request exclusion from the Class will not get any payment as part of this settlement and cannot object to this settlement. They will not be legally bound by anything that happens in this lawsuit and may be able to sue (or continue to sue) Sears/Kmart in the future.

Either Party shall have the right to terminate the Settlement Agreement if Settlement Class Members who issued a certain percentage of the total number of accounts submit valid requests to opt out as separately agreed to by the Parties.

### 15. If my financial institution doesn't exclude itself, can it sue Sears/Kmart for the same thing later?

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

No. Unless a Settlement Class Member excludes itself, it will give up any right to sue Sears/Kmart for the claims that this settlement resolves. If your financial institution has a pending lawsuit against Sears/Kmart, speak to your legal counsel in that case immediately. You must request exclusion from this Class to bring or to continue a separate lawsuit. Remember, the exclusion deadline is **MONTH DAY, 2016**.

### 16. If my financial institution excludes itself, can it get money from this settlement?

No. If you request exclusion, do not send in a claim form asking for a payment.

# THE LAWYERS REPRESENTING YOU

### 17. Does my financial institution have a lawyer in the case?

Yes. The Court appointed Murray Law Firm, Hausfeld LLP, and Lockridge Grindal Nauen P.L.L.P. as Co-Lead "Settlement Class Counsel" to represent your financial institution and other Class Members. Class Members will not be charged for these lawyers. If your financial institution wants to be represented by its own lawyer, they may hire one at its own expense.

### 18. How will the lawyers be paid?

Settlement Class Counsel will apply to the Court for a reasonable award of attorneys' fees and expenses (the "Fee Request"), which will be separate from the Settlement Fund. Settlement Class Counsel will also seek a ~~combined total of $50,000.00 for service awards which will be paid out of the Settlement Fund~~service award payment of up to $10,000.00, subject to Court approval, for each Settlement Class Representative. Service awards are compensation to Settlement Class Representatives for their efforts in pursuing this lawsuit, producing documents, and providing testimony if necessary on behalf of the Settlement Class, among other contributions.

Settlement Class Counsel will make their requests to the Court for attorneys' fees and costs, as well as service awards, on or before MONTH DAY, 2016. These requests will be available on the settlement website (www.XXXXXXX.com) or you can request a copy by contacting the Settlement Administrator (*see* Question 23).

# OBJECTING TO THE SETTLEMENT

### 19. How does my financial institution tell the Court that it doesn't like the settlement?

If your financial institution is a Settlement Class Member, you can object to the settlement if you don't think it is fair, reasonable, or adequate. You can give reasons why you think the Court should not approve it. The Court will consider your views.

To object, you must send a letter stating that you object to the settlement. Your objection must include:

- A caption that includes the name of the case as follows: *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228;
- The Settlement Class Member's name, address, telephone number, statement that the Settlement Class Member intends to object, and signature;
- Contain the name, address, bar number and telephone number of the objecting Settlement Class Member's counsel, if represented by an attorney;
- Contain the number of class action settlements objected to by the Settlement Class Member in the last three years; and
- State whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing.

If your financial institution hires a lawyer to represent it in preparing a written objection or appearing at the Final

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

- 7 -

Approval Hearing, its counsel must provide additional information as specified in the Preliminary Approval Order (available on the settlement website, www.XXXXXXXXXXX.com).

An objection must be filed with the Northern District of Illinois Clerk of the Court on or before **Month Day, 2016** and must be served on Settlement Class Counsel and counsel for Defendants so that it is received by **Month Day, 2016**. The addresses are listed below.

| Court | Settlement Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court<br>US District Court<br>Northern District of Illinois<br>XXXXXXXXXXX<br>XXXXXXXXXXX | Arthur M. Murray<br>Murray Law Firm<br>650 Poydras Street, Suite 2150<br>New Orleans, LA 70130 | Phyllis B. Sumner<br>S. Stewart Haskins<br>King & Spalding LLP<br>1180 Peachtree Street NE<br>Atlanta, GA 30309 |

## 20. What's the difference between objecting and excluding/opting out?

Objecting is simply telling the Court that you don't like something about the settlement. You can object to the benefits provided by the settlement or other terms of the settlement only if your financial institution stays in the Settlement Class. Requesting exclusion or "opting out" is telling the Court that you don't want your financial institution to be included in the settlement. If you request exclusion, you have no basis to object to the settlement and related releases because the settlement no longer affects your financial institution.

# THE COURT'S FINAL APPROVAL HEARING

## 21. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing at X:XX X.m. on **MONTH DAY, 2016**, in Courtroom XX before Judge John Z. Lee of the United States District Court for the Northern District of Illinois, located at XXXXXXXXXX, CITY, ST ZIPCODE. This hearing date and time may be moved. Please refer to the settlement website (www.XXXXXXXXXXXXX.com) for notice of any changes.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who appear at the hearing (*see* Question 18). The Court may also decide how much Settlement Class Counsel will receive as attorneys' fees and costs and whether to award service payments to Settlement Class Representatives (*see* Question 17). After the Final Approval Hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 22. Does my financial institution or a representative have to attend the hearing?

No. Settlement Class Counsel will answer questions the Court may have. You are welcome, however, to come at your own expense. If you submit a written objection, you do not have to come to the Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. Your financial institution may also pay for its own lawyer(s) to attend, but it is not necessary.

# IF YOU DO NOTHING

## 23. What happens if my financial institution does nothing at all?

Settlement Class Members that do nothing will remain a part of the Settlement Class but will not get any payments from the settlement. And, unless they request exclusion, will not be able to sue Sears/Kmart about the claims being resolved through this settlement ever again.

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

# GETTING MORE INFORMATION

## 24. How do I get more information?

This notice summarizes the settlement. More details are in the Settlement Agreement itself. You can get a copy of the Settlement Agreement at www.XXXXXXXXXXX.com or from the Settlement Administrator by calling toll-free 1-XXX-XXX-XXXX or writing to XXXXXXXXXXXXXX, P.O. Box XXXX, CITY, ST ZIPCODE. The status of the settlement, any appeals, any claims made, and the date of payments will be posted on the settlement website.

***Please do not contact the Court with questions about the settlement.***

**Questions? Call 1-XXX-XXX-XXXX toll free, or visit www.XXXXXXXXXXXXXX.com**

<u>Legal Notice</u>

A copy of this Notice was also sent to you or another representative of your organization via First Class Mail

## Banks, credit unions and other financial institutions that issued payment cards that were compromised in the October 2014 Kmart data breach, could get a payment from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

A settlement of lawsuits against Kmart Corporation ("Kmart") and Sears Holdings Corporation ("Sears") (collectively "Sears/Kmart") has been proposed in which Sears/Kmart has agreed to pay (as described below) to resolve claims brought by financial institutions relating to the payment card data breach announced by Sears/Kmart in October 2014 (the "Data Breach"), less any adjustments described herein.

The lawsuit, called *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228, alleges violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols.

The settlement includes $5,200,000 that Sears/Kmart will pay to the Settlement Fund that will be used to pay all costs of class notice and settlement administration, service awards to the Named Plaintiffs, and the claims of eligible Settlement Class members. In addition, Sears/Kmart agreed to waive its appeal rights concerning and to pay the final Visa and MasterCard assessments.

Your entity's legal rights are affected whether you act or don't act. Read this notice carefully.

## SUMMARY OF LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

**Submit a Claim Form.** The only way to get a payment from the Settlement Fund.

**Request Exclusion.** Get no payment from the Settlement Fund. This is the only option that may allow a Class Member to sue Sears/Kmart over the claims being resolved by this settlement.

**Object.** Write to the Court with concerns about the settlement.

**Go To A Hearing.** Ask to speak in Court about the fairness of the settlement.

**Do Nothing.** Get no payment from the Settlement Fund and give up rights to ever be part of any other lawsuit against Sears/Kmart about the claims being resolved in this settlement.

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

## BASIC INFORMATION

### 1. Why did I get this notice package?

The financial institution sent this notice may have issued payment cards included in one or more of the alerts sent out by Visa and MasterCard relative to the Data Breach.

The Court authorized this notice because you have a right to know about a proposed settlement of a class action lawsuit against Sears/Kmart and about all of the options before the Court decides whether to approve the settlement. If the Court approves the settlement and after objections and appeals are resolved, a settlement administrator appointed by the Court, as well as Visa and MasterCard, will distribute the funds pursuant to the terms of the settlement.

This package explains the lawsuit, the settlement, your entity's legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Northern District of Illinois, and the case is known as *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228. The financial institutions who sued are called "Plaintiffs," and the companies they sued, Sears and Kmart, are the "Defendants."

### 2. What is this lawsuit about?

On October 10, 2014, Sears/Kmart announced that on the prior day, October 9, 2014, Sears/Kmart's Information Technology team detected a criminal intrusion into Kmart's payment data systems, resulting in the potential compromise of payment card information. Plaintiffs have alleged common law claims and violations of state consumer fraud statutes based on Sears/Kmart's allegedly inadequate security protocols. The lawsuits seek damages for the costs that Plaintiffs claim were incurred by financial institutions as a result of the Data Breach, such as card reissuance costs, amounts paid to cover fraud losses and other costs incurred on eligible accounts in responding to the Data Breach.

Sears/Kmart denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing.

### 3. Why is this a class action?

In a class action, one or more entities called "Class Representatives" sue on behalf of themselves and other entities with similar claims. All of these entities together are the "Class" or "Class Members." If the Court certifies the class, as it has done here for settlement purposes, one court resolves the issues for all class members, except for those who exclude themselves from the Settlement Class.

### 4. Why is there a settlement?

The Court has not decided in favor of Plaintiffs or Sears/Kmart. Instead, both sides agreed to a settlement. Settlements avoid the costs and uncertainty of a trial and related appeals, while providing benefits to members of the Settlement Class.

Settlement Class Representatives and the attorneys for the Settlement Class ("Settlement Class Counsel," see Question 17) think the settlement is best for all Class Members.

## WHO IS PART OF THE SETTLEMENT?

### 5. What financial entities are part of the settlement?

Financial entities are members of the Class and affected by the settlement if:

- They are a financial institution organized under the laws of the United States or a Territory thereof;
- They issued one or more payment cards that were identified as having been at risk in an Alert

- 2 -

issued by Visa or MasterCard as a result of the payment card Data Breach that was publicly disclosed by Sears/Kmart on October 10, 2014; and

- They have not previously released claims against Sears/Kmart with respect to all of their compromised accounts.

## 6.  Are there exceptions to being included?

Excluded from the Settlement Class is any Class Member that opts out (*see* Questions 14-16).

## 7.  I'm still not sure if my financial entity is included.

If you are still not sure whether your financial entity is included, you can ask for free help.  You can call 1-XXX-XXX-XXXX or visit www.XXXXXXXXXXXXXX.com for more information.  Or you can fill out and return the claim form described in Question 11, to see if your financial entity qualifies.

# THE SETTLEMENT BENEFITS

## 8.  What does the settlement provide?

Sears/Kmart has agreed to pay $5,200,000 pursuant to the settlement (the "Settlement Fund").  Sears/Kmart will transfer the funds directly to a Settlement Fund, out of which the settlement administrator will make payments to eligible Settlement Class Members.  The cost of notifying the class and administering the settlement, as well as service awards which may be paid to the class representatives, will also come out of the Settlement Fund.  Sears/Kmart has agreed to pay attorneys' fees, costs, and expenses (*see* Question 18).

In addition, Sears/Kmart has agreed to pay $5,923,909.32 to fund MasterCard's Account Data Compromise program relating to the Data Breach, which includes a $125,000 case management fee, and $7,574,497.18 to fund Visa's Global Compromised Account Recovery program relating to the Data Breach.

## 9.  How much will each financial institution's payment from the Settlement Fund be?

If an entity is eligible to participate in the settlement (*see* Question 5), and does not "opt out" of this settlement (*see* Questions 14-16), it may elect to file a claim from the Settlement Fund.  The Settlement Fund will be divided into two separate Tiers for distribution: Tier 1 ("Non VisaNet Tier") and Tier 2 ("All Class Tier").  They are as follows:

**Tier 1: Non VisaNet Tier**

In Tier 1, only Settlement Class Members who issued Non VisaNet Cards will be eligible to make a claim for each Non VisaNet Compromised Payment Card that they issued and for which they received an Alert related to the Data Breach.  Settlement Class Members eligible to submit a claim in Tier 1 must submit documentation consisting of copies of the Data Breach Alerts that they received on their Non VisaNet Cards.

Each Settlement Class Member who makes a valid claim in Tier 1 will be eligible to receive a minimum payout of $1.00 per Non VisaNet Compromised Payment Card up to a maximum payout of $2.38 per card, depending on the total number of eligible claims made in this Tier.  The maximum total payments for Tier 1 will be capped at $3.4 million.  Any Settlement Funds remaining from Tier 1 (if fewer claims are made than will exhaust Tier 1) will move into Tier 2 and be eligible for distribution to any Settlement Class Member (as described below).

**Tier 2: All Class Tier**

Tier 2 will consist of the remaining Settlement Fund (after accounting for all costs of class notice and settlement administration and service awards to the Named Plaintiffs) minus the payouts in Tier 1.  Every Settlement Class Member will be eligible to submit claims for any remaining unreimbursed fraud and card reissuance damages related to the Data Breach by submitting documentation detailing such damages.

For fraud damages, Settlement Class Members must submit documentation consisting of proof of all fraud

expenses incurred within the Fraud Window on Compromised Payment Cards. For card reimbursement damages, Settlement Class Members must submit documentation of proof of the actual costs of replacing physical payment cards on Compromised Payment Cards. Any amounts that the Settlement Class Member recovered through the ADC or GCAR Assessment processes or from Tier 1 payouts will be subtracted from the damages claimed in order to determine the Maximum Payout Amount, which will then be distributed to eligible Settlement Class Members based on the claims submitted. If the total valid claims in the Tier 2 Maximum Payout Amount exceed the remaining Settlement Fund in Tier 2, any payouts will be distributed to eligible Settlement Class Members on a pro rata basis.

## 10. What else does the settlement provide?

Sears/Kmart has agreed to drop its challenge to and pay the final assessment (including any fines and administration costs) relating to the Data Breach that was issued by MasterCard pursuant to its Account Data Compromise ("ADC") program ("the Final MasterCard Assessment") and has withdrawn the appeal it filed pursuant to MasterCard's Security Rules and Procedures manual. The funds received by MasterCard for the Final MasterCard Assessment in the amount of $5,923,909.32 will be distributed pursuant to the ADC program guidelines.

After negotiating in good faith with Visa to reduce the assessment issued by Visa pursuant to its Global Compromised Account Recovery ("GCAR") program relating to the Data Breach ("the Original Visa Assessment"), as part of the Settlement Agreement, Kmart will waive its appeal and pay the final assessment. The funds received by Visa for the Final Visa Assessment in the amount of $7,574,497.18 will be distributed through the GCAR program guidelines.

In addition, as set forth in the Settlement Agreement, Sears/Kmart agreed to certain injunctive relief.

# HOW TO GET A PAYMENT—SUBMITTING A CLAIM FORM

## 11. How can a financial institution get a payment?

To qualify for a payment, each Settlement Class Member must complete and timely submit a valid claim form. There are two types of claim forms in this settlement: (i) Non VisaNet Claim Form (Tier 1) and (ii) All Class Tier Claim Form (Tier 2). To file a claim you need to visit www.XXXXXXXXXXXXX.com and choose which claim form you wish to file.

Once you have selected which claim form to file, read the instructions carefully, include all information and documents the form asks for, sign it, and file it through www.XXXXXXXXXXXXX.com by midnight on **MONTH DAY, 2016**.

## 12. When would a financial institution get its payment?

Payments to Settlement Class Members from the Settlement Fund will be made after the settlement is finally approved and any appeals or other reviews have been completed. The Court will hold a hearing on **MONTH DAY, 2016** to decide whether to approve the settlement. If the Court approves the settlement, there may be appeals, which could take more than a year to resolve. You may visit www.XXXXXXXXXXXXX.com for updates on the progress of the settlement. Please be patient.

## 13. What is my financial institution giving up to get a payment or remain in the Class?

Unless a Settlement Class Member excludes itself from the settlement, it cannot sue Sears/Kmart or be part of any other lawsuit against Sears/Kmart about the issues this settlement resolves. Unless a Settlement Class Member excludes itself, all of the decisions by the Court will bind it. The specific claims against Sears/Kmart each Class Member is giving up ("releasing") by remaining in the Settlement Class are described in Section 7 of the Settlement Agreement. The Settlement Agreement is available at www.XXXXXXXXXXXXX.com.

The Settlement Agreement describes the released claims in detail, so read it carefully. If you have any

questions, you can talk to the law firms listed in Question 17 for free, or you can, of course, talk to your financial entity's legal counsel if you have questions about what this means.

If you want to keep your financial entity's rights to sue or continue to sue Sears/Kmart based on claims this settlement resolves, you must take steps to request exclusion from the Settlement Class (*see* Questions 14-16).

## EXCLUDING YOUR FINANCIAL INSTITUTION FROM THE SETTLEMENT

### 14. How can my financial institution opt out of the settlement?

To exclude your financial institution from the settlement, or "opt out," you may complete and submit the Request For Exclusion form attached to this notice (the form is also available at www.XXXXXXXXXXX.com), or, alternatively, send a letter by U.S. Mail that includes:

- The name of this proceeding (*Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228);
- Your financial institution's full name, address, and phone number;
- The words "Request for Exclusion" at the top of the document or a statement in the body of the letter requesting exclusion from the Class; and
- A signature of a person authorized to make such decisions for your financial institution.

Financial institutions that seek exclusion from the settlement through a letter are also asked to provide:

- The number of eligible accounts that the financial institution issued.

You must mail the completed Request for Exclusion form or above-described letter, postmarked no later than **MONTH DAY, 2016**, to:

XXXXXXXXXXXX
P.O. Box XXXX
CITY, ST ZIPCODE

Settlement Class Members who request exclusion from the Class will not get any payment as part of this settlement and cannot object to this settlement. They will not be legally bound by anything that happens in this lawsuit and may be able to sue (or continue to sue) Sears/Kmart in the future.

Either Party shall have the right to terminate the Settlement Agreement if Settlement Class Members who issued a certain percentage of the total number of accounts submit valid requests to opt out as separately agreed to by the Parties.

### 15. If my financial institution doesn't exclude itself, can it sue Sears/Kmart for the same thing later?

No. Unless a Settlement Class Member excludes itself, it will give up any right to sue Sears/Kmart for the claims that this settlement resolves. If your financial institution has a pending lawsuit against Sears/Kmart, speak to your legal counsel in that case immediately. You must request exclusion from this Class to bring or to continue a separate lawsuit. Remember, the exclusion deadline is **MONTH DAY, 2016**.

### 16. If my financial institution excludes itself, can it get money from this settlement?

No. If you request exclusion, do not send in a claim form asking for a payment.

## THE LAWYERS REPRESENTING YOU

### 17. Does my financial institution have a lawyer in the case?

Yes. The Court appointed Murray Law Firm, Hausfeld LLP, and Lockridge Grindal Nauen P.L.L.P. as Co-Lead "Settlement Class Counsel" to represent your financial institution and other Class Members. Class Members will not be charged for these lawyers. If your financial institution wants to be represented by its own lawyer, they may hire one at its own expense.

## 18. How will the lawyers be paid?

Settlement Class Counsel will apply to the Court for a reasonable award of attorneys' fees and expenses (the "Fee Request"), which will be separate from the Settlement Fund. Settlement Class Counsel will also seek a service award payment of up to $10,000.00, subject to Court approval, for each Settlement Class Representative combined total of $50,000.00 for service awards which will be paid out of the Settlement Fund. Service awards are compensation to Settlement Class Representatives for their efforts in pursuing this lawsuit, producing documents, and providing testimony if necessary on behalf of the Settlement Class, among other contributions.

Settlement Class Counsel will make their requests to the Court for attorneys' fees and costs, as well as service awards, on or before MONTH DAY, 2016. These requests will be available on the settlement website (www.XXXXXXX.com) or you can request a copy by contacting the Settlement Administrator (*see* Question 24).

# OBJECTING TO THE SETTLEMENT

## 19. How does my financial institution tell the Court that it doesn't like the settlement?

If your financial institution is a Settlement Class Member, you can object to the settlement if you don't think it is fair, reasonable, or adequate. You can give reasons why you think the Court should not approve it. The Court will consider your views.

To object, you must send a letter stating that you object to the settlement. Your objection must include:

- A caption that includes the name of the case as follows: *Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union v. Kmart Corp. and Sears Holdings Corp.*, Case No. 1:15-cv-02228;
- The Settlement Class Member's name, address, telephone number, statement that the Settlement Class Member intends to object, and signature;
- Contain the name, address, bar number and telephone number of the objecting Settlement Class Member's counsel, if represented by an attorney;
- Contain the number of class action settlements objected to by the Settlement Class Member in the last three years; and
- State whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing.

If your financial institution hires a lawyer to represent it in preparing a written objection or appearing at the Final Approval Hearing, its counsel must provide additional information as specified in the Preliminary Approval Order (available on the settlement website, www.XXXXXXXXXXX.com).

An objection must be filed with the Northern District of Illinois Clerk of the Court on or before **Month Day, 2016** and must be served on Settlement Class Counsel and counsel for Defendants so that it is received by **Month Day, 2016**. The addresses are listed below.

**Court**
Clerk of the Court
US District Court
Northern District of Illinois
XXXXXXXXXXX
XXXXXXXXXXX

**Settlement Class Counsel**

Arthur M. Murray
Murray Law Firm
650 Poydras Street, Suite 2150
New Orleans, LA 70130

**Defense Counsel**
Phyllis B. Sumner
S. Stewart Haskins
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, GA 30309

20. What's the difference between objecting and excluding/opting out?

Objecting is simply telling the Court that you don't like something about the settlement. You can object to the benefits provided by the settlement or other terms of the settlement only if your financial institution stays in the Settlement Class. Requesting exclusion or "opting out" is telling the Court that you don't want your financial institution to be included in the settlement. If you request exclusion, you have no basis to object to the settlement and related releases because the settlement no longer affects your financial institution.

## THE COURT'S FINAL APPROVAL HEARING

21. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing at X:XX X.m. on **MONTH DAY, 2016**, in Courtroom XX before Judge John Z. Lee of the United States District Court for the Northern District of Illinois, located at XXXXXXXXXX, CITY, ST ZIPCODE. This hearing date and time may be moved. Please refer to the settlement website (www.XXXXXXXXXXXX.com) for notice of any changes.

At the Final Approval Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who appear at the hearing (*see* Question 19). The Court may also decide how much Settlement Class Counsel will receive as attorneys' fees and costs and whether to award service payments to Settlement Class Representatives (*see* Question 18). After the Final Approval Hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

22. Does my financial institution or a representative have to attend the hearing?

No. Settlement Class Counsel will answer questions the Court may have. You are welcome, however, to come at your own expense. If you submit a written objection, you do not have to come to the Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. Your financial institution may also pay for its own lawyer(s) to attend, but it is not necessary.

## IF YOU DO NOTHING

23. What happens if my financial institution does nothing at all?

Settlement Class Members that do nothing will remain a part of the Settlement Class but will not get any payments from the settlement. And, unless they request exclusion, will not be able to sue Sears/Kmart about the claims being resolved through this settlement ever again.

## GETTING MORE INFORMATION

24. How do I get more information?

This notice summarizes the settlement. More details are in the Settlement Agreement itself. You can get a copy of the Settlement Agreement at www.XXXXXXXXXXX.com or from the Settlement Administrator

by calling toll-free 1-XXX-XXX-XXXX or writing to XXXXXXXXXXXXXX, P.O. Box XXXX, CITY, ST ZIPCODE. The status of the settlement, any appeals, any claims made, and the date of payments will be posted on the settlement website.

***Please do not contact the Court with questions about the settlement.***

SOURCE: United States District Court for the Northern District of Illinois