**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| GREATER CHAUTAUQUA FEDERAL CREDIT UNION, FIRST CHOICE FEDERAL CREDIT UNION, GULF COAST BANK & TRUST COMPANY, GOVERNMENTAL EMPLOYEES CREDIT UNION, and OTEEN V.A. FEDERAL CREDIT UNION, individually and on behalf of a class of similarly situated financial institutions, | : Case No: 1:15-cv-02228<br><br>: Hon. John Z. Lee |
| Plaintiffs, | |
| v. | |
| KMART CORPORATION and SEARS HOLDINGS CORPORATION, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,**
**COSTS, AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.  LEGAL ARGUMENT .................................................................................................. 4

    A.  The Proposed Attorneys' Fees Award is Justified ................................................. 4

    B.  The Requested Fee is Reasonable Under the Percentage of the Class Benefit
        Approach ................................................................................................................. 5

        1.  Attorneys' Fees Awards in Other Class Action Cases ................................. 10

        2.  Agreement Between Plaintiffs and Their Counsel ....................................... 11

        3.  The Risk of Nonpayment .............................................................................. 12

        4.  The Quality of Class Counsel's Performance ............................................... 12

        5.  The Amount of Work Necessary To Resolve this Litigation ...................... 15

        6.  The Stakes of this Litigation ....................................................................... 15

    C.  The Requested Award For Attorneys' Fees is Reasonable Under the
        Lodestar Method ................................................................................................... 16

    D.  Plaintiffs' Costs Are Reasonable and Were Necessary to Prosecute the Litigation .......... 18

    E.  Incentive Awards for the Five Settlement Class Representatives are Appropriate .......... 20

III. CONCLUSION ........................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  No. 06-CV-701-MJR-DGW, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ............................ 19

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................................... 16

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ..................................................................................................... 4

*City of Greenville v. Syngenta Crop Prot., Inc.*,
  904 F. Supp. 2d 902 (S.D. Ill. 2012) ................................................................... 16, 19

*City of Greenville v. Syngenta Crop Prot., Inc.*,
  No. 3:10-cv-00188-JPG-PMF, 2012 U.S. Dist. LEXIS 151819
  (S.D. Ill. Oct. 23, 2012) .............................................................................................. 16

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ............................................................................ 16-17, 20

*Florin v. Nationsbank, N.A.*,
  34 F.3d 560 (7th Cir. 1994) .......................................................................................... 5

*Gaines v. Sears, Roebuck & Co.*,
  No. 76-C-310; No. 76-C-739; No. 75-C-4026, 1980 U.S. Dist. LEXIS 11158
  (N.D. Ill. Apr. 9, 1980) ................................................................................................. 5

*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998) ...................................................................................... 11

*Goldberger v. Integrated Res.*,
  209 F.3d 43 (2d Cir. 2000) .......................................................................................... 12

*Goldsmith v. Technology Solutions Co.*,
  No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) .............................. 11

*Hall v. Cole*,
  412 U.S. 1 (1973) ......................................................................................................... 4

*In re Abbott Labs. Secs. Litig.*,
  1995 WL 792083 (N.D. Ill. July 3, 1995) ..................................................................... 18

*In re Cont'l Illinois Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ........................................................................................ 5

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) .............................................................................. 18

*In re King Res. Co.Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976) ......................................................... 14

*In re Sw. Airlines Voucher Litig.*,
  No. 11 C 8176, 2013 U.S. Dist. LEXIS 143146 (N.D. Ill. Oct. 3, 2013) ............................... 20

*In re Sw. Airlines Voucher Litig.*,
  No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ................................ 20

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ......................................................... 10, 11

*In re Transunion Corp. Priv. Litig.*,
  629 F.3d 741 (7th Cir. 2011) ......................................................... 12

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) ......................................................... 14

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981) ......................................................... 12

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ......................................................... 10, 11

*Kurgan v. Chiro One Wellness Ctrs., L.L.C.*,
  No. 11-cv-4723, 2015 U.S. Dist. LEXIS 52006 (N.D. Ill. Apr. 21, 2015) ............................... 19

*Langendorf v. Conseco Senior Health Ins. Co.*,
  No. CIVIL ACTION NO. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289
  (N.D. Ill. Nov. 18, 2009) ......................................................... 5, 16

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ......................................................... 4

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ......................................................... 16

*Redman v. Radioshack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ......................................................... 4, 9-10

*Reid v. Unilever U.S., Inc.*,
  No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015) ........................ 5, 19

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................... 16

*Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
  No. 06 C 7023, 2016 WL 4765679 (N.D. Ill. Sept. 13, 2016) ................................ 19

*Skelton v. Gen. Motors Corp.*,
  860 F.2d 250 (7th Cir. 1988) ......................................................... 16

*Spano v. Boeing Co.*,
   No. 06-CV-743-NJR-DGW, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................... 18

*Standard Iron Works v. ArcelorMittal*,
   No. 08 C 5214, 2014 U.S. Dist. LEXIS 162557 (N.D. Ill. Oct. 22, 2014) ...................... 17-18

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) ................................................................................................. 4

*Taubenfeld v. Aon Corp.*,
   415 F.3d 597 (7th Cir. 2005) ............................................................................................... 10

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
   No. Cause No: 02-CV-1109-DRH, 2004 U.S. Dist. LEXIS 6363
   (S.D. Ill. Mar. 19, 2004) ...................................................................................................... 11

*White v. Employee Ret. Plan of Amoco Corp.*,
   No. 96 C 4298, 2001 U.S. Dist. LEXIS 16380 (N.D. Ill. Oct. 9, 2001) ................................ 18

*Will v. Gen. Dynamics Corp.*,
   No. CIVIL NO. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349
   (S.D. Ill. Nov. 22, 2010) ...................................................................................................... 18

624544.1

## I.      PRELIMINARY STATEMENT

Plaintiffs Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union ("Plaintiffs"), by their undersigned Class Counsel, respectfully submit this memorandum in support their Motion for Attorneys' Fees, Costs, and Expenses requesting a fee award of $1,733,333.00, and reimbursement of reasonable costs and expenses of $88,233.76, plus up to $5,000 in future reasonable costs and expenses.  Class Counsel also seeks a $10,000 incentive award for each Settlement Class Representative.

Plaintiffs brought this class action on behalf of banks, credit unions, and other financial institutions injured as a result of a security breach at Kmart that began in or around early September of 2014 and continued until October of 2014.  As a result of the breach, Plaintiffs alleged that the confidential financial and personal identifying information of Kmart's customers, including credit and debit card numbers, card expiration dates, card verification values, and other information belonging to customers of Kmart's retail stores (collectively, "PII"), was compromised.  Plaintiffs allege that Kmart failed to adequately secure its customers' PII on its data systems, ignored numerous clear warnings that its data systems were outdated and vulnerable to attack, and failed to take recommended actions that could have thwarted the breach.  As a result of Kmart's actions, Plaintiffs further contend that they incurred damages related to replacing customers' credit and debit cards, as well as covering costs associated with fraudulent activity which occurred on customers' cards as a result of the breach.

At the beginning of this case, Class Counsel led a comprehensive investigation that included consultation with class members, interviews with former employees and industry experts, an analysis of Kmart's Motion to Dismiss, and a review of documents and information provided by Kmart.  The parties then entered into settlement negotiations with Kmart, which

1

624544.1

spanned seven (7) months and included three (3) separate in-person mediation sessions in front of former Northern District of Illinois Judge Wayne Andersen, now with Judicial Arbitration and Mediation Services (JAMS), as well as numerous teleconferences. The negotiations were conducted at arm's-length and produced favorable results for the Plaintiff Class, especially given Sears/Kmart's tenuous financial condition. After reaching the Settlement, Plaintiffs also participated in three preliminary approval hearings in front of the Court, the first two of which resulted in changes to the Settlement, as well as efforts to negotiate protective orders and subpoenas with Visa and MasterCard in order to gather information to effectively administer the Settlement. *See* Declaration of Arthur M. Murray ("Murray Decl.") ¶ 6.

Assuming the Settlement is finally approved, it will result in Kmart paying the full value of card brand assessments (which Kmart agreed not to contest or appeal, valued at over $13.3 million – approximately $6.6 million of which can be directly attributed to Class Counsel's efforts) and a $5,081,000 Settlement Fund that will be fully distributed to eligible Settlement Class members ($5.2 million before deductions for claims administration and proposed incentive awards). In addition, the Settlement Agreement obligates Kmart to undergo several changes in practices related to its data security. Thus, while the overall value of the settlement may be difficult to calculate with precision given the significant injunctive component, Plaintiffs estimate that the minimum *monetary* value to the class alone (without attorneys' fees and without valuing the injunctive relief) can conservatively be calculated at $11.68 million. Including the full value of the assessments, class members will be awarded over $18 million here.

Class Counsel have litigated this matter on a fully contingent basis and have funded the litigation expenses and costs at great risk to themselves while also losing the opportunity to work on other matters. Class Counsel have vigorously prosecuted this action since its inception and succeeded in obtaining a meaningful recovery for Settlement Class members and now seek to be

2

compensated for their efforts. Class Counsel should be fairly reimbursed for their efforts in recognition of the substantial benefits they achieved in this litigation as well as the contingent nature of the litigation, the skill with which Class Counsel litigated the action, and the fees typically awarded by courts across the country in similar litigation.

The Settlement Agreement provides a meaningful recovery of substantial value for Settlement Class members and, under Seventh Circuit law, using a percentage of the recovery approach, Plaintiffs would generally be entitled to fees of one third of the value of that relief (*e.g.*, if applied to the total $11.68 monetary value of the settlement, the case law would suggest an award of $3.85 million would be appropriate). Nevertheless, to avoid further burdening the Court and the parties with a contested fee motion, Plaintiffs agreed to arbitrate a fee (subject, of course, to this Court's approval) with Judge Andersen. Kmart agreed to pay between $875,000 and $2,275,000 in attorneys' fees (on top of the settlement relief as opposed to having fees deplete the fund available to class members) and up to $100,000 in expenses. Plaintiffs and Kmart agreed not to contest the fee amount that Judge Andersen determined would be fair and reasonable and, after briefing by the parties, he determined a fee of $1,733,333 would be appropriate here.

In considering the value of $5.08 million settlement fund alone and adding the proposed fees, the total value of the fund here would be $6.81 million. Plaintiffs' requested fees would equate to 25% of this amount. Including the additional value to the assessment amounts that can reasonably be attributed to Plaintiffs' efforts, the Settlement would be valued at $13.41 million and Plaintiffs' requested fees would equate to only 13% of the fund. Moreover, if the requested fee is reviewed under the lodestar cross-check, a $1,733,333.00 fee is clearly warranted as it

3

represents a *negative* multiplier on Class Counsel's current lodestar of $1,745,273.83.[1]  Plaintiffs thus respectfully request that the Court approve Judge Andersen's award of $1,733,333.00 in attorneys' fees, along with reasonable costs and expenses of up to $93,233.76 (including $88,233.76 in costs already incurred and up to $5,000 in projected future costs), and incentive awards in the amount of $10,000 per Settlement Class Representative.[2]

## II.    LEGAL ARGUMENT

### A.    The Proposed Attorneys' Fee Award is Justified

In order to prevent unjust enrichment, federal courts have long recognized the power to award attorneys' fees when "successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *Hall v. Cole*, 412 U.S. 1, 4 (1973), quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (citation and quotations omitted).

The value of the Settlement is what should guide the fee award in this case.  *See Redman v. Radioshack*, 768 F.3d 622, 633 (7th Cir. 2014) ("We have emphasized that in determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation.").  Under Seventh Circuit standards, a District Court may

---

[1] This lodestar is current as of October 3, 2016, when it was provided to Judge Andersen for fee arbitration. Thus it is an underestimate of current lodestar through the date of this filing.  Further, based on Counsel's experience in handling claims administration issues in similar settlements, and given that there will be final approval briefing and a hearing, Counsel anticipate expending another $25,000 - $50,000 in lodestar before this case is finally concluded resulting in an even larger negative multiplier.

[2] Importantly, regardless of what fee this Court awards, it will not impact the monetary and injunctive relief being paid to the class; rather, any portion of the requested fee that is not awarded will simply be retained by Kmart.

4

award attorneys' fees under either the "lodestar" method or the "percentage-of-the-benefit" method. *Florin v. NationsBank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) ("*Florin I*"). The percentage method has certain advantages, *see In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting that it is easier to establish marketplace contingency fee percentages "than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth"), though courts may use the lodestar method in cases where, for example, a settlement mainly provides significant equitable or injunctive relief that may be difficult to value. *See Langendorf v. Conseco Senior Health Ins. Co.*, No. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289, *30 (N.D. Ill. Nov. 18, 2009); *see also Gaines v. Sears, Roebuck & Co.*, No. 76-C-310, 1980 U.S. Dist. LEXIS 11158, at *8 (N.D. Ill. Apr. 9, 1980) ("[T]he benefit obtained for the class must still be a major factor in determining the maximum limit on fees."). And when evaluating fees on a lodestar basis as opposed to a percentage basis, a reasonable multiplier is often provided to compensate counsel for their risk and success. *See Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383, *8-9 (N.D. Ill. June 10, 2015) ("The court may increase the award by applying a 'multiplier' to the lodestar amount if satisfied that a multiplier is appropriate under the circumstances.").

### B.    The Requested Fee is Reasonable Under the Percentage of the Class Benefit Approach

The settlement here has four basic components: (1) a $5.2 million cash settlement fund; (2) a full payment of the MasterCard assessment; (3) a full payment of the Visa assessment; and (4) significant injunctive relief. In considering any of those components alone, the requested fee can likely be supported; in considering them together, the requested fee is more than reasonable.

First, Class Counsel have created a direct and tangible benefit for the Settlement Class by securing a $5.2 million cash payment from Kmart into a separate Settlement Fund for distribution to Settlement Class members following a claims administration process. There can

be no dispute about the value of this fund, or Class Counsel's role in its creation, as it will be fully distributed to class members (after claims administration and incentive awards) regardless of how many make claims and none of it will revert to Kmart. Even if there were no other aspect to the Settlement and Plaintiffs' fees were coming solely out of this fund (which they are not, they are being paid *in addition*, to the fund), Plaintiffs' requested fees would equate to 1/3 of this amount, which is still well within the range of similar fee decisions. Since Kmart has agreed to pay any fee awarded here on top of the Settlement relief, however, the fees and fund should be added together in calculating a total value and in order to determine what constitutes an appropriate percentage. In other words, the overall cash Settlement value here with a $1,733,333.00 fee award (and in considering the $5,200,000 fund alone) would actually be worth $6,933,333.00. In removing claims administration expenses and proposed incentive awards, the value of the Settlement and fees would be $6,801,333.00. Thus, the Plaintiffs' requested fee award of $1,733,333.00 represents only 25% of the value of the Settlement when considering the Fund alone and no other aspects of the Settlement (where, as discussed below, 33% or more is the norm in this Circuit for fees).

For the purposes of this Court's fee determination, however, there are other aspects to the Settlement that also provide significant value to the Class and which should be taken into account in determining the appropriateness of any fee award, making Plaintiffs' requested fee much less than even 25% of the settlement.

In addition to the $5.2 million fund, as part of the Settlement here, Kmart has agreed not to contest and to cease its appeals of the MasterCard ADC assessment. MasterCard found that there were approximately 2.43 million credit cards that would be subject to its assessment process at an average amount of $2.38 per card (for a total assessment of $5,798,909).[3] Kmart

---

[3] MasterCard also charged Kmart a $125,000 case management fee.

vehemently disputed this amount and argued instead that the assessment should be reduced by almost half (to $2.931 million) because: (1) the PCI assessor found that not all credit cards processed during the relevant time period were exposed to fraud; (2) there should have been a higher deductible to the fraud recovery; (3) there were more accounts associated with previous alerts than MasterCard acknowledged; and (4) Kmart promptly discovered and remediated the malware at issue. There is no data publicly available about the amounts MasterCard typically assesses and whether assessment appeals in similar data breach cases were successful, but assuming Kmart's appeal would have resulted in the lesser amount (and Kmart certainly expended a great deal of resources arguing that it should), Plaintiffs created another benefit to the Class of $2,867,902 in convincing Kmart to drop its ADC challenge as part of the resolution of this case. This provision enabled additional monies to flow to Class Members.

Similar to MasterCard, under its GCAR assessment program, Visa assessed Kmart for $7,574,497 (or approximately $3.58 per card on 2.115 million cards) as a result of the data breach. As part of the Settlement here, Kmart agreed not to challenge this assessment. While Kmart did not have a chance to appeal the Visa determination before this case settled, Kmart informed Class Counsel that it was planning to contest the Visa assessment and presumably Kmart would have made the same or similar arguments as it made to MasterCard in challenging Visa's even higher assessment. Assuming that Kmart would have argued for a reduction similar to that which it sought from MasterCard's assessment – *e.g.*, 49.4% (an assumption that is conservative given Visa's much higher average assessment per card – $3.58 vs. $2.38) – Kmart likely would have sought to pay at most $3,832,696. Thus, if Kmart had been successful in its challenge to Visa's assessment, Settlement Class members would have received $3,741,801 *less* in the Visa assessment program. This translates into another significant value to the Settlement Class created by Class Counsel's efforts.

7

Finally, Kmart has agreed to implement numerous data security measures for a minimum of three years that are designed to ensure that a similar breach does not occur again. These efforts include: (1) appointment of an executive with responsibility for protecting cardholder data; (2) obtaining annual risk assessments of its compliance with PCI-DSS standards; (3) developing safeguards such as two-factor authentication with vendors; (4) educating employees about information security; and (5) enhancing security measures such as the implementation of EMV chip card technology at retail stores. Other courts in data breach cases have noted the value to class members of similar data protection measures in evaluating settlements. *See, e.g., In re: The Home Depot, Inc., Customer Data Security Breach Litigation*, Case No.: 1:14-md-02583-TWT, Order Granting Final Approval of Class Action Settlement and Final Judgment, at pp. 10-11 (Dkt. 260) (N.D. Ga., Aug. 23, 2016) ("The Court finds that the injunctive components of the Settlement are of valuable benefit to the Class and especially important in the context of this case because Home Depot is bound for a period of two years following execution of the Settlement Agreement to implement and maintain enhanced security measures designed to detect and prevent this type of harm from occurring again."); *In re: Target Corporation Customer Data Security Breach Litigation*, MDL No. 14-2522 (PAM/JJK), Memorandum and Order, at 2 (Dkt. 645) (D. Minn., November 17, 2015) (granting final approval to consumer data breach settlement noting that "[t]he settlement also requires Target to improve its data security practices in significant ways."). The injunctive relief provided here is similarly valuable, but admittedly difficult to quantify. For the purposes of this fee award, Plaintiffs do not believe it is necessary to attempt to quantify the value of this relief, however, since the fees can be supported by examining the value of the Fund alone.

In adding all of the various *monetary* components of this Settlement for the purposes of determining an overall value to the Settlement Class (without including fees), a conservative

estimate puts the Settlement value at approximately $11.68 million.  This estimate is especially conservative because it does not include the value of the substantial injunctive relief achieved. The monetary Settlement components and values are outlined below:

| Settlement Component | Value to the Class |
|---|---|
| (1) Settlement Fund (minus claims administration, notice, and incentive awards) | $5,068,000 |
| (2) Drop Challenge to MasterCard Assessment | $2,867,902 |
| (3) Drop Challenge to Visa Assessment | $3,741,801 |
| **Total Monetary Benefit (not including fees or injunctive relief)** | **$11,677,703** |

A review of the fee under the percentage of the fund method supports the reasonableness of Class Counsel's fee request as the Settlement makes significant monetary benefits (as well as non-monetary injunctive relief) available to Settlement Class Members.  While the Settlement cannot make all Settlement Class Members completely whole for the alleged harms they suffered, the Settlement does provide for significant cash payments to be distributed directly to Class Members.  Payments from the Settlement Fund to Settlement Class Members are structured such that they will be fairly distributed based on participation (or lack thereof) in the assessment process, while also taking into account amounts Class Members will receive from the assessment process.

Based on the monetary benefits of the Settlement alone (including the proposed fee award since Kmart will pay it separately), and not even considering the economic value of the injunctive benefits embodied in the Settlement, Class Counsel's fee request constitutes **13%** of the Settlement's value of $13,411,036.00, which is well below the range of percentage attorneys' fee awards courts in this District and Circuit have approved.  *See Redman*, 768 F.3d at 630 ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed

to is the ratio of (1) the fee to (2) the fee plus what the class members received"). Even if Kmart would have only been able to reduce the assessments by 10%, and not the full amount they sought in reductions, Plaintiffs' efforts at convincing Kmart to drop its challenges would still have caused an additional $1.336 million benefit to the Class (for a total monetary value of $8,137,333), and Plaintiffs' fee request would amount to only 21% of the total monetary value of the Settlement.

"[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases). To do so, a court "must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.*[4] A court should consider the following elements when conducting its analysis: attorneys' fee awards in other class action settlements; any fee agreements between the parties; the risk of nonpayment counsel agreed to bear; the quality of class counsel's performance; the amount of work necessary to resolve the litigation; and the stakes of the case. *See Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Each of these factors is readily satisfied here.

1.    **Attorneys' Fee Awards in Other Class Action Cases**

A court should consider attorneys' fees awarded in other class actions when assessing a fee request. *See id.* at 601. As noted above, the cash value of the Settlement here (including attorneys fees) is $13,411,036.00. Class Counsel's fee request of $1,733,333.00 represents 13%

---

[4] In commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements which result in a fee of between 33.3% and 40% of the recovery. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2011 U.S. Dist. LEXIS 20397, *10 (N.D. Ill. Dec. 10, 2001) (citing *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986).

of the Settlement's monetary benefits, which is well below the common percentage awarded for other attorneys' fee awards approved in other class actions by courts in this Circuit where fee awards of 33%-40% are the norm. *See Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.,* No. 02-cv-1109-DRH, 2004 U.S. Dist. LEXIS 6363, *3 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action in [sic] not uncommon"); s*ee also Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (affirming district court's award of 38% of a common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, *27 (N.D. Ill. Oct. 10, 1995) (33 1/3%); *see also Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) (noting in various types of non-class litigation that the customary contingency fee ranges from 33 1/3% to 40% of the amount recovered dependent on the risks and stakes of litigation).[5]  Accordingly, the range of fees awarded in other cases supports Counsel's minimal fee request here.

## 2.        Agreement Between Plaintiffs and Their Counsel

A court should consider an actual agreement between the parties when assessing a fee request.  *See In re Synthroid Mktg. Litig.*, 264 F.3d at 718.  Most of the client representation agreements between Plaintiffs and their counsel provide for legal services to be provided on a contingent basis to be determined by the Court without generally specifying a specific percentage for payment of attorneys' fees.  If they do contain a percentage, they are in the 33-40% range. Therefore, this factor supports Class Counsel's fee request.

---

[5] Outside of this Circuit, the Target data breach litigation is most analogous.  In that case, the financial institutions settled similar claims for $60,000,000 (after several years of litigation and class certification).  The court there awarded $19,900,000 in fees and costs, or 30% of the value of the settlement.  *In re: Target Corporation Customer Data Security Breach Litigation*, MDL No. 14-2522 (PAM/JJK), Memorandum and Order, at 4 (Dkt. 758) (D. Minn., May 12, 2016).

### 3.    The Risk Of Nonpayment

At the outset of this litigation, Counsel agreed to represent their clients and the Class on a contingency basis knowing that there was a real possibility that these cases could be litigated for years with no recovery for the time, effort, and costs expended in furtherance of the matter. *See In re Transunion Corp. Priv. Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) (stating that "within the set of colorable legal claims, a higher risk of loss does argue for a higher fee"); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) ("[A]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award.") (citation and quotation omitted); *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").

As detailed herein, if this matter were litigated to conclusion, Plaintiffs would have had to prevail on Defendants' Motion to Dismiss, obtain class certification, and then prove the merits of their case.  Plaintiffs believe that Kmart, had it not settled, would have had every intention of aggressively litigating this case.  The possibility of settlement was uncertain at the outset of this matter, and it remained uncertain after Kmart moved to dismiss the Consolidated Amended Class Action Complaint in its entirety and contested subject matter jurisdiction.  Moreover, Plaintiffs faced the real risk that Kmart might file for bankruptcy further complicating any collection efforts.  Only after many months of good faith, arm's-length negotiations, with Judge Andersen's assistance, was this Settlement reached.

### 4.    The Quality of Class Counsel's Performance

A high level of skill and relevant experience was required to prosecute these matters. Class Counsel faced opposition from Kmart and their counsel who fought vigorously throughout this litigation.  Despite the risks and obstacles facing them, Class Counsel were able to negotiate

this unique Settlement with Kmart with the assistance of Judge Andersen.  Notably, this is the first settlement of its kind which involves the resolution of challenges to card brand assessment processes, as well as additional payments to Class Members.

Class Counsel respectfully submit that they conducted themselves in this action in a professional, diligent, and efficient manner.  Moreover, in litigating this case, Class Counsel gave up the opportunity to work on other lucrative cases.  Class Counsel allocated tasks to prevent "over-lawyering" and inefficiency.  The bulk of the work was performed by a small number of attorneys fully familiar with the factual and legal issues presented by this litigation and highly experienced in the area of data breach class action litigation, with specific experience representing financial institutions in similar cases.  This division of labor permitted the work to be done efficiently, resulting in an economy of service and avoiding duplication of effort.

Class Counsel devoted enormous time and money to the prosecution of this action. Among other things, to achieve this Settlement, Class Counsel took the following litigation actions:  (1) conducted an extensive pre-suit investigation that laid the groundwork for a strong initial class action complaint; (2) self-organized and coordinated their combined legal talents for the benefit of the Settlement Class; (3) prepared and filed a strong Consolidated Amended Class Action Complaint; (4) prepared to defend the Consolidated Amended Class Action Complaint from Kmart's motions to dismiss; (5) engaged in multiple rounds of negotiation and mediation overseen by Judge Andersen; (6) reviewed documents and information produced by Kmart in preparation for these mediation sessions; (7) finalized a Settlement Agreement with Kmart and filed papers in support thereof; (8) attended three preliminary approval hearings and worked on amending the Settlement agreement to address the Court's concerns; and (9) conducted third party discovery on Visa and MasterCard at the Court's direction.  Notably, this work is not done and Class Counsel will undoubtedly continue to incur significant additional time and expense in

624544.1

seeing this Settlement through to its conclusion, including working with the claims administrator and notice provider, answering questions from Class Members, responding to any objections, and filing and arguing final approval.

Class Counsel have a national reputation for the successful prosecution of complex class action litigation. As set forth above, Class Counsel worked expeditiously and efficiently, reflecting their knowledge and practical experience in litigating claims of this nature. Their expertise was the primary factor in bringing about the expeditious resolution of this litigation on extremely favorable terms for the Settlement Class, especially in light of Kmart's deteriorating financial situation.

The quality of opposing counsel is also an important factor in evaluating the quality of the services rendered by Class Counsel. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re King Res. Co. Sec. Litig*, 420 F. Supp. 610, 634 (D. Colo. 1976). Kmart was well represented by one of the country's most prestigious and diligent law firms, King & Spalding – ranking 36th in *The American Lawyer's* 2015 "AmLaw 100" survey – and by two lawyers with significant experience defending data breach litigation. The ability of Class Counsel to obtain such favorable results in the face of formidable legal opposition further evinces the superior quality of their work and of the proposed Settlement.

The awareness of Defendants' counsel that several leading nationwide plaintiffs' law firms were willing and able to assume the risk of prosecuting this action to trial, if necessary, rather than accept an unsatisfactory settlement unquestionably contributed to the favorable result obtained here. Class Counsel's efforts on behalf of the Settlement Class and their ability to achieve this Settlement is a testament to their skill and professionalism.

14

### 5. The Amount Of Work Necessary To Resolve This Litigation

Since its inception through October 3, 2016, Class Counsel have spent approximately 3,000 hours advancing this matter. *See* Murray Decl. ¶ 7. Lead Counsel have directed all firms associated with this case in pursuit of the Class's interests in performing work on behalf of the Class. Class Counsel will spend additional time preparing for and appearing at the Final Fairness Hearing and overseeing the Settlement to its conclusion. Accordingly, this factor also favors approval of the requested award of attorneys' fees and expenses.

### 6. The Stakes of This Litigation

In the face of great litigation risk, Class Counsel obtained demonstrable benefits from the proposed Settlement at an early stage of the litigation. Thus, this factor also favors approval of Class Counsel's request.

Under the Settlement Agreement, the Settlement Class will realize substantial and immediate benefits once the Settlement is approved. The timeliness of class relief is also particularly important where, as here, Plaintiffs and the Settlement Class members might have waited years to receive compensation (if at all) if Kmart had appealed the assessments and/or filed for bankruptcy. If litigation were to proceed, Settlement Class Members would have had no guarantee of recovering anything beyond the assessment amounts Kmart paid to Visa and Mastercard. And they would be exposed to the attendant risks of litigation, including the uncertainties and difficulties pertaining to a disputed class certification proceeding, the legal and factual defenses that Kmart asserted in its motion to dismiss, the length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the fact that resolution of the class claims, whenever and however determined, would likely be submitted for appellate review. Thus, the practical-minded approach of Class Counsel to achieve earlier benefits for the Settlement Class should also support the attorneys' fee award requested here.

C.     **The Requested Award For Attorneys' Fees is Reasonable Under the Lodestar Method**

While the application of the percentage method has become the general trend in cases such as this, courts may also consider a counsel's lodestar where a settlement provides significant equitable or injunctive relief and it may be difficult to value the settlement. *Langendorf*, 2009 U.S. Dist. LEXIS 131289, *30 ("As a result of the difficulty in making an assessment of the Settlement's value in this case, the Court will utilize the lodestar method in awarding class counsel's attorneys' fees."); *see also City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 909 (S.D. Ill. 2012) ("A fee award in this case equal to one-third of the common fund is also justified under the lodestar method."). Class Counsel's fees can be either cross-checked or directly calculated using the lodestar method of calculation. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598-99 (N.D. Ill. 2011) (acknowledging criticism of lodestar method, but employing lodestar cross-check and observing, "[w]here a settlement includes substantial affirmative relief, such relief must be considered in evaluating the overall benefit to the class").

The lodestar method provides even stronger support for Plaintiffs' fee request. To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *City of Greenville*, 2012 U.S. Dist. LEXIS 151819, at *21. This base lodestar should be adjusted upward to reflect the contingent nature of the attorney's undertaking based on the likelihood of success in obtaining a judgment or settlement measured at the time the attorney began work on the case. *See Skelton v. General Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988) (citations omitted); *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998) ("The unenhanced lodestar usually accounts for the difficulty of prevailing on the merits, because it reflects the number of hours that are necessary to

16

overcome the difficulty and the hourly rates of attorneys who are skilled enough to do so.  But the unenhanced lodestar does not reflect the factual and legal merits of the claim—the fact that at the outset of the litigation, no matter how dazzling the array of legal talent or how many hours will eventually be logged, there is nonetheless the possibility of no recovery.") (internal citation omitted).

Class Counsel and the attorneys working at their direction reported having spent approximately 3,000 hours advancing these matters, which represents an aggregate lodestar of $1,745,273.83 (*through October 3, 2016 only*).  *See* Murray Decl. ¶ 7.[6]  This equates to an average billing rate of approximately $581.76.  Counsel's aforementioned services were reasonable and necessary to prosecute these matters and to the reach the terms of the proposed Settlement as set forth in the Settlement Agreement.  Moreover, the hourly rate used by Class Counsel and their legal staff are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the Chicago legal market and in those lawyers' home legal markets.

Using the lodestar either to calculate fees or as a cross-check, Class Counsel's requested fees are more than reasonable.  As explained above, Class Counsel have already performed a substantial amount of work on behalf of the Settlement Class, and substantial work remains to secure final approval of the Settlement and administer Class Member claims. Class Counsel and the other attorneys working at their direction have invested time such that their requested compensation from this Settlement represents a *negative* multiplier of their actual lodestar. Courts have approved much higher positive lodestar multiplier requests in this Circuit.  *See Standard Iron Works v. ArcelorMittal*, 2014 U.S. Dist. LEXIS 162557, *10 (N.D. Ill. Oct. 22,

---

[6] Class Counsel are prepared to submit detailed billing statements to the Court for *in camera* inspection should the Court so desire.

17

2014) (awarding multiplier of 1.97 and noting that it "is well within the range of reasonable multipliers awarded in similar contingent cases"); *In re Southwest Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 143146, *40 (N.D. Ill. Oct. 3, 2013) (awarding multiplier of 1.5); *In re Dairy Farmers of America, Inc.*, 80 F. Supp. 3d 838, 849 (N.D. Ill. 2015) (approving multiplier of 1.34, noting that it was "on the lower end of the allowable range in comparable cases"); *White v. Employee Retirement Plan of Amoco Corp.*, 2001 U.S. Dist. LEXIS 16380, *18, at *6 (N.D. Ill. Oct. 9, 2001) (approving multiplier of 1.3); *see also Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) ("[L]odestar multipliers can be reasonable in a range between 2 and 5."); *In re Abbott Laboratories Securities Litig.*, 1995 WL 792083, at *13 (N.D. Ill. July 3, 1995) at *13 ("Multipliers, anywhere between one and four, have been approved by courts . . . ."); *Will v. Gen. Dynamics Corp.*, No. CIV. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, *12 (S.D. Ill. Nov. 22, 2010) (lodestar multiplier of less than 1 "easily withstands" lodestar cross-check).

Accordingly, the requested fee and expenses award of $1,733,333.00 on current lodestar of $1,745,273.83, reflecting a slightly negative multiplier of 0.99, is more than reasonable under a lodestar analysis or lodestar cross-check. This is especially true given the fact that the current lodestar will no doubt increase significantly between now and the completion of Settlement distribution, reflecting an even larger negative multiplier.

D.    **Plaintiffs' Costs Are Reasonable and Were Necessary to Prosecute the Litigation.**

Plaintiffs also seek reimbursement of $88,233.76 in costs incurred to date. "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile

18

expenses and mediation." *Abbott v. Lockheed Martin Corp.*, No. 06-CV-701-MJR-DGW, 2015 WL 4398475, at \*4 (S.D. Ill. July 17, 2015)

The expenses incurred in this litigation, as described in the Murray Declaration, are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs as mediation costs, copying/printing, and travel in connection with this litigation. Murray Decl. ¶ 4; *see City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 910 (S.D. Ill. 2012) ("[T]he costs sought here are of the type that are routinely reimbursed by paying clients, such as experts' fees, other consulting fees, deposition expenses, travel, and photocopying costs."). Kmart has already agreed to pay up to $100,000 in reasonable costs, in addition to attorneys fees' and its settlement payment; Plaintiffs' requested fee award falls under that cap. The fact that Kmart does not oppose Plaintiffs' request for costs further supports approval. *See Kurgan v. Chiro One Wellness Centers LLC*, No. 10-CV-1899, 2015 U.S. Dist. LEXIS 52006, \*30 (N.D. Ill. Apr. 21, 2015) (approving uncontested expenses); *Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383, \*81 (N.D. Ill. June 10, 2015), *aff'd sub nom. Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) (same).

Plaintiffs also anticipate that they will expend up to $5,000 in additional expenses between now and final approval. *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 4765679, at \*22 (N.D. Ill. Sept. 13, 2016) (approving "reasonable expenses incurred in connection with the final approval hearing and class counsel's duties in connection with the ongoing notice and claims process," subject to previously agreed-upon cap). Plaintiffs will provide a final amount of requested expenses (not to exceed the $88,233.76 already incurred plus $5,000 in predicted future expenses) at the Final Approval Hearing.

**E.** **Incentive Awards for the Five Settlement Class Representatives are Appropriate.**

Finally, the Settlement Agreement allows for incentive awards to be paid to each of the five Settlement Class Representatives. Dkt. 96-1 ¶ 8.3. "In deciding whether an incentive award is proper, and if so, in what amount, 'relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998)).

Class Counsel respectfully submit the incentive awards in the amount of $10,000 are appropriate here. Each of the Settlement Class Representatives was instrumental in assisting Class Counsel with the initial investigation of the data breach and the extent of damages attributable to the breach. Each Settlement Class Representative was asked to provide detailed information (essentially, to respond to discovery) concerning fraud losses, card reissuance costs, and other costs attributable to the breach for mediation purposes, at Kmart's request. Murray Decl. ¶ 8. This information was invaluable in reaching a mediated Settlement Agreement. Given their contributions, awards of $10,000 from the Settlement Fund for each Settlement Class Representative are appropriate. *See In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *11 (awarding incentive award of $15,000 where discovery from plaintiffs "improved the prospects of a favorable settlement"). However, Class Counsel's request may be subject to revision once average payments to each Class member are known, and Class Counsel will come prepared to the Final Approval Hearing to further discuss the issue with the Court.

III.    **CONCLUSION**

For all of the reasons stated above, Class Counsel respectfully request that the Court enter an order awarding $1,733,333.00 for attorneys' fees, $88,233.76 for reimbursement of reasonable costs and expenses in this matter, up to $5,000 for future costs associated with the final approval hearing, and incentive awards of $10,000 for each of the five Settlement Class Representatives.

Dated: November 21, 2016

Respectfully Submitted,

*/s/ Katrina Carroll*
Katrina Carroll
kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
**LITE DePALMA GREENBERG, LLC**
211 W. Wacker Drive - Suite 500
Chicago, Illinois  60606
Tel:  (312) 750-1265

*Counsel for Plaintiffs*

Arthur M. Murray
Stephen B. Murray
Caroline W. Thomas
**Murray Law Firm**
650 Poydras Street
Suite 2150
New Orleans, LA 70130
505-525-8100
Email: amurray@murray-lawfirm.com
Email: smurray@murray-lawfirm.com
Email: cthomas@murray-lawfirm.com

James J. Pizzirusso
Swathi Bojedla
**Hausfeld, LLP**
1700 K. Street, NW
Suite 650
Washington, DC 20006
202-540-7200
Email: jpizzirusso@hausfeld.com
Email: sbojedla@hausfeld.com

21

Karen H. Riebel
Heidi M. Silton
Kate M. Baxter-Kauf
**Lockridge Grindal Nauen P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
612-339-6900
Email: khriebel@locklaw.com
Email: hmsilton@locklaw.com
Email: kmbaxter-kauf@locklaw.com

***Co-Lead Class Counsel for the Financial
Institutions***

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2016, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, by which notification of such filing was electronically sent and served on all parties.


*/s/ Katrina Carroll*
Katrina Carroll