**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GREATER CHAUTAUQUA FEDERAL CREDIT UNION, FIRST CHOICE FEDERAL CREDIT UNION, GULF COAST BANK & TRUST COMPANY, GOVERNMENTAL EMPLOYEES CREDIT UNION, and OTEEN V.A. FEDERAL CREDIT UNION, individually and on behalf of a class of similarly situated financial institutions, | : Case No: 1:15-cv-02228<br>:<br>:<br>: Hon. John Z. Lee<br>:<br>:<br>:<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | :<br>: |
| KMART CORPORATION and SEARS HOLDINGS CORPORATION, | :<br>:<br>: |
| Defendants. | :<br>: |

**CLASS PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................ 4

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND FINAL
        APPROVAL SHOULD BE GRANTED ................................................................ 7

        A.      The Standard for Judicial Approval of a Class Action Settlement ......................... 7

        B.      The Settlement Meets the Seventh Circuit Standard for Approval ......................... 9

                1.      *Plaintiffs' Recovery is a Good Result in Relation to the Merits of the Case.*
                        ................................................................................................. 9

                2.      *The Complexity, Length, and Expense of Further Litigation Support
                        Approval of the Settlement.* ........................................................ 10

                3.      *The Reaction of Class Members Supports the Settlement.* ......................... 11

                4.      *Plaintiffs' Counsel Endorse the Settlement.* ............................................... 12

                5.      *The Stage of the Proceedings and Amount of Discovery Completed Weigh
                        in Favor of Settlement.* ............................................................... 13

IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE
        APPROVED ...................................................................................................... 14

V.      THE NOTICE PLAN SATISFIES DUE PROCESS ................................................. 15

VI.     CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Bd. of Sch. Dirs. Of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ................ 8, 9

*Clarion Corp. v. Am. Home Prods. Corp.*, 494 F.2d 860 (7th Cir. 1974) ..................................... 7

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................. 14

*Consol. Edison, Inc. v. Northeast Utils.*, 332 F. Supp. 2d 639 (S.D.N.Y. 2004) ......................... 16

*Diamond Chem. Co., Inc. v. Akzo Nobel Chems. B.V.*, 205 F.R.D. 33 (D.D.C. 2001) ................ 15

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985) .................................................. 9

*Great Neck Capital Appreciation Inv. P'ship, L.P., v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400 (E.D. Wis. 2002) ............................................................................................... 14

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................... 8, 13

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ...................................................... 7, 8, 10, 13

*Kaufman v. Am. Express Travel Related Servs.*, Co., No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) ...................................................................................................... 11

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ..................................................... 11

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ................ 8

*McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806 (E.D. Wis. 2009) ..................... 9

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................... 9, 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006 ........................ 8, 9

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ...................................................................... 7

*Williams v. Rohm & Haas Pension Plan*, No. 4:04-CV- 0078, 2010 WL 1490350-SEB (S.D. Ind. Apr. 12, 2010) ............................................................................................................. 13

*Wong v. Accretive Health, Inc*., 773 F.3d 859 (7th Cir. 2014) ............................................ 8, 9, 11

**Other Authorities**

Manual For Complex Litigation (Fourth) § 21.312 (2004) .......................................... 15

Newberg On Class Actions §11.41 (4th ed. 2010) ........................................................ 8

**Rules**

Fed. R. Civ. P. 23(e) ..................................................................................................... 15

Fed. R. Civ. P. 23(e)(2) ................................................................................................... 8

### I. INTRODUCTION

Plaintiffs Greater Chautauqua Federal Credit Union, First Choice Federal Credit Union, Gulf Coast Bank & Trust Company, Governmental Employees Credit Union, and Oteen V.A. Federal Credit Union (collectively "Plaintiffs"), by their undersigned counsel, respectfully submit this memorandum in support of their motion for final approval of the proposed Settlement of this action. The terms of the class action settlement (the "Settlement") are set forth in a Second Amended Settlement Agreement and Release (the "Second Amended Settlement Agreement") dated October 24, 2016, a copy of which was attached as Exhibit 1 to Plaintiffs' Memorandum in Support of Second Amended Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (ECF No. 116) (hereinafter "Ex. 1").

Plaintiffs brought this class action on behalf of banks, credit unions, and other financial institutions allegedly injured as a result of a data breach at Kmart that began in or around early September of 2014 and continued until October of 2014. Plaintiffs allege that hackers compromised and stole the confidential financial and personal identifying information of Kmart's customers, including credit and debit card numbers, card expiration dates, card verification values, and other information belonging to customers of Kmart's retail stores (collectively, "PII"). Plaintiffs also allege that Kmart failed to adequately secure its customers' PII on its data systems, ignored numerous clear warnings that its data systems were outdated and vulnerable to attack, and failed to take recommended actions that could have thwarted the breach. As a result of Kmart's actions, Plaintiffs further contend that they incurred damages related to replacing customers' credit and debit cards and covering the fraudulent activity which occurred on customers' cards after the breach, among other things.

1

The Settlement was the result of several months of arm's-length, good faith negotiations among the parties, including three separate mediation sessions and numerous teleconferences with the Hon. Wayne R. Andersen (Ret.), former United States District Court Judge for the Northern District of Illinois and a current mediator with JAMS. The merits of the Settlement are shown through the comparison of the significant recovery to the time and expense required to prosecute the case to a final judgment, for which the outcome would be uncertain. Furthermore, Plaintiffs considered the risk of dilution of any judgment through submission of these funds into a potential bankruptcy estate.

The Second Amended Settlement Agreement provides substantial value to the Settlement Class[1] members and represents their best interests. If approved, this Settlement will result in the full payment of card brand assessments (which Kmart has agreed not to contest or appeal) and a $5.2 million Settlement Fund that will be distributed to eligible Settlement Class members who made claims per a distribution plan (no claim was required for class members to participate in the assessments and those funds were automatically provided to eligible settlement class members). *See* Ex. 1 ¶ 1.47. Kmart has also agreed to pay a reasonable amount in attorneys' fees and expenses in addition to that fund, an issue which has been briefed separately. *Id.* at 8; *see also* ECF No. 124. In addition, as set forth in the Second Amended Settlement Agreement, Kmart has agreed to change several practices related to data security and will agree to substantial injunctive relief regarding the same. Ex. 1 ¶ 6. In exchange for these monetary and non-monetary benefits, Settlement Class members will provide a general release to Kmart for all claims relating

---

[1] Unless otherwise defined herein, all capitalized terms have the same meanings ascribed to them in the Second Amended Settlement Agreement.

to the aforementioned data breach that were asserted or could have been asserted in the consolidated amended complaint. *Id.* at ¶ 7.

The reaction to the settlement has been incredibly favorable. Claim Packages were sent to every potential Settlement Class Member (along with a supplemental reminder) explaining the terms of the proposed Settlement. Thus, all Settlement Class Members received two (and sometimes three) direct mail notices about the settlement. To date, Class Counsel have received *no* objections and only 15 opt outs (representing 10,102 cards – approximately 0.12% of the total 8.1 million impacted cards in the class).[2] Declaration Of Cameron R. Azari, Esq., On Supplemental Notice, Attachment 1 thereto, collectively attached hereto as Exhibit 1. All eligible Class Members have automatically received assessment payments of $7,574,497.00 for Visa cards and $5,798,909.00 for MasterCard cards, totaling over $13,373,406.00. At least 256[3] Class Members made claims for the Non-GCAR eligible portion of the settlement, resulting in the maximum payout of $2.38 per card for those claimants. And 172 Class Members made claims in the Tier 2 supplemental damages portion of the settlement. While claims are still being processed, those Class Members who submitted claims will receive a significant value (if all claims are fully accepted, current estimates are that a *minimum* of approximately 53% of class members' claimed damages will be compensated, and that number will increase as Tier 1 payments and assessment payments are offset from the amount claimed and if any Tier 2 claims are denied). It appears that claimants who filed Tier 2 claims will receive an average of

---

[2] The settlement claims are currently being reviewed by the Settlement Administrator. Thus, the number of cards and number of claims provided herein are subject to change.

[3] Over 330 Class Members submitted claims. Approximately 164 Class Members filed only Tier 1 claims. Approximately 80 Class Members filed only Tier 2 claims. And in addition to the foregoing, approximately 92 Class Members filed claims for both Tier 1 and Tier 2.

approximately $26,000.00 per claimant (although it will vary widely based on the number of cards and fraud losses at issue for each claimant).

Because the proposed Settlement is a favorable compromise in light of the merits of Class Plaintiffs' claims, Defendants' defenses, the risks interposed by Kmart's financial condition, the factual and legal risks of continued litigation through trial and a possible appeal, and because of the excellent results it achieves, Plaintiffs respectfully request that the Court approve the Settlement as fair, reasonable, and adequate, and enter final judgment accordingly.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This litigation arises out of a data breach affecting Kmart Point of Sale ("POS") systems. On October 9, 2014, during an apparently standard internal performance monitoring processes, Kmart discovered that card harvesting malware (a type of malicious software program designed to steal credit and debit card information) had been installed on POS systems at every one of its 1,073 stores. *See generally* Am. Compl. (ECF No. 44). Kmart eventually alerted financial institutions and the public about the data breach, and this litigation followed. *See id.*

*First NBC Bank* filed the first case on behalf of a financial institution regarding Kmart's data breach on December 16, 2014 (*First NBC Bank v. Kmart Corp. and Sears Holding Corp.*, No. 1:14-sv-10088 (N.D. Ill.). On February 25, 2015, Plaintiffs in *First NBC* filed a Motion for Consolidation and Transfer of Related Actions under 28 U.S.C. § 1407. On June 10, 2015, the MDL panel denied transfer under § 1407. The parties thereafter agreed to reassign the pending cases to this Court based on relatedness. ECF No. 23. On August 20, 2015, Plaintiffs filed a Consolidated Class Action Complaint, ECF No. 44, which Kmart moved to dismiss on October 9, 2015. ECF No. 65.

Shortly after the filing of Kmart's Motion to Dismiss and while Plaintiffs were preparing an opposition, the parties agreed to see if they could resolve the case through mediation and sought a stay. ECF No. 72. The Court granted the stay, appointed interim class leadership, and asked for periodic updates. ECF Nos. 75, 81, & 82. On December 9, 2015, the parties had an initial mediation with Judge Wayne R. Andersen. *See* ECF No. 83 at 2. As part of the mediation process, because formal discovery had not yet begun, Kmart agreed to share certain documents related to the data breach and the number of cards it believed, potentially, had been compromised. *Id.* The parties had a second mediation on January 14, 2016 after which they agreed to exchange a term sheet. *See* ECF No. 86 at 2. Because the parties still had not finalized a resolution, the parties had a third mediation session on April 12, 2016. At this point, the parties reached an agreement on major terms of a settlement but still had several details to work out. On July 26, 2016, the parties signed the original Settlement Agreement, which was presented to the Court on August 3, 2016. ECF No. 96. The Court denied the motion for preliminary approval of the original Settlement Agreement without prejudice and with instructions to refile with slight modifications. ECF No. 97. The Court also requested that Plaintiffs file a brief regarding subject matter jurisdiction, which was raised at the motion to dismiss stage but which was not previously addressed by Plaintiffs due to a stay in briefing. Plaintiffs filed a brief regarding subject matter jurisdiction on August 17, 2017. ECF No. 98. In the same time frame, on August 11, 2016, the parties executed an Amended Settlement Agreement and Release which superseded, rendered void, terminated, and nullified the Settlement Agreement entered into on July 26, 2016 between the Parties. *See* ECF No. 100-1 at 5.

On August 25, 2016, the Court held a hearing on the Uncontested Amended Motion for Preliminary Approval of Class Action Settlement (the August 11, 2016 Amended Settlement

Agreement). ECF No. 103. At that hearing, the Court expressed concern that certain data relevant to the administration of the settlement in the possession of Visa and MasterCard had not yet been obtained. The Court thereafter denied the amended motion without prejudice and instructed Plaintiffs to (1) obtain the necessary data from Visa and MasterCard and (2) utilize that data to verify that there is at least one class representative which is a member of each settlement tier and, further, to confirm that the class members can determine if they are eligible for compensation in either or both tiers. *Id.* In response, Plaintiffs, through Class Counsel, acquired and reviewed the data, and verified that there is at least one class representative for each settlement tier. Further, to better assist class members with determining their settlement eligibility, the Parties agreed to amend language in the Second Amended Settlement Agreement and notice documents to more clearly describe which financial institutions are eligible for Tier 1 participation. Specifically, the term "Non-VisaNet" was replaced with the term "Non- GCAR Eligible Compromised Payment Card." *See generally* Ex. 1. While not expanding or in any way changing the universe of cards eligible for Tier 1, the new terminology provided financial institutions greater clarity to make it easier for them to determine eligibility to participate in Tier 1. The Second Amended Class Action Settlement Agreement was entered into on October 24, 2016 between the Parties. Ex. 1. Based on the Second Amended Settlement Agreement, Plaintiffs moved for preliminary approval on October 24, 2016.  ECF No. 115.

On November 17, 2016, the Court granted Plaintiffs' motion, certified the class for settlement purposes only, appointed a settlement administrator, and set deadlines for notice, opt-outs, objections, the claims process, and the final approval hearing.  ECF no. 119. Plaintiffs moved for an award of attorneys' fees, costs, and expenses and class representative incentive

awards on November 21, 2016. ECF No. 124.[4] Defendants responded to Plaintiffs' fee motion on January 5, 2017. ECF No. 128.

On February 7, 2017, on motion from Plaintiffs after Plaintiffs discovered that some settlement class members did not get the initial notice, the Court entered the Third Amended Preliminary Approval Order and Supplemental Notice Plan, which authorized a Supplemental Long Form Notice and Letter Notice to be sent to settlement class members, and set new deadlines for claims, exclusion, and opt-outs for class members. ECF No. 138. Based on that Order, objections, opt-outs, and claims were extended until April 18, 2017. ECF No. 138 at 6-9. On April 10, 2017, Plaintiffs sent a reminder notice to those settlement Class Members who had not yet submitted a claim. In conjunction with that Third Amended Preliminary Approval Order, Plaintiffs hereby submit a motion and memorandum seeking final approval of the settlement in advance of the Final Fairness Hearing to be held on May 19, 2017. ECF No. 138 at 11.

### III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND FINAL APPROVAL SHOULD BE GRANTED

#### A. The Standard for Judicial Approval of a Class Action Settlement

Federal courts favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). "Compromises of disputed claims are favored by the courts." *Clarion Corp. v. Am. Home Prods. Corp.*, 494 F.2d 860, 863 (7th Cir. 1974) (citing *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910)). The parties to this matter believe they have reached a just

---

[4] Since initially filing Plaintiffs' Motion for Attorneys' Fees, Plaintiffs have incurred a substantial amount of additional loadstar and costs. Plaintiffs intend to file a supplemental memorandum in support of their motion detailing their additional loadstar and costs. Furthermore, Plaintiffs now have a final total from the Claims Administrator for its efforts (both to date and in the future) and that will be detailed in the aforementioned supplemental memorandum. A revised proposed order will be provided to the Court with the supplemental memorandum to address these issues.

compromise, and Fed. R. Civ. P. 23(e) requires court approval for settlement of a class action. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

"A district court may approve a class action settlement if it finds it to be fair, adequate, and reasonable." *Wong v. Accretive Health, Inc*., 773 F.3d 859, 862 (7th Cir. 2014) (citing Fed. R. Civ. P. 23(e)(2)). When the settlement is the result of extensive arm's-length negotiations, courts presume fairness in the settlement. *See* 4 Newberg On Class Actions §11.41 (4th ed. 2010); *see also Accretive*, 773 F.3d at 864 (approving settlement and noting an important factor of the settlement was that it was the result of arm's-length negotiations and a mediator's proposal). In determining whether a class action's proposed settlement's is fair, reasonable, and adequate, courts in this Circuit consider the following factors: (1) the strength of plaintiffs' case compared to the amount of the settlement; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the opinions of counsel; and (5) the stage of the proceedings and amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006); *see also Isby*, 75 F.3d at 1199.

A court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). A court should not substitute its own judgment of adequacy of a litigation outcome for the judgment of the litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs. Of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980). Nor should a court transform settlement approval proceedings into a trial on the merits. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987). Rather, courts should consider the facts "in the light most favorable to the settlement." *Isby*, 75 F.3d at 1199.

In the instant case, there is no dispute that the proposed Settlement is the product of extensive, arm's length negotiations. There were several months of arm's-length negotiations, including three separate mediation sessions and numerous teleconferences with the mediator. Class Plaintiffs and Class Counsel were thoroughly familiar with the strengths and weaknesses of this action. Plaintiffs were willing to continue litigation rather than settle for an unreasonable sum. The decision to settle should therefore be given deference. *See Armstrong*, 616 F.2d at 315.

In addition, here, this Court has already preliminary approved the proposed settlement. *See* ECF No. 115. In preliminarily approving the settlement, the Court ordered notice of the settlement be distributed to the class. *Id.* at 6-9. The only step remaining is to hold a hearing to determine whether "the settlement is 'fair, reasonable, and adequate' and thus meets the requirements of Rule 23. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578–79 (N.D. Ill. 2011) (quoting *Synfuel*, 463 F.3d at 653).

## B.     The Settlement Meets the Seventh Circuit Standard for Approval

1.     *Plaintiffs' Recovery is a Good Result in Relation to the Merits of the Case.*

Comparing the strength of Plaintiffs' claims against the benefits of the Settlement is the most important factor for a court to consider. *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814 (E.D. Wis. 2009); *Armstrong*, 616 F.2d at 314. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). As long as there are no "suspicious circumstances" regarding the proposed settlement, a court may properly apply its discretion to approve a settlement without quantifying "the net expected value of continued litigation." *See Wong*, 773 F.3d at 864.

Plaintiffs allege Kmart failed to adequately secure its customers' PII on its data systems, which caused customers' PII to be compromised. As a result of Kmart's actions, Plaintiffs allege

9

they incurred damages resulting from replacing customers' credit and debit cards and also covering fraudulent activity following the breach. Class Plaintiffs determined that settlement would be prudent given the likelihood of successfully obtaining or defeating class certification, the chances of prevailing on the ultimate merits of the suit, and the fact that resolution of class claims could continue for many years if subject to further appellate review. Most importantly, however, Class Plaintiffs also considered the ability to successfully collect any judgment due to any potential bankruptcy filings.[5] The Settlement eliminates all of the foregoing risks and allows for an immediate recovery to the Settlement Class. This Settlement provides the Settlement Class members with compensation for fraud and card replacement costs without the attendant risks of dilution through submission of these funds into a potential bankruptcy estate. The Settlement also requires Kmart to provide non-monetary benefits to ensure similar breaches will not occur in the future, which mitigates future damages. Given the facts herein, Plaintiffs received a respectable recovery that this Court should approve.

> 2. *The Complexity, Length, and Expense of Further Litigation Support Approval of the Settlement.*

A court must consider "the likely complexity, length, and expense of the litigation" when evaluating a settlement. *Isby*, 75 F.3d at 1199. For the litigation to continue to trial, Plaintiffs would have to survive the motion to dismiss, obtain class certification, conduct substantial merits and expert discovery, and defeat motions for summary judgment. While Plaintiffs believed that they could prevail on these issues, the outcome was uncertain. In addition, the trial itself would

---

[5] *See, e.g.*, Lauren Coleman-Lochner, *One of the Only Analysts Still Covering Sears Says it Isn't Viable*, BLOOMBERG (Feb. 9, 2017), *available at* https://www.bloomberg.com/news/articles/2016-02-09/one-of-only-analysts-still-covering-sears-says-it-isn-t-viable (last accessed April 18, 2017).

be lengthy and involve numerous attorneys, witnesses, experts, and a voluminous amount of evidence. Motions for a new trial and appeals would likely follow. Plaintiffs considered the increased litigation costs and years of litigation in light of a potential for a higher judgment, especially given the Defendants' precarious financial situation. Settlement ensures a sum certain rather than submission of any judgment to a bankruptcy estate.

Final approval of the settlement should be granted as it reflects a reasonable assessment of the strengths and weaknesses of the claims and the risks of establishing liability and damages. While Plaintiffs' Counsel believe strongly in the merits of this case, they recognize that the outcome of further litigation is uncertain. Plaintiffs' Counsel understand that there are significant legal obstacles and defenses which render recovery in this case uncertain and could affect the amount of any potential recovery. In addition, litigating this case to final judgment after appeals would delay any recovery for Settlement Class for several more years.

3.    *The Reaction of Class Members Supports the Settlement.*

To further support approval of a settlement, courts look to the class' reaction to the settlement. *Accretive*, 773 F.3d at 863. Some class members objecting to the settlement do not by itself prevent the court from approving the agreement. *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (collecting cases in which courts approved settlements despite objections). "A low rate of opt-outs or objections reflects favorably on a settlement." *Kaufman v. Am. Express Travel Related Servs.*, Co., No. 07-CV-1707, 2016 WL 806546, at *8 (N.D. Ill. Mar. 2, 2016*)*. Here, a comprehensive notice was provided to Settlement Class members to advise of them of the proposed Settlement and Plan of Allocation, including their right to object or reject exclusion. Additionally, supplemental notice was sent in accordance with the governing preliminary approval order providing notice to those who never received the first mailing, as

11

well as an additional notice to those who did. Additionally, on April 10, 2017, Plaintiffs decided to send one final supplemental notice to all class members who had not submitted claims. Thus, all class members received at least two direct mail notices and some received three. The April 18, 2017, deadline to object recently passed. To date, there have been no objections received and only 15 opt outs (reflecting 10,102 cards). This reaction is favorable to approving the Settlement.

As discussed, all eligible Settlement Class Members received the full Visa and MasterCard assessments without having to make a claim and without having to await the uncertain outcome of an appeal by Kmart (over $13.3 million was distributed). In addition, 256 Class Members made claims in the Tier 1, non-GCAR eligible settlement fund. Those Class Members will all receive $2.38 per eligible card. That leaves over $4.48 million in funds which can be allocated to the Tier 2, "All Class" Tier which compensates for supplemental damages that Class Members believe were not covered by their Tier 1 award and/or the assessment process. At least 172 Class Members made claims in Tier 2. While claims are still being processed, those Class Members who went through this process will receive a significant value (current estimates are that a minimum of approximately 53% of claimed damages will be compensated, and that number will likely increase as Tier 1 payments and assessment payments are offset from the amount claimed and if any Tier 2 claims are denied). It appears that Class Members who filed Tier 2 claims will receive an average of approximately $26,000.00 per claimant (although it will vary widely based on the number of cards and fraud losses at issue for each claimant).

4. *Plaintiffs' Counsel Endorse the Settlement.*

Courts favor approval of settlement if it "clearly and fairly arrived at through arms-length negotiations between and among some exceptionally talented attorneys, with help from some

equally experienced and talented mediators." *See Williams v. Rohm & Haas Pension Plan*, No. 4:04-CV- 0078, 2010 WL 1490350-SEB, at *4 (S.D. Ind. Apr. 12, 2010). Significant weight is placed on the opinions of the attorneys who negotiated the deal in determining whether a settlement is reasonable. *See, e.g., Isby*, 75 F.3d at 1200; *In re Mexico Money*, 164 F. Supp. 2d at 1020.

Due largely to Kmart's business outlook, Plaintiffs were open to early settlement efforts. Plaintiffs' Counsel concluded that the benefits of settling Class Plaintiffs' claims outweighed the attendant risks. Plaintiffs' Counsel believe the settlement provided favorable recovery for the Settlement Class because (1) the Settlement Agreement directly provides Settlement Class members with immediate compensation under the assessment programs for fraud and card replacement costs without the potential for Kmart's appeals and without the need for claims; (2) provides both the assessments and the additional settlement funds without the attendant risks of dilution through submission of these funds into a potential bankruptcy estate; and (3) the Settlement Agreement also requires Kmart to provide significant nonmonetary benefits to ensure that similar breaches will not occur in the future. The extensive arm's-length negotiations that led to the Settlement, as well as Plaintiffs' counsel's assessment of the value of the Settlement, support a grant of final approval.

5.  *The Stage of the Proceedings and Amount of Discovery Completed Weigh in Favor of Settlement.*

Courts in this Circuit take into consideration the stage of the proceedings and the amount of discovery completed to evaluate the merits of the case and the adequacy of the settlement proposal. *Rohm & Haas Pension Plan*, 2010 WL 1490350, at *7. The Settlement here occurred prior to any formal discovery. However, the "'label of "discovery" [either formal or informal] is not what matters,'" but "'what facts and information'" have been gathered. *Schulte v. Fifth Third*

13

*Bank,* 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011) (citation omitted). Plaintiffs' Counsel thoroughly reviewed and analyzed publically available information. Plaintiffs' Counsel also reviewed certain confidential documents Kmart provided during the mediation related to the data breach, and the number of cards Kmart believed had been potentially compromised. The parties also participated in settlement negotiations, including mediations with Judge Andersen, during which the merits of the claims were discussed. In connection with mediation, the parties prepared and exchanged mediation statements which set forth the parties' respective positions on liability and damages, and extensively prepared for in-person negotiation sessions with information gleaned from both sides. With sufficient information to properly evaluate the case, Class Plaintiffs and their counsel settled the matter on terms very favorable to the Class without the substantial uncertainty, delay, and expense of continued litigation.

For the foregoing reasons, the Settlement is in all respects fair, reasonable and adequate, and should be approved.

### IV.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Plaintiffs also seek approval of the Plan of Allocation of the Settlement proceeds that was set forth in the Supplemental Class Notice mailed to potential Settlement Class Members. Evaluation of a plan of allocation is governed under Federal Rule of Civil Procedure 23 and is governed by the same standards of review applicable to the settlement as a whole—the plan must be fair and reasonable. *See Great Neck Capital Appreciation Inv. P'ship, L.P., v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992)). The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members.

Here, the Plan of Allocation was developed by Lead Counsel and reflects an assessment of damages that could have been recovered under the theories asserted in this Action. Specifically, the plan of allocation attempts to reimburse for damages for Non- GCAR Eligible Compromised Payment Card that Class Members issued and for which they received an Alert related to the Data Breach. The plan also attempts to provide monies for any remaining unreimbursed fraud and card reissuance damages related to the Data Breach on a *pro rata* basis. The Plan of Allocation will result in a fair and equitable distribution of the proceeds among Class.

## V.     THE NOTICE PLAN SATISFIES DUE PROCESS

Procedural due process requires that in a class action, notice of the settlement and an opportunity to be heard must be given to absent class members. *See* Fed. R. Civ. P. 23(e). The generally accepted method to provide notice to class members is by direct mail and publication in newspapers. *See Diamond Chem. Co., Inc. v. Akzo Nobel Chems. B.V.*, 205 F.R.D. 33, 34 (D.D.C. 2001); Manual For Complex Litigation (Fourth) § 21.312, at 294 (2004).

Here, the initial Class Notice was sent to some, but not all Settlement Class Members. The Supplemental Class Notice advised all Settlement Class Members who had not received the first Notice of the proposed Settlement and Plan of Allocation (and reminded those who had received the first Notice of the Settlement website where that information could be found). It also detailed the Settlement terms, claims, releases, and distribution of the settlement fund. Moreover, the Supplemental Notice described the process for objecting or opting out, instructions on submitting a claim, all pertinent deadlines, where to receive more information, and the details of the Final Approval hearing. Class Counsel mailed a third Supplemental Notice to all Class Members who had not submitted claims reminding them of the upcoming deadlines.

15

Substantive due process requires that a notice "fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings." *See Consol. Edison, Inc. v. Northeast Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004). The notice program employed for this Settlement meets that standard and should be approved.

### VI.    CONCLUSION

The Settlement represents a tremendous result for the Class.  For the reasons stated above, Plaintiffs respectfully request that the Court grant final approval to the proposed Settlement.

Dated: May 4, 2017                                        Respectfully submitted,

*/s/ Katrina Carroll*
Katrina Carroll
kcarroll@litedepalma.com
Kyle A. Shamberg
kshamberg@litedepalma.com
Ismael T. Salam
isalam@litedepalma.com
**LITE DEPALMA GREENBERG, LLC**
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
312.750.1265

*Counsel for Plaintiffs*

Arthur M. Murray
Stephen B. Murray
Caroline W. Thomas
**Murray Law Firm**
650 Poydras Street
Suite 2150
New Orleans, LA 70130
505-525-8100
Email: amurray@murray-lawfirm.com
Email: smurray@murray-lawfirm.com
Email: cthomas@murray-lawfirm.com

James J. Pizzirusso
Swathi Bojedla
**Hausfeld, LLP**
1700 K. Street, NW
Suite 650
Washington, DC 20006
202-540-7200
Email: jpizzirusso@hausfeld.com
Email: sbojedla@hausfeld.com

Karen H. Riebel
Heidi M. Silton
Kate M. Baxter-Kauf
**Lockridge Grindal Nauen P.L.L.P.**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
612-339-6900
Email: khriebel@locklaw.com
Email: hmsilton@locklaw.com
Email: kmbaxter-kauf@locklaw.com

*Co-Lead Class Counsel for the Financial
Institutions*

17

Erin Green Comite
Joseph P. Guglielmo
SCOTT + SCOTT ATTORNEYS AT LAW,
LLP
405 Lexington Avenue
40th Floor
New York, NY 10174
212-594-5300
Email: jguglielmo@scott-scott.com
Email: ecomite@scott-scott.com

Daniel E. Gustafson
Jason S. Kilene
Catherine K. Smith
Joseph C. Bourne
Eric S. Taubel
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
612-333-8844
Email: dgustafson@gustafsongleuk.com
Email: jkilene@gustafsongluek.com
Email: csmith@gustafsongluek.com
Email: jbourne@gustafsongluek.com
Email: etaubel@gustafsongleuk.com

Gary F. Lynch
Edwin J. Kilpela
Jamisen Etzel
CARLSON LYNCH SWEET KILPELA
& CARPENTER, LLP
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
412-322-9243
Email: glynch@carlsonlynch.com
Email: ekilpela@carlsonlynch.com
Email: jetzel@carlsonlynch.com
Edward A. Wallace
Mark R. Miller
WEXLER WALLACE LLP
55 West Monroe Street
Suite 3300

Chicago, IL 60603
312-346-2222
Email: eaw@wexlerwallace.com
Email: mrm@wexlerwallace.com

Lori A. Fanning
Marvin A. Miller
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
312-332-3400
Email: lfanning@millerlawllc.com
Email: mmiller@millerlawllc.com

Greg L. Davis
DAVIS & TALIAFERRO, LLC
7031 Halcyon Park Drive
Montgomery, AL 36117
334- 832-9080
Email: gldavis@knology.net

***Counsel for Financial Institutions***

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that the foregoing was **Class Plaintiffs'
Memorandum Of Points And Authorities In Support Of Motion For Final Approval Of
Class Action Settlement And Plan Of Allocation Of Settlement Proceeds** filed electronically
with the Clerk of the Court using the CM/ECF system this 4th day of May 2017 and served
electronically on all counsel of record.


*/s/ Katrina Carroll*